# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| HTC Corporation and HTC America, Inc., | |
| Plaintiffs, | Case No.: 6:18-cv-00243-JRG |
| v. | **JURY TRIAL DEMANDED** |
| Telefonaktiebolaget LM Ericsson and Ericsson Inc. | **PUBLIC VERSION** |
| Defendants. | |
| Telefonaktiebolaget LM Ericsson and Ericsson Inc., | |
| Counterclaim Plaintiffs, | |
| v. | |
| HTC Corporation and HTC America, Inc. | |
| Counterclaim Defendants. | |

**DEFENDANTS TELEFONAKTIEBOLAGET LM ERICSSON AND ERICSSON INC.'S MOTION TO SEVER, STAY, AND COMPEL ARBITRATION OF PLAINTIFFS' "PAST REFUND" CLAIMS UNDER PRIOR LICENSE AGREEMENTS**

# TABLE OF CONTENTS

I.    Factual Background ........................................................................................... 2

    A.   The Parties ............................................................................................ 2

    B.   Events Giving Rise to This Litigation .................................................. 2

    C.   In the Western District of Washington, HTC Asserted Its Refund Claims Do Not Involve the Prior Licenses. ............................................................. 3

    D.   In the Eastern District of Texas, HTC Now Changes Course and Asserts Its Refund Claims Are Based on the Prior Licenses. .................................... 4

    E.   ██████████████████████████████████████████ ........................... 4

II.   Argument—HTC's Refund Claims Are Arbitrable ........................................... 5

    A.   Standard of Review ............................................................................... 5

    B.   The Prior Licenses Include Broad Arbitration Provisions that Delegate Arbitrability Questions to the Arbitrator ............................................... 6

    C.   The Arbitration Provisions Encompass HTC's Refund Claims ........................... 7

        1.   HTC's Refund Claims "Touch" Matters Covered by the Prior Licenses' Arbitration Provisions .......................................... 7

        2.   ████████████████████████████████ ........................................... 11

    D.   The Washington Court's Four-Sentence Discussion of Arbitration, After Determining It Lacked Jurisdiction, Does Not Control this Court's Decision ..... 13

III.  The Court Should Sever and Stay the Refund Claims from the "Go-Forward" Claim ................................................................................................................. 14

IV.   Conclusion ....................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alford v. Dean Witter Reynolds, Inc.*,
 975 F.2d 1161 (5th Cir. 1992) ...................................................................................14

*United States ex rel. Cassaday v. KBR, Inc.*,
 590 F. Supp. 2d 850 (S.D. Tex. 2008) ......................................................................14

*Collins & Aikman Prods. Co. v. Bldg.*
 58 F.3d 16 (2d Cir. 1995)......................................................................................14, 15

*Copeland v. Merrill Lynch & Co.*,
 47 F.3d 1415 (5th Cir. 1995) ..........................................................................12, 13, 14

*Dean Witter Reynolds Inc. v. Byrd*,
 470 U.S. 213 (1985).....................................................................................................5

*Douglas v. Regions Bank*,
 757 F.3d 460 (5th Cir. 2014) ....................................................................................6, 7

*Educ. Mgmt Servs., LLC v. Slaikeu*,
 2014 U.S. Dist. LEXIS 191080 (W.D. Tex. May 23, 2014)......................................8

*First Options of Chi., Inc. v. Kaplan*,
 514 U.S. 938 (1995)...............................................................................................6, 12

*Green Tree Fin. Corp.—Ala. v. Randolph*,
 531 U.S. 79 (2000).......................................................................................................5

*Harvey v. Joyce*,
 199 F.3d 790 (5th Cir. 2000) ....................................................................................12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 2018 U.S. LEXIS 3879 (June 25, 2018) .....................................................................6

*James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*,
 2014 U.S. Dist. LEXIS 40886 (E.D. Ky. Mar. 27, 2014).........................................13

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
 460 U.S. 1 (1983)........................................................................................................5

*Muecke Co. v. CVS Caremark Corp.*,
 2012 U.S. Dist. LEXIS 191244 (S.D. Tex. Feb. 22, 2012) .......................................8

*Muecke Co. v. CVS Caremark Corp.*,
 2014 U.S. Dist. LEXIS 185509 (S.D. Tex. June 27, 2014) ....................................................13

*Painewebber Inc. v. Chase Manhattan Private Bank (Switz.)*,
 260 F.3d 453 (5th Cir. 2001) ...............................................................................................13

*Pennzoil Exploration & Prod. Co. v. Ramco Energy*,
 139 F.3d 1061 (5th Cir. 1998) ................................................................................................7

*Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*,
 297 F.3d 388 (5th Cir. 2002) ..............................................................................................5, 6

*Petrofac, Inc. v. DynMcDermott Petro. Ops. Co.*,
 687 F.3d 671 (5th Cir. 2012) ..............................................................................................6, 7

*Rent-A-Center, W., Inc. v. Jackson*,
 561 U.S. 63 (2010) .................................................................................................................6

*Safer v. Nelson Fin. Grp.*,
 422 F.2d 289 (5th Cir. 2005) ..................................................................................................5

*Sam Reisfeld & Son Import Co. v. S.A. Eteco*,
 530 F.2d 679 (5th Cir. 1976) ................................................................................................14

*Wick v. Atlantic Marine*,
 605 F.2d 166 (5th Cir. 1979) ................................................................................................14

**Statutes**

9 U.S.C. § 3.................................................................................................................................14

**Other Authorities**

*Restatement (Second) of Contracts* § 213 cmt. c .........................................................................10

iii

HTC sued Ericsson asserting that Ericsson offered HTC a royalty rate in excess of FRAND during the parties' cross-license negotiations in 2016. The main thrust of HTC's suit is to obtain a ruling on the FRAND rate for a "go-forward" license. HTC also, however, includes an "ancillary" request for refunds of "back royalties" *dating back to 2003* related to HTC's alleged overpayments to Ericsson under prior licenses that HTC voluntarily signed in 2003, 2008, and 2014 ("Prior Licenses"). The grounds HTC alleges for its refund claim are generally:

- It should have only paid royalties only on the cost of the baseband processor (allegedly the smallest, saleable patent practicing unit), ███████████████████ ████████████████████████████████████████ .

- It should not have paid 3G royalties for its phones that use Qualcomm baseband processors, because Qualcomm is licensed from Ericsson for 3G and HTC actually had pass through rights ███████████████████████ .

- The royalties it has paid since 2003 were higher than permitted by FRAND.

These claims, however, fall within clear and express arbitration provisions contained in each of the Prior Licenses covering all "disputes, differences or questions" between the parties. Therefore the "back royalties" claims must be severed, stayed, and submitted to arbitration. HTC admitted as much *by* ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

HTC attempts to avoid the arbitration provisions on the basis that the claims in this case are brought under ETSI's FRAND commitment and do not relate to the "interpretation or

performance" of the three Prior Licenses. ████████████████████████████████

███████████████████████████████████████████████████████████████Making this

determination will necessarily require interpretation of the Prior Licenses, as HTC conceded by

██████████████████████████████████████████. Additionally, HTC's

responsive FRAND contentions make clear that its "back royalties" claims directly implicate the

interpretation and performance of the Prior Licenses by raising (at least) ***ten arbitratable***

***disputes, issues, or questions***. As such, HTC's back royalties claims must be sent to arbitration.

## I.      Factual Background

### A.      The Parties

For more than three decades, Ericsson has been a leader in developing the second

generation (2G), third generation (3G), fourth generation (4G), and now the fifth generation (5G)

cellular communication standards. Ericsson's extensive research and development efforts have

resulted in it being awarded a substantial portfolio of patents that are essential to the cellular

communication standards. Ericsson has granted more than 150 licenses to its essential patents to

most of the major participants in the mobile telecommunications industry. HTC, which designs

and sells mobile devices that practice the cellular standards, signed such licenses in 2003, 2008,

and 2014. Exs. A-C. Each of those licenses included a mandatory arbitration provision and an

integration clause. Ex. A ¶ 10, 16; Ex. B ¶ 9, 15; Ex. C ¶ 10.2, 16.1. HTC paid the agreed

royalties under those licenses through the last license's expiration in December 2016.

### B.      Events Giving Rise to This Litigation

In mid-2016, the parties began negotiating a license for 2017 onward. Whereas the Prior

Licenses were the product of bilateral negotiations without litigation, HTC's approach to

negotiating a fourth license with Ericsson was different. This time, shortly after the last license

expired, HTC filed this lawsuit asserting that Ericsson breached its obligations to license its

essential patents on fair, reasonable, and non-discriminatory (FRAND) terms and conditions and that it violated the implied covenant of good faith and fair dealing by allegedly refusing to offer a FRAND rate. In October 2017, HTC amended its complaint to request a refund of "back royalties" that HTC paid Ericsson under the Prior Licenses, in addition to a "go-forward" license under a Court-determined FRAND rate. Dkt. No. 41, First Am. Compl. ¶ 84.

### C.   In the Western District of Washington, HTC Asserted Its Refund Claims Do Not Involve the Prior Licenses.

HTC initially filed this suit in the Western District of Washington. Ericsson moved to dismiss all of HTC's claims based on lack of personal jurisdiction, improper venue, and the Prior Licenses' arbitration clauses. The Washington Court held that Ericsson was not subject to personal jurisdiction and transferred the case to this Court. Dkt. No. 81, at 4-6.

In response to the arbitration claims, HTC initially told the Washington Court that its "back royalties" claims were merely the tail wagging the dog, arguing that "the heart of HTC's claims are forward-looking and that the "backward-looking claim" was merely "ancillary." Dkt. No. 52, at 22-23. HTC then argued that its ancillary "back royalties" claims did not trigger the arbitration clauses because, in asserting them, HTC's pleadings artfully avoided any mention of the Prior Licenses: "nohere [sic] in HTC's FAC is there a discussion of the terms, construction, interpretation or validity of the parties' prior licensing agreements." Dkt. No. 52, at 21; *see also id.* at 22 ("[T]he FAC makes no mention of the performance or interpretation of the expired licenses . . . ."). HTC represented to the Washington Court that its "back royalties" claims would have "nothing to do with the interpretation or validity of the parties' prior licenses," *id.*, and at the motion to dismiss hearing, reiterated that HTC did not have "any issue with the performance, with the interpretation, with the breach, with the termination," of the Prior Licenses, going so far as to state that "those contracts, we don't think, are here at all." Ex. D, Hr'g Tr. 37:8-14.

3

Relying on HTC's representations, the Washington Court held—in only four sentences—that it would not dismiss HTC's complaint based on the arbitration provisions because "[t]he language of the complaint (which cites to the standards-setting contracts) controls – the arbitration provisions of the Licensing Agreements are inapplicable here." Dkt. No. 81, at 5.

### D. In the Eastern District of Texas, HTC Now Changes Course and Asserts Its Refund Claims Are Based on the Prior Licenses.

On July 5, 2018, after transfer to this District, HTC served its responsive FRAND contentions that elaborated on its "back royalties" claims. HTC's contentions made clear that—contrary to what HTC told the Washington Court when opposing arbitration—the interpretation and performance of the Prior Licenses *would* be at issue in this case. HTC's contentions included ████████████████████████████████████, Ex. E at 5-9, ████████████████ ████████████████████████████████████████████████████████████████ ████████, *id.* at 9. Additionally, HTC's FRAND contentions state that "Ericsson extracted massive, unwarranted 3G related royalties from HTC in the past" by charging royalties on 3G phones with Qualcomm baseband processors. *Id.* at 23-24. These issues were not apparent from HTC's complaint, nor did HTC reveal them to the Washington Court in opposing arbitration.

### E. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

4



## II.     Argument—HTC's Refund Claims Are Arbitrable

████████████████████████████████████████████████████████████████████

████████████████████████████████ HTC insists that its refund claims can still proceed in this Court. That position is contrary not only to the arbitration provision in the parties' Prior Licenses, but also to ███████████████████████████████████. The Court should enforce the parties' agreement by severing, staying, and compelling arbitration of the refund claims.

### A.     Standard of Review

The party opposing arbitration—HTC—bears the burden of proving that the parties did not intend to arbitrate the claims at issue. *Green Tree Fin. Corp.—Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Courts have "repeatedly emphasized the strong federal policy in favor of arbitration." *Safer v. Nelson Fin. Grp.*, 422 F.2d 289, 294 (5th Cir. 2005). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The Court must decide only "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002). '[A]ny doubts concerning the scope of arbitration issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Arbitration should be denied only if "it can be

5

said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Motorola*, 297 F.3d at 293.

The court's discretion is even more limited where the parties delegated to the arbitrator the "gateway" question of whether the dispute in question is arbitrable. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). If there is "clear and unmistakable" evidence that the parties agreed to delegate arbitrability, the court must leave that question for the arbitrator. *First Options*, 514 U.S. at 944. Incorporating arbitration rules that allow the arbitration panel to decide its own jurisdiction is clear and unmistakable evidence of delegation. *Petrofac, Inc. v. DynMcDermott Petro. Ops. Co.*, 687 F.3d 671, 675 (5th Cir. 2012). When the arbitration agreement delegates arbitrability to arbitration, the court may deny a motion to compel arbitration only where the assertion of arbitrability is "wholly groundless." *Douglas v. Regions Bank*, 757 F.3d 460, 463-64 (5th Cir. 2014).[1]

### B.     The Prior Licenses Include Broad Arbitration Provisions that Delegate Arbitrability Questions to the Arbitrator

The Prior Licenses between Ericsson and HTC each contain a broad arbitration clause. The licenses executed in 2003 and 2008 require all disputes, differences, or questions between the parties to be settled in arbitration:

> All disputes, differences or questions between the Parties shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce in Stockholm, Sweden, by three (3) arbitrators, appointed in accordance with the said Rules.

---

[1] *But see Henry Schein, Inc. v. Archer & White Sales, Inc.*, 2018 U.S. LEXIS 3879 (June 25, 2018) (granting petition for writ of certiorari to decide whether a court must nonetheless refer the gateway issue of arbitrability to arbitration *even if* the assertion of arbitrability is wholly groundless).

Ex. A ¶ 10; Ex. B ¶ 9. The license executed in 2014 similarly states:

> All disputes, differences or questions arising out of or relating to the interpretation, performance, breach or termination of this Agreement, between the Parties shall be finally settled in New York, New York, under the Rules of Arbitration of the International Chamber of Commerce, by three (3) arbitrators, appointed in accordance with said Rules.

Ex. C ¶ 10.2.

Not only is the language describing the scope of the arbitrable disputes broad ("[a]ll disputes, differences or questions . . ."), each license expressly incorporates the Rules of Arbitration of the International Chamber of Commerce, Ex. A ¶ 10; Ex. B ¶ 9; Ex. C ¶ 10.2. The ICC Rules, in turn, provide that questions of arbitrability are decided by an arbitral tribunal or the International Court of Arbitration. *See* Ex. G (ICC Rules) at Art. 6. Because the Prior Licenses' incorporation of those rules clearly and unmistakably delegates questions of arbitrability to the arbitration panel, *see Petrofac*, 687 F.3d at 675, this Court's only role—at most —is to determine whether Ericsson's assertion of arbitrability is "wholly groundless." *Douglas*, 757 F.3d at 463-64.

### C.   The Arbitration Provisions Encompass HTC's Refund Claims

#### 1.   HTC's Refund Claims "Touch" Matters Covered by the Prior Licenses' Arbitration Provisions.

"Broad arbitration clauses"—such as those here—"are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Exploration & Prod. Co. v. Ramco Energy*, 139 F.3d 1061, 1067 (5th Cir. 1998). Accordingly, a dispute may be arbitrable even where the plaintiff has based its claim on something other than the agreement including the arbitration clause. *Id.* "[I]t is only necessary that the dispute 'touch' matters covered by the [arbitration agreement] to be arbitrable." *Id.* at 1068.

7

That standard is easily met here. Under the 2003 and 2008 arbitration provisions, HTC's "refund" claims clearly are a "dispute[], difference[] or question[] between the Parties." HTC previously argued that its claims do not have anything to do with the "interpretation, performance, breach or termination" of the Prior Licenses because they "aris[e] out of separate contracts, like the one between Ericsson and ETSI for the benefit of third parties." Dkt. No. 52, at 22. But only the 2014 License includes the "interpretation, performance, breach or termination" language; the 2003 and 2008 Licenses broadly cover "[a]ll disputes, differences or questions between the Parties." That language does not contemplate any requirement that the "dispute[], difference[] or question[]" arise directly out of the arbitration-compelling contract.

HTC's argument with respect to the 2014 License fares no better, as HTC's "refund" claims "aris[e] out of or relat[e] to the interpretation, performance, breach or termination of" that agreement. A broad arbitration clause such as the 2014 License provision "covers a broad range of disputes with nearly any relationship to the . . . agreement," even where the cause of action is not breach of the contract containing the arbitration clause. *Muecke Co. v. CVS Caremark Corp.*, 2012 U.S. Dist. LEXIS 191244, at *70-72 (S.D. Tex. Feb. 22, 2012); *Educ. Mgmt Servs., LLC v. Slaikeu*, 2014 U.S. Dist. LEXIS 191080, at *24-26 & n.100 (W.D. Tex. May 23, 2014).

HTC's responsive FRAND contentions raise *at least* the following ten arbitrable disputes, issues, or questions related to interpretation and performance of the Prior Licenses:

(1) *Whether HTC overpaid because it should not have paid 3G royalties on handsets with Qualcomm chipsets.* ███████████████████████████████████████████ ██████, yet HTC nevertheless agreed to the royalty rates reflected in the Prior Licenses. Resolution of this issue will require interpretation of the parties' intent and the Prior Licenses.

(2) *How many phones with Qualcomm chipsets HTC actually sold and allegedly overpaid*

8

*3G royalties on*. If HTC is correct that it should not have paid 3G royalties on certain handsets, the Court will need to determine how much in royalties HTC paid for such phones—i.e., HTC's performance under the Prior Licenses.

(3) *The actual percentage royalty rate that HTC paid in view of the Prior Licenses'* ███████. As described in HTC's FRAND contentions, ████████████████████ ████████████████. *See* Ex. E, at 7-8. ████████████████████ ████████████████████████—i.e., performance.

(4) *The actual percentage royalty rates that HTC paid* ████████████████. As described in HTC's FRAND contentions, ████████████████████ ████████████████████. *See* Ex. E, at 7 nn.15-16. HTC's refund claim will require assessing whether and to what extent HTC took advantage of ████████████.

(5) *The actual percentage royalty rate that HTC paid* ████████████████ ██████. The 2014 License provided for a ████████████████████ █████. *See* Ex. E, at 8. HTC's refund claim will require ████████████████ ████████████████████████.

(6) *How the value of a* ████████████████████*changes the effective royalty rate paid by HTC*. Each of the Prior Licenses included ████████████ ████████████████████████████████████ ████████ will be a component of any refund claim.

(7) *Whether the non-monetary license terms are sufficiently comparable to other licenses that those licenses should be considered in the FRAND analysis*. The Prior Licenses include various non-monetary license terms. They provide some value and therefore must be interpreted and included in any comparable license analysis.

9

(8) *Whether HTC's course of performance and dealing under the Prior Licenses waives and/or supersedes its new position*. For the past 15 years, HTC agreed to pay royalties ████ ████████. Now, however, HTC claims that it should have been paying royalties only on the cost of a single chip in the phone. Whether HTC's course of dealing and performance under the Prior Licenses will be relevant to resolving the parties' back royalties dispute.

(9) *Whether license rights extend to* █████████████████████████ ███████. HTC's FRAND contentions state that Ericsson "may have exhausted some or all of its 2G, 3G, and 4G SEPs through the sale of networking equipment." Ex. E, at 24. That argument squarely raises the scope of HTC's ███████████ in the Prior Licenses, and to what extent ████████████████████████. Accordingly, the Court will have to interpret the Prior Licenses.

(10) *Whether the* ██████████ *contained in the Prior Licenses results in the Prior Licenses superseding any prior promises or representations (including the ETSI FRAND commitment)*. HTC's argument essentially is that the ETSI FRAND commitment overrides HTC's voluntary assent to the Prior Licenses. But even if the ETSI FRAND commitment and the Prior Licenses conflict, they must be reconciled with one another. Further, when construing the meaning of the contracts, the court must interpret the ████████████████████████ ████████████████████:



Ex. A ¶ 16; Ex. B ¶ 15; Ex. C ¶ 16.1 (emphasis added). Integrated contracts prohibit enforcement of earlier agreements that cover the same subject matter. *Restatement (Second) of Contracts* § 213 cmt. c ("Where the parties have adopted a writing as a complete and exclusive statement of

the terms of the agreement, even consistent additional terms are superseded.'). The Prior Licenses' "subject matter" was the terms and conditions of a license to Ericsson's standard essential patents, and the Prior Licenses ███████████████████████████. *See* Ex. A ¶¶ 1.8, 1.14 (███████████████████████████); Ex. B ¶¶ 1.10, 1.16 (same); Ex. C ¶¶ 1.17, 1.23, 1.29-.31 (same). Thus, whether the Prior Licenses superseded any previous obligation arising out of Ericsson's ETSI agreement (they did) will be an (arbitrable) issue in this case.

In short, HTC's refund claims will require analysis and interpretation of the Prior Licenses, as it cannot possibly prove its claim for a "refund" of royalties paid "over the course of the parties' long relationship" without the Prior Licenses. Indeed, in a trial for a refund, the Prior Licenses will be Exhibits 1, 2, and 3. HTC even admitted as much, stating that its refund claims 'touch[] on the prior licenses." Dkt. No. 52, at 22-23. That alone is sufficient to show that Ericsson's argument for arbitrability of the refund claims is not wholly groundless.



**2.**



**D.      The Washington Court's Four-Sentence Discussion of Arbitration, After Determining It Lacked Jurisdiction, Does Not Control this Court's Decision**

In the parties meet and confer over this motion, HTC asserted that the law of the case doctrine forecloses Ericsson's motion. HTC is incorrect for several reasons.

*First*, law of the case applies only "once a court of competent jurisdiction decides upon a rule of law." *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1423 (5th Cir. 1995). But the



12

Washington Court expressly held that it lacked jurisdiction. Dkt. No. 81, at 6. It thus was not a "court of competent jurisdiction." *See Painewebber Inc. v. Chase Manhattan Private Bank (Switz.)*, 260 F.3d 453 (5th Cir. 2001) (vacating order compelling arbitration because court lacked personal jurisdiction).

*Second*, law of the case only "govern[s] the same issues in subsequent stages of the same case." *Copeland*, 47 F.3d at 1423. Here, the issues are different, both factually and procedurally. The Washington Court ruled only on a motion to dismiss, and therefore limited itself to the "language of the complaint." Dkt. No. 81, at 5. It also made its decision in light of HTC's representations at the time that the case "doesn't involve, in any way, those old contracts." Hr'g Tr. 44:16-18. Here, however, Ericsson moves to compel arbitration, and this Court has before it information about HTC's claims that the Washington Court did not have—specifically, HTC's FRAND contentions that reveal that interpretation and performance of the Prior Licenses *will* be at issue, and HTC's ██████████████████████████████████████████. Courts routinely evaluate how theories of liability evolve in a case, and are willing to reconsider an earlier denial of arbitration if evolution of the case warrants. *See Muecke Co. v. CVS Caremark Corp.*, 2014 U.S. Dist. LEXIS 185509, at *18 (S.D. Tex. June 27, 2014) ("As the facts and legal theories have become clearer in this case, the court has become aware that interpretation of the information-usage terms of the provider agreements is inescapable for the claims in this case."), *adopted*, 2014 U.S. Dist. LEXIS 185508 (S.D. Tex. Sept. 30, 2014), *aff'd*, 615 F. App'x 837 (5th Cir. 2015); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 2014 U.S. Dist. LEXIS 40886 (E.D. Ky. Mar. 27, 2014) (reconsidering arbitration motion where the movants "presented evidence obtained during discovery which establishes that the basis of liability" was arbitrable).

13

Third, "the law of the case doctrine is a discretionary rule of practice which does not limit the *power* of the court to revisit a legal issue." *Copeland*, 47 F.3d at 1424. "The doctrine permits a change of position when it appears that the original ruling in the case was wrong." *Id.* In that sense, the prior denial of arbitration is an interlocutory ruling that can be revisited at any point. The four-sentence conclusory arbitration denial is not the kind of decision to which this Court should defer.  The Washington Court never even referred to the "wholly groundless" standard of review. It also ruled in reliance on HTC's assertions that its claims had nothing to do with the Prior Licenses, but subsequent events show that HTC's assertions are no longer true. Ericsson's assertion of arbitrability is far from wholly groundless, and the Court should compel arbitration.

## III. The Court Should Sever and Stay the Refund Claims from the "Go-Forward" Claim

Where the court finds that an issue is arbitrable, the FAA provides that a court "shall . . . stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. "[A] stay is mandatory upon a showing that the opposing party has commenced a suit upon any issue referable to arbitration under an agreement in writing for such arbitration. Thus, the court may not deny a stay in such a situation." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (internal citation and quotation marks omitted).

Here, a stay of the entire case is unnecessary, as only the "back royalties" claims are subject to arbitration. "[I]t is well settled in this circuit that if some claims are arbitrable and others are not and they are easily severable, that the court should stay proceedings as to those claims which are arbitrable." *Wick v. Atlantic Marine*, 605 F.2d 166, 168 (5th Cir. 1979); *see Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976); *Collins & Aikman Prods. Co. v. Bldg.* 58 F.3d 16, 20 (2d Cir. 1995); *United States ex rel. Cassaday v. KBR, Inc.*, 590 F. Supp. 2d 850 (S.D. Tex. 2008). "Indeed, there is no reason why, in a proper

14

case, [the court] cannot sever even a part of a claim, where that claim raises both arbitrable and non-arbitrable issues." *Collins & Aikman*, 58 F.3d at 20. This is such a case.

First, HTC itself stated its "backward-looking claim for damages" is merely "ancillary" and that if that claim was dismissed, its prospective claims should proceed in court—essentially admitting that the "back royalties" claims are severable. *See* Dkt. No. 52, at 22-23.

Second, any FRAND evaluation of the go-forward claim will be materially different from a FRAND evaluation of the Prior Licenses. The refund claims and go-forward claim involve different time periods, different issues, different patents, and different technology. What was FRAND in 2003 is not necessarily what is FRAND fifteen years later in 2018. For example, the universe of relevant patents (both industry-wide and Ericsson-owned) has changed, as has the universe of comparable licenses. *See generally* Dkt. No. 123 (Ericsson's Opposition to HTC's Motion for Partial Summary Judgment, explaining the significant changes just between 2015 and 2018). And the FRAND calculus itself could be affected by governing law and circumstances at the time, such as reconciling Ericsson's FRAND obligation with the terms that HTC voluntarily agreed to in the Prior Licenses. That same issue will not arise in the go-forward claim.

Given these differences, at least four time "snapshots" will be necessary to resolve all of HTC's claims—one for each licensing period (2003, 2008, 2014, and go-forward). Not only is severing the refund claims from the go-forward claim easy given these discrete time periods, it makes practical sense by avoiding the need for the jury to juggle four different FRAND analyses. Thus, the Court should sever and stay the refund claims and proceed on the go-forward claim.

## IV.     Conclusion

For the foregoing reasons, the Court should grant Ericsson's motion to sever HTC's "back royalties" claims from the go-forward claim and then stay the back royalties claims pending arbitration. Doing so is the only way to honor the parties' arbitration agreement.

15

Dated: August 15, 2018                                    Respectfully submitted,


By: /s/ *Theodore Stevenson, III*                    ___
    Theodore Stevenson III, lead counsel
    TX State Bar No. 19196650
    tstevenson@mckoolsmith.com
    Nicholas Mathews
    TX State Bar No. 24085457
    nmathews@mckoolsmith.com
    Chelsea A. Priest
    TX State Bar No. 24102375
    cpriest@mckoolsmith.com
    Jonathan Powers
    TX State Bar No. 24098277
    jpowers@mckoolsmith.com
    **MCKOOL SMITH, PC**
    300 Crescent Court, Suite 1500
    Dallas, TX 75201
    Telephone: (214) 978-4000
    Telecopier: (214) 978-4044


    Christine Woodin
    TX State Bar No. 24199951
    cwoodin@mckoolsmith.com
    **MCKOOL SMITH, PC**
    300 W. 6th Street, Suite 1700
    Austin, TX 78701
    Telephone: (512) 692-8700
    Telecopier: (512) 692-8744


    Blake Bailey
    TX State Bar No. 24069329
    **MCKOOL SMITH, PC**
    600 Travis Street, Suite 7000
    Houston, TX 77002
    Telephone: (713) 485-7300
    Telecopier: (713) 485-7344


    **ATTORNEYS FOR DEFENDANTS
    AND COUNTERCLAIM PLAINTIFFS
    TELEFONAKTIEBOLAGET LM
    ERICSSON AND ERICSSON INC.**

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a), and therefore served on all counsel who have consented to electronic service. Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record who did not receive the attached will be served by electronic mail, facsimile transmission and/or first class mail, on August 15, 2018.

/s/ *Theodore Stevenson, III*
Theodore Stevenson, III

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on August 9, 2018, Theodore Stevenson III, counsel for Ericsson, conferred by telephone with Andrew Culbert, counsel for HTC, regarding the disputes at issue in this motion. The parties were unable to reach agreement.

/s/ *Theodore Stevenson, III*
Theodore Stevenson, III

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

I hereby certify that pursuant to the Protective Order in the above-captioned case, this motion and the exhibits thereto contain confidential information. Accordingly, this document is to be filed under seal.

/s/ *Theodore Stevenson, III*
Theodore Stevenson, III

17