# EXHIBIT D

```
                  UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF WASHINGTON AT SEATTLE
_____

 HTC CORPORATION AND HTC          )
 AMERICA, INC.,                   )
                                  ) CASE NO. C17-534-MJP
            Plaintiffs,           )
                                  ) SEATTLE, WASHINGTON
 v.                               ) May 8, 2018
                                  )
 TELEFONAKTIEBOLAGET LM           ) ORAL ARGUMENT
 ERICSSON and ERICSSON, INC.,     )
                                  )
            Defendants.           )
                                  )
_____

              VERBATIM REPORT OF PROCEEDINGS
          BEFORE THE HONORABLE MARSHA J. PECHMAN
                UNITED STATES DISTRICT JUDGE
_____


 APPEARANCES:

  For the Plaintiffs:     T. ANDREW CULBERT
                          SUSAN FOSTER
                          KEVIN ZECK
                          LAUREN HENNESSEY
                          Perkins Coie
                          1201 3rd Avenue, Suite 4900
                          Seattle, WA 98101-3099

  For the Defendants:     THEODORE STEVENSON, III
                          McKool Smith PC
                          300 Crescent Court, Suite 1500
                          Dallas, TX 75201

                          PHILIP S. MCCUNE
                          Summit Law Group
                          315 5th Avenue S, Suite 1000
                          Seattle, WA 98104

  Reported by:            NANCY L. BAUER, CCR, RPR
                          Federal Court Reporter
                          700 Stewart Street, Suite 17205
                          Seattle, WA 98101
                          (206) 370-8506
                          nancy_bauer@wawd.uscourts.gov
```

1     There is nothing in the state of Texas, in terms of facts
2  or witnesses, that will be germane to the ultimate resolution
3  of this breach of FRAND case.  And the reason that is so is,
4  you have to look -- sort of do -- fast-forward to the end of
5  the day, what are we actually going to be trying here?  And
6  what we're going to be trying is pretty basic, and there
7  really are only three things.  Was the license that they
8  offered reasonable?  Was it discriminatory?  And if the
9  answer to either of those was -- is no, then what are our
10 damages?  What's the claim?
11    And here, on the question of is the license reasonable,
12 that question is going to be, as a practical matter, resolved
13 by documentary evidence, in terms of what the documents say,
14 and expert testimony.  And if you look at what happened in
15 the *TCL* case, it's largely expert testimony.  If you look at
16 what happened here in Judge Robart's case, *Microsoft v.*
17 *Motorola* case, it was largely expert testimony, based on a
18 documentary record.  None of that, the expert testimony on
19 what is a reasonable license, the expert testimony on what is
20 a discriminatory license, none of it has a connection to
21 Texas, and certainly HTC has no connection to Texas in that
22 regard.
23    So as a practical matter, the trial of this case doesn't
24 entail anything having to do with Texas, and we would submit
25 that HTC lives here, it's our choice of forum.  If there is

1  fact evidence that would come out of trial, it would be HTC's
2  damages that would be connected, and so for those reasons,
3  the litigation here would be appropriate.
4           THE COURT:  Well, I'm trying to figure out where any
5  of this resides, because, as counsel has indicated, these
6  contracts were negotiated in Taiwan.  So what is it that's
7  really here?
8           MR. CULBERT:  Well, so -- so there's Taiwan -- the
9  contracts negotiated in Taiwan are not here, so we have not
10 brought those contracts -- we don't have any -- any issue
11 with the performance, with the interpretation, with the
12 breach, with the termination.  They're expired contracts.
13 They were fully performed.  So those contracts, we don't
14 think, are here at all.
15    So what is here is, in many ways, the same thing that was
16 in Judge Robart's courtroom in that *Motorola* case, the same
17 thing that was in Judge Selna's courtroom in the *TCL* case.
18 What is here are the Standard Setting Organization contracts,
19 and the question is, were they breached, and if so, what is
20 the consequence for that breach?  So that is what is here.
21          THE COURT:  But they were negotiated between Sweden
22 and France.
23          MR. CULBERT:  Well, they were negotiated as part of
24 that standard setting process.  I think that's right.  The
25 negotiations of those contracts are not part of the case.

1   This is not a case about contract negotiations.  No one
2   really disputes what the contracts say.  These ETSI or IEEE,
3   no one disputes what the contracts say.  And to my knowledge,
4   there is no dispute over what the words are and how they
5   apply.
6       What the dispute is about is the performance of those
7   contracts, and that performance, we submit, is an obligation
8   on their part to give to HTC this defense to patent
9   assertion, and that defense to patent assertion takes the
10  form of this reasonable and nondiscriminatory license.
11  That's what the case is about.
12      And, actually, in the grand scheme of things, it may not
13  be nearly as complex as counsel has made it out to be, and
14  that's because we have the benefit of that *TCL* case.  These
15  same issues, the breach of the ETSI contract, what is the
16  reasonable royalty, what is the discriminatory royalty, were
17  completely and fully litigated and adjudicated in *TCL*.
18  Ericsson made roughly the same offer to TCL that it made to
19  HTC.  Judge Selna concluding that was not a reasonable offer
20  .
21      Same license agreements for comparable purposes were
22  submitted to the court in *TCL*.  Judge Selna concluded those
23  were discriminatory.
24      Those rulings from Judge Selna in that case litigated,
25  like Ericsson in California, we think will have collateral

1        I also think that being realistic about how this case will
2   unfold, and taking into account that *TCL* case and what will
3   happen here because of that *TCL* case, I think we can reduce
4   this to a very manageable case going forward.
5        So we think that we have met the personal jurisdiction
6   requirement and that we have demonstrated that their request
7   to transfer for convenience is not well taken.
8        Another point I wanted to make about personal jurisdiction
9   has to do with the policy implications of why, as a matter of
10  policy, it would be important to keep the case here, and that
11  goes to -- goes back to why these FRAND commitments are there
12  in the first place.
13       Companies like Ericsson and Qualcomm and Nokia, that have
14  gotten together and created these standards, knowing that
15  they have patents that they can use for leverage to make
16  money from these standards -- and they have made a lot of
17  money from using their standard, their essential patents in
18  this case -- but the policy around that is a very strong
19  policy to make sure that when they have this obligation to
20  make the technology available, that they make good on that
21  obligation, and that the forum where the effect of the breach
22  is felt has an interest in making sure that the breaching
23  party is made to account in that forum for their breach.
24       And here, HTC is a Seattle company, HTC America is a
25  Seattle company, and the Western District of Washington has

1   an interest, a policy interest, in making sure that HTC
2   America can be made whole for this contract and that their
3   contractual obligations can be enforced right here.
4       So I think all of the policy reasons for this contract,
5   the contract that we've invoked, those policy reasons dictate
6   that the case should proceed here.
7       Your Honor, I haven't touched on the arbitration argument,
8   so I'd like -- it's one of your questions. I'd like to get
9   to that question.
10      The first point I'd like to make is that those old,
11  expired license agreements are not part of our case. We've
12  not made a claim that anybody has breached those agreements.
13  We've not made a claim involving the interpretation of those
14  agreements. We've not made a claim involving the termination
15  or performance of those agreements. Our claim is under the
16  Standard Setting Organization contract. Just like the case
17  before Judge Robart, just like the case before Judge Selna,
18  it doesn't involve, in any way, those old contracts.
19      But if you look at the language of the contracts, what
20  they have said -- and, again, we don't think that they apply
21  or that they govern, but if you look at the language of the
22  contracts, the contractual language is, actually, quite
23  narrow. And if you look at the most recent of the expired
24  agreements, the 2014 agreement, that agreement has two parts.
25  And maybe I can put this up here.

     So there are two sections to look at.  The first section is, the disputes must arise out of -- and clearly this dispute does not arise out of -- or -- and this is where this agreement is slightly broader than the older agreements.  The older agreements don't have this "relate to" language.  This one does.  So in this sense, it's slightly broader than the older agreement.  But it says, "The dispute must relate to," and then it gives four things.  It must relate to the interpretation, the performance, the breach, or the termination of this agreement.

     That's not our case.  That's not the case we brought.  This contract was not even mentioned in our complaint.  Our case doesn't have to do with the interpretation of that agreement.  It has to do with whether they breached the ETSI and the IEEE agreement.  It has nothing to do with performance.

     No one disputes the fact that the money was paid under these agreements.  That money was paid.  The agreements are expired.  No one is claiming breach.  This dispute is not a case involving the breach of these agreements, and it certainly is not a case involving termination.

     So this particular arbitration clause is much less broad than Ericsson has suggested, and I think it would be -- and the term that gets used in this context is "wholly groundless."  I think it would be wholly groundless to

C E R T I F I C A T E

      I, Nancy L. Bauer, CCR, RPR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

      I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

      Dated this 16th day of July 2018.

/S/  Nancy L. Bauer

Nancy L. Bauer, CCR, RPR
Official Court Reporter