**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| HTC Corporation and HTC America, Inc., | |
| Plaintiffs, | Case No.: 6:18-cv-00243-JRG |
| v. | **JURY TRIAL DEMANDED** |
| Telefonaktiebolaget LM Ericsson and Ericsson Inc. | **PUBLIC VERSION** |
| Defendants. | |
| Telefonaktiebolaget LM Ericsson and Ericsson Inc., | |
| Counterclaim Plaintiffs, | |
| v. | |
| HTC Corporation and HTC America, Inc. | |
| Counterclaim Defendants. | |

**DEFENDANTS TELEFONAKTIEBOLAGET LM ERICSSON AND ERICSSON INC.'S
ANSWER AND COUNTERCLAIMS TO PLAINTIFFS' SECOND AMENDED
COMPLAINT**

Defendants Telefonaktiebolaget LM Ericsson and Ericsson Inc. ("Ericsson") file this Answer and Counterclaims to Plaintiffs HTC Corporation and HTC America, Inc.'s (collectively, "HTC" or "Plaintiffs") Second Amended Complaint (Dkt. No. 135) ("Complaint") pursuant to Federal Rule of Civil Procedure 15(a)(3) and subject to Ericsson's concurrently filed motion to dismiss.

1

**INTRODUCTION**

Licensing of standard essential cellular patents is a two-way street. A patent owner who seeks to license a handset vendor utilizing the standard must abide by its voluntary commitment to provide access to its standard essential patents on fair, reasonable, and non-discriminatory (FRAND) terms subject to reciprocity. By the same token, in order to benefit from the patent owner's FRAND assurance, the technology user must negotiate with patent owners in good faith. Moreover, should the patent owner seek a cross-license of the handset vendor's standard essential cellular patents, the handset vendor must reciprocate with a cross-license on FRAND terms. The failure of a handset vendor, like HTC, to negotiate in good faith, or to reciprocate, exposes the vendor not just to the payment of royalties and damages, but also to forfeiture of the right to make a claim as a third party beneficiary of the patent owner's FRAND assurance.

This is a case about HTC's bad faith in negotiations. In mid-2016, Ericsson and HTC commenced negotiations for a cross-license to of the parties' 2G, 3G, and 4G standard essential patents. Ericsson based its opening offer on the financial terms of the parties' prior license that was set to expire in December 2016. In response, HTC made a prima facie non-FRAND offer. Among other things, ████████████████████████████████████████████ ████████████████████████████. Moreover, before Ericsson could respond to HTC's offer, and while Ericsson believed the parties were still negotiating in good faith, HTC sued Ericsson in Washington (where Ericsson was not even subject to personal jurisdiction), shutting the door on continued business negotiations.

French law, which governs the FRAND assurance, imposes consequences for HTC's bad faith: damages, and more significantly, forfeiture by HTC of the right to claim it is a third-party beneficiary of Ericsson's FRAND assurance.

## ANSWER

## I.    INTRODUCTION[1]

1.      Paragraph 1 is an introductory paragraph that requires no response.  To the extent a response is required, Ericsson denies the allegations of this paragraph.

2.      Ericsson admits that Ericsson is a member of the European Telecommunications Standards Institute (ETSI) and of the Third Generation Partnership Project (3GPP), and that Ericsson has collaborated with other ETSI and 3GPP members to develop and maintain globally applicable technical specifications for the 2G, 3G, and 4G cellular telecommunication systems. Ericsson admits that the technical development of the 2G, 3G, and 4G standards are massive undertakings.  Ericsson admits that the 2G, 3G, and 4G standards reflect thousands of technical contributions by ETSI and 3GPP members.  Ericsson admits that the technical specifications are used by companies that implement the 2G, 3G, and 4G standards, in base stations, mobile handsets, and in various components to those devices.  Except as expressly admitted, Ericsson denies the remaining allegations.

3.      Ericsson admits that Ericsson owns thousands of patents related to cellular technology and cellular telecommunication standards.  Ericsson admits that Ericsson owns standard essential patents.  Except as expressly admitted, Ericsson denies the remaining allegations.

4.      Denied.

5.      Ericsson admits that ETSI has an Intellectual Property Rights ("IPR") Policy, which requires each member to use its reasonable endeavours to inform ETSI of essential intellectual property rights in a timely fashion. In particular, a member submitting a technical

---

[1] To the extent that any headings in the Complaint constitute an allegation that requires a response, Ericsson denies any and all such allegations.

proposal for a standard or technical specification shall, on a bona fide basis, draw the attention of ETSI to any of that member's IPR which might be essential if that proposal is adopted. These obligations do not imply any obligation on members to conduct intellectual property searches. Ericsson admits that the ETSI IPR Policy requests patent holders to give an undertaking that it is prepared to grant licenses to essential patents on fair, reasonable, and non-discriminatory (FRAND) terms and conditions, which may be made subject to the condition that those who seek licenses agree to reciprocate.  Ericsson further admits that Ericsson has declared to ETSI, and to 3GPP via ETSI, that it owns patents that are essential to the 2G, 3G, and 4G standards, and that it is prepared to grant licenses to such patents on FRAND terms and conditions subject to reciprocity.  Except as expressly admitted, Ericsson denies the remaining allegations.

6.     This paragraph contains legal conclusions that do not require a response.  To the extent a response is required, Ericsson denies the allegations of this paragraph.

7.     Denied.

8.     Denied.

9.     Ericsson admits that HTC filed a Second Amended Complaint in this action which speaks for itself.  Ericsson lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies any and all such allegations.

## II.     THE PARTIES

### A.     HTC

10.     Ericsson lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies any and all such allegations.

11.     Ericsson lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies any and all such allegations.

12.     Ericsson lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies any and all such allegations.

13.     Ericsson lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies any and all such allegations.

**B.     ERICSSON**

14.     Ericsson admits Telefonaktiebolaget LM Ericsson is a corporation organized under the laws of the Kingdom of Sweden with its principal place of business at Torshamnsgatan 21, Kista, 164 83, Stockholm, Sweden.   Except as expressly admitted, Ericsson denies the remaining allegations.

15.     Ericsson admits that Ericsson Inc. is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, Texas 75024. Ericsson admits that Ericsson Inc. has an office in Bellevue, Washington.   Ericsson Inc. is a wholly-owned subsidiary of Telefonaktiebolaget LM Ericsson that asserts, when granted the right to do so by Telefonaktiebolaget LM Ericsson, standard essential patents that are part of Telefonaktiebolaget LM Ericsson's standard essential patent portfolio.  Ericsson admits that Telefonaktiebolaget LM Ericsson has declared patents as "essential."  Except as expressly admitted, Ericsson denies the remaining allegations.

16.     Ericsson admits Telefonaktiebolaget LM Ericsson was founded in 1876 as a telegraph and telephone repair shop. Ericsson admits it has sold base stations and supporting software and services compliant with the 2G, 3G, and 4G standards in the United States, including in Washington and in this District. Except as expressly admitted, Ericsson denies the remaining allegations.

17.     Ericsson admits that HTC was previously licensed to Ericsson's portfolio of patents essential to the 2G, 3G, 4G, and WLAN standards. Ericsson admits that other companies

also have licensed Ericsson's patents.  Ericsson admits that it has brought patent infringement actions to enforce its intellectual property rights in the United States.  Except as expressly admitted, Ericsson denies the remaining allegations.

18.    Denied.

**C.    ALLEGED "CO-CONSPIRATORS"**

19.    Denied.

### III.    JURISDICTION AND VENUE

20.    Ericsson admits there is diversity of citizenship pursuant to 28 U.S.C. § 1332; however, Ericsson contests jurisdiction and standing as to allegations related to breach of the IEEE-SA patent policy, as there was no case or controversy at the inception of this action and further because Ericsson has granted HTC a current covenant not to sue as to its patents declared under the IEEE-SA patent policy.   Except as expressly admitted, Ericsson denies the remaining allegations.

21.    Ericsson denies that the Court has jurisdiction over the Sherman Act claims raised in HTC's Complaint because those claims are subject to mandatory arbitration. Ericsson also denies that HTC has standing to bring its Sherman Act claims. Except as expressly admitted, Ericsson denies the remaining allegations.

22.    Ericsson admits that it is subject to this Court's general personal jurisdiction. HTC's allegation that it does not waive its contentions that Ericsson is subject to personal jurisdiction in the Western District of Washington is a legal conclusion that does not require a response.   To the extent a response is required, Ericsson denies that allegation. Except as expressly admitted, Ericsson denies the remaining allegations.

23.     Ericsson admits that venue is proper in this District. Ericsson denies that venue is proper in the Western District of Washington. Except as expressly admitted, Ericsson denies the remaining allegations

## IV.     BACKGROUND

### A.     Standards and their Economic Effects

24.     Paragraph 24 is an introductory paragraph that requires no response.   To the extent a response is required, Ericsson denies the allegations of this paragraph.

25.     Paragraph 25 is an introductory paragraph that requires no response.   To the extent a response is required, Ericsson denies the allegations of this paragraph.

26.     Denied.

27.     Ericsson lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies any and all such allegations.

28.     Ericsson admits that cellular telecommunications standards, such as the 2G, 3G, and 4G standards, allow for interoperability.  Ericsson admits that the 2G, 3G, and 4G standards reflect technical contributions by ETSI and 3GPP members, but those contributions number in the thousands.  Except as expressly admitted, Ericsson denies the remaining allegations.

29.     Ericsson admits that ETSI is a prominent standard setting organization, and that many companies are members of ETSI.  Ericsson admits that Ericsson is a member of ETSI and has actively participated in ETSI meetings.  Ericsson admits that it has submitted technical proposals to ETSI, and to other standard setting organizations, such as 3GPP.  Ericsson admits that it has patents that are essential to the 2G, 3G, and 4G standards.   Except as expressly admitted, Ericsson denies the remaining allegations.

30.     Ericsson denies that in order to operate a cellular network in the United States, cellular service providers, base station manufacturers, and mobile wireless device manufacturers

must comply with cellular standards.  Ericsson admits that ETSI and other standard setting organizations maintain and develop cellular standards.  Ericsson admits that ETSI members include cellular service providers, base station manufacturers, mobile wireless device manufacturers, and manufacturers of components in these devices. The remaining allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them.  Except as expressly admitted, Ericsson denies the remaining allegations.

31.    The allegations in this paragraph are too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them.

32.    The allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them.

33.    The allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them.

34.    Ericsson admits that, under the ETSI IPR Policy, a patent is essential to a standard where it is not possible on technical (but not commercial) grounds, taking into account the normal technical practice and state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate a device that complies with a standard without infringing that patent. The remaining allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them. Except as expressly admitted, Ericsson denies the remaining allegations.

### B.       The FRAND Bargain

35.      Ericsson admits that ETSI has an IPR Policy. Ericsson admits that the ETSI IPR Policy in Clause 6.1 states that, after an essential patent is identified, the Director-General of ETSI "shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory ("FRAND") terms and conditions." Ericsson admits that the declaration form for essential patents states:  "To the extent that the IPR(s) disclosed in the attached IPR Information Statement Annex are or become, and remain ESSENTIAL in respect of the ETSI Work Item, STANDARD and/or TECHNICAL SPECIFICATION identified in the attached IPR Information Statement Annex, the Declarant and/or its AFFILIATES are (1) prepared to grant irrevocable licences under this/these IPR(s) on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy; and (2) will comply with Clause 6.1bis of the ETSI IPR Policy." Ericsson admits that the ETSI IPR Policy states that, if, prior to the publication of a standard or a technical specification, a patent owner informs ETSI that it is not prepared to license an IPR in accordance with Clause 6.1, ETSI will utilize, if possible, a viable alternative that is (1) not blocked by the IPR and (2) satisfies ETSI's requirements.  The remaining allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them. Except as expressly admitted, Ericsson denies the remaining allegations.

36.      The allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them.

37.      Ericsson admits that ETSI has an IPR Policy. Ericsson admits that the ETSI IPR Policy in Clause 6.1 states that, after an essential patent is identified, the Director-General of

ETSI "shall immediately request the owner to give within three months an irrevocable undertaking in writing that it is prepared to grant irrevocable licenses on fair, reasonable and non-discriminatory ("FRAND") terms and conditions."  Ericsson admits that the declaration form for essential patents states:  "To the extent that the IPR(s) disclosed in the attached IPR Information Statement Annex are or become, and remain ESSENTIAL in respect of the ETSI Work Item, STANDARD and/or TECHNICAL SPECIFICATION identified in the attached IPR Information Statement Annex, the Declarant and/or its AFFILIATES are (1) prepared to grant irrevocable licences under this/these IPR(s) on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy; and (2) will comply with Clause 6.1bis of the ETSI IPR Policy."  The remaining allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them. Except as expressly admitted, Ericsson denies the remaining allegations.

38.     The allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them.

### C.     Ericsson's Contractual FRAND Obligations to SDOs and Licensees

39.     Ericsson admits that it is a member of ETSI, a member of the 3rd Generation Partnership Project ("3GPP") via its membership with ETSI, and a member of the Institute of Electrical and Electronics Engineers Standards Association ("IEEE-SA"). Ericsson admits that ETSI is an independent, non-profit standards development organization ("SDO"). Ericsson also admits that 3GPP is a partnership of SDOs. Ericsson further admits that IEEE-SA is the standards-development arm of the Institute of Electrical and Electronics Engineers ("IEEE"). Except as expressly admitted, Ericsson denies the remaining allegations.

40.     Ericsson admits that ETSI has an IPR policy and the IEEE-SA has a patent policy, which set forth the rights and obligations of their members. The remaining allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them. Except as expressly admitted, Ericsson denies the remaining allegations.

41.     Ericsson admits that Paragraph 41 contains an incomplete quotation from Clause 6.1 of the ETSI IPR Policy.  Except as expressly admitted, Ericsson denies the remaining allegations.

42.     Ericsson admits that Clause 8 of the ETSI IPR Policy deals with the "Non-availability of Licences." The document speaks for itself.  Except as expressly admitted, Ericsson denies the remaining allegations.

43.     Ericsson admits that Paragraph 43 contains an incomplete quotation from Clause 12 of the ETSI IPR Policy.  Except as expressly admitted, Ericsson denies the remaining allegations.

44.     Ericsson admits that the IEEE-SA has a patent policy. Ericsson further admits that Paragraph 44 contains the current IEEE-SA Standards Board Bylaws definition of "Reasonable Rate," which the IEEE-SA amended in 2015. Except as expressly admitted, Ericsson denies the remaining allegations.

45.     Ericsson admits that Ericsson has declared to ETSI, and to 3GPP via ETSI, that it owns patents that are essential to the 2G, 3G, and 4G standards, and that it is prepared to grant licenses to such patents on FRAND terms and conditions subject to reciprocity.  Ericsson also admits that it has submitted Letters of Assurance to IEEE-SA in the past, under IEEE-SA's previous patent policy. Ericsson further admits that Telefonaktiebolaget LM Ericsson has made

declarations to ETSI and submitted Letters of Assurance to IEEE-SA.  Ericsson admits that it has declared patents and patent applications. Ericsson further admits that it has declared patents that may be or may become essential to a promulgated standard.  Ericsson admits that it has submitted an IPR Information Statement and Licensing Declaration for patents it believes may be or may become essential to a standard promulgated by ETSI.  Except as expressly admitted, Ericsson denies the remaining allegations.

46.     Ericsson admits that it has submitted IPR Information Statement and Licensing Declarations reciting:  "To the extent that the IPR(s) disclosed in the attached IPR Information Statement Annex are or become, and remain ESSENTIAL in respect of the ETSI Work Item, STANDARD and/or TECHNICAL SPECIFICATION identified in the attached IPR Information Statement Annex, the Declarant and/or its AFFILIATES are (1) prepared to grant irrevocable licences under this/these IPR(s) on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy; and (2) will comply with Clause 6.1bis of the ETSI IPR Policy," subject to the condition that those who seek licenses agree to reciprocate.  Ericsson admits that it has submitted and continues to submit a number of ETSI IPR Licensing Declaration forms, and has declared a large number of patents as essential to the 2G, 3G, and 4G standards.  Ericsson admits that it also has declared patents essential to other standard-setting organizations.   Except as expressly admitted, Ericsson denies the remaining allegations.

47.     Ericsson admits that it is a member of the IEEE-SA and has contributed to the wireless local area network ('WLAN') standard. Ericsson also admits that it has submitted Letters of Assurance to IEEE-SA pursuant to IEEE-SA's patent policies in existence at the time of the submission, including letters of assurance related to U.S. patents and patent applications. Except as expressly admitted, Ericsson denies the remaining allegations.

48.     The allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them.

49.     The allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them.

50.     The allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them.

### D.     The Technology at Issue

51.     Ericsson admits that it has patents essential to the 2G, 3G, and 4G cellular telecommunications standards, and patents essential to the WLAN standards.  To the extent a response is required to any remaining allegations, Ericsson denies them.

52.     Denied.

53.     Ericsson admits that ETSI has over 800 members.  Ericsson admits that other companies have declared patents essential to the 2G, 3G, and 4G standards promulgated by ETSI.  Except as expressly admitted, Ericsson denies the remaining allegations.

### E.     Ericsson Offers Reasonable Royalties

54.     The allegations in this paragraph are legal conclusions that do not require a response.  To the extent a response is required, denied.

55.     Denied.

56.     Denied.

57.     The allegations in this paragraph are legal conclusions that do not require a response.  To the extent a response is required, denied.

58.     The allegations in this paragraph are legal conclusions that do not require a response.  To the extent a response is required, denied.

59.     Denied.

60.     Denied.

61.     Denied.

**F.      Ericsson's Offers Were Not Discriminatory**

62.     Ericsson denies that it insists on discriminatory rates to anyone, including HTC. The remaining allegations in this paragraph are too generalized, speculative, vague, and ambiguous, and Ericsson therefore denies them.

63.     Denied.

64.     Denied.

**G.      HTC's Flawed Allegations Regarding the Marketplace**

65.     Denied.

66.     Denied.

67.     Ericsson admits that it has divested certain patents related to the WLAN, 2G, 3G, and 4G standards.  Except as expressly admitted, Ericsson denies the remaining allegations.

68.     Ericsson admits that it has divested certain patents related to the WLAN, 2G, 3G, and 4G standards.  Except as expressly admitted, Ericsson denies the remaining allegations.

69.     Ericsson admits that it has divested certain patents related to the WLAN, 2G, 3G, and 4G standards.  Except as expressly admitted, Ericsson denies the remaining allegations.

70.     Ericsson admits that it has divested certain patents related to the WLAN, 2G, 3G, and 4G standards.  Except as expressly admitted, Ericsson denies the remaining allegations.

71.     Ericsson admits that it has divested certain patents related to the WLAN, 2G, 3G, and 4G standards.  Except as expressly admitted, Ericsson denies the remaining allegations.

72.     Denied.

**H.     Ericsson Licenses its Standard Essential Patents on FRAND Terms**

73.     Denied.

74.     Ericsson admits that HTC is currently not licensed to Ericsson's portfolio of patents related to any cellular telecommunications standards, and is selling infringing products without a license.  Except as expressly admitted, denied.

75.     Ericsson admits that HTC previously signed three license agreements covering patents related to cellular telecommunications standards.  Ericsson further admits that, pursuant to those license agreements, HTC paid Ericsson millions of dollars.   Except as expressly admitted, Ericsson denies the remaining allegations.

**I.     Ericsson's Participation in Standards Development Organizations**

76.     Denied.

77.     Ericsson admits that it engages in bilateral negotiations with potential licensees, including HTC. Except as expressly admitted, Ericsson denies the remaining allegations.

78.     Ericsson admits that it publicly announced in 2002 that it expected to license its W-CDMA essential patents at a rate proportional to the number of essential patents it owned, with a cumulative royalty rate at a single digit level. Ericsson also admits that other standard essential patent holders joined in this announcement. Ericsson further admits that Paragraph 78 contains an excerpt from that announcement. Except as expressly admitted, Ericsson denies the remaining allegations.

79.     The allegations in Paragraph 79 attempt to characterize the contents of the announcement. The announcement speaks for itself, however, and Ericsson denies the allegations to the extent that they are inconsistent with that document. Except as expressly admitted, Ericsson denies the remaining allegations.

15

80.     Denied.

81.     Denied.

82.     Ericsson admits that it publicly announced in 2008 that it supported a reasonable maximum aggregate royalty level for LTE essential IPR in handsets of a single-digit percentage of the sales price. Ericsson also admits that it expected "the market will drive the LTE licensing regime to be in accordance with these principles and aggregate royalty levels." Ericsson further admits that the announcement explained that this framework "is based on the prevalent industry principle of fair, reasonable and non-discriminatory (FRAND) licensing terms for essential patents." Ericsson also admits that other standard essential patent holders joined in this announcement and supported a similar reasonable maximum aggregate royalty rate. To the extent that the allegations in Paragraph 82 attempt to characterize the contents of the announcement, the document speaks for itself. Except as expressly admitted, Ericsson denies the remaining allegations.

83.     Ericsson admits that one company declined to join in a proposed version of the announcement because it had concerns about how the announcement, as it was structured at the time, could be interpreted. Except as expressly admitted, Ericsson denies the remaining allegations.

84.     Ericsson admits that it publicly and unilaterally announced in 2009 that it expected a 1.5% royalty rate for a license to Ericsson LTE IPR, based on its expectation that it would hold a relative patent strength of 20-25% of all standard essential LTE IPR and its belief the market would drive a reasonable maximum aggregate royalty level of 6-8% for handsets. Except as expressly admitted, Ericsson denies the remaining allegations.

85.     Denied.

16

86.     Denied.

87.     Ericsson admits that Article 19 of ETSI's Rules of Procedure provide for amendments to ETSI's Statutes and Rules of Procedure. Ericsson further admits that amendments to the Rules of Procedure—including amendments to their Annexes, which include the ETSI IPR Policy—require that at least 71% of the total weighted votes be cast in favor of the amendment. Except as expressly admitted, Ericsson denies the remaining allegations.

88.     Ericsson admits that there have been attempts to amend ETSI's IPR Policy. Ericsson further admits that it voted and advocated for or against amendments based on an independent analysis of what it thought would be in its own best interests. Except as expressly admitted, Ericsson denies the remaining allegations.

89.     ███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████

90.     ███████████████████████████████████████████
███████████████████████████████████████████████
████████████

91.     ███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████

92.     Ericsson admits that in 2014 and 2015 it opposed an amendment to the IEEE-SA patent policy because the amendment "significantly disfavored technology contributors," such as Ericsson, and "undermine[d] the equilibrium between technology developers and users that originally allowed standardization to flourish." Except as expressly admitted, Ericsson denies the remaining allegations.

93.     ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

94.     Ericsson admits that after IEEE-SA implemented the new standard in March 2015, it independently chose to submit negative Letters of Assurance to IEEE-SA. Ericsson admits that it is aware of negative Letters of Assurance submitted by other companies after March 2015 as these Letters of Assurance are publicly available. Except as expressly admitted, Ericsson denies the remaining allegations.

95.     Ericsson admits that some technology contributors have continued contributing technology and Letters of Assurance to IEEE-SA. Except as expressly admitted, Ericsson denies the remaining allegations.

96.     Denied.

97.     Denied.

**J.      Alleged Relevant Market**

98.     The allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them.

99.     The allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them.

100.    Ericsson admits that ETSI has promulgated 2G, 3G/CDMA, and 4G/LTE standards and that IEEE-SA has promulgated WLAN standards. The remaining allegations in this paragraph are legal conclusions that do not require a response, and Ericsson therefore denies them. Except as expressly admitted, Ericsson denies the allegations.

101.    The allegations in this paragraph are legal conclusions that do not require a response, or too generalized, speculative, vague, and ambiguous to admit or deny, and Ericsson therefore denies them.

102.    The allegations in this paragraph are legal conclusions that do not require a response, and Ericsson therefore denies them.

**K.      Ericsson Lacks Monopoly Power**

103.    Denied.

104.    Denied.

**L.      Antitrust Injury**

105.    Denied.

106.    Denied.

107.    Denied.

108.    Denied.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION
### (Breach of Contract)

109.   Ericsson incorporates by reference the answers to paragraphs 1-108 above as though fully set forth in their entirety.

110.   Ericsson admits that it has committed to provide access to its patents essential to the 2G, 3G, and 4G standards on FRAND terms and conditions, subject to reciprocity, and in accordance with its IPR Information and Licensing Declarations and the ETSI IPR Policy. Ericsson admits that, prior to March 15, 2015, it had submitted positive letters of assurance to IEEE-SA, indicating its commitment to provide access to patents essential to certain wireless standards on RAND terms and conditions, in accordance with the IEEE-SA patent policy then in effect.  Except as expressly admitted, Ericsson denies the remaining allegations.

111.   This paragraph contains a legal conclusion that does not require a response.  To the extent a response is required, Ericsson denies the allegations of this paragraph.

112.   This paragraph contains a legal conclusion that does not require a response.  To the extent a response is required, Ericsson denies the allegations of this paragraph.

113.   Ericsson admits that it has committed to provide access to patents essential to the 2G, 3G, and 4G standards on FRAND terms and conditions, subject to reciprocity, and in accordance with its IPR Information and Licensing Declarations and the ETSI IPR Policy.  This paragraph contains a legal conclusion that does not require a response.  To the extent a response is required, Ericsson denies the allegations of this paragraph.

114.   Ericsson admits that it has submitted positive and negative Letters of Assurance in accordance with the IEEE-SA patent policy.  This paragraph contains a legal conclusion that does not require a response.  To the extent a response is required, Ericsson denies the allegations of this paragraph.

115.    Denied.

116.    Denied.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Denied.

## SECOND CAUSE OF ACTION
### (Implied Covenant of Good Faith and Fair Dealing)

121.    Ericsson incorporates by reference the answers to paragraphs 1-120 above as though fully set forth in their entirety.

122.    This paragraph contains a legal conclusion that does not require a response.  To the extent a response is required, Ericsson denies the allegations of this paragraph.

123.    Ericsson admits that this paragraph includes a quote from the ETSI "Guide on IPRs."  The document speaks for itself.  Except as expressly admitted, Ericsson denies the remaining allegations.

124.    This paragraph contains a legal conclusion that does not require a response.  To the extent a response is required, Ericsson denies the allegations of this paragraph.

125.    Denied.

## THIRD CAUSE OF ACTION
### (Illegal Restraint of Trade Under 15 U.S.C. § 1)

126.    Ericsson incorporates by reference the answers to paragraphs 1-125 above as though fully set forth in their entirety.

127.    This paragraph contains a legal conclusion that does not require a response.  To the extent a response is required, Ericsson denies the allegations of this paragraph.

128.    This paragraph contains a legal conclusion that does not require a response.  To the extent a response is required, Ericsson denies the allegations of this paragraph.

129.    Denied.

## FOURTH CAUSE OF ACTION
### (Monopolization Under 15 U.S.C. § 2)

130.    Ericsson incorporates by reference the answers to paragraphs 1-129 above as though fully set forth in their entirety.

131.    This paragraph contains a legal conclusion that does not require a response.  To the extent a response is required, Ericsson denies the allegations of this paragraph.

132.    Denied.

133.    Denied.

134.    Denied.

135.    Denied.

## V.     PRAYER FOR RELIEF

Ericsson denies that HTC is entitled to any of the relief requested in its Prayer for Relief. To the extent the Prayer for Relief is interpreted to contain any factual allegations, Ericsson denies them.

## AFFIRMATIVE DEFENSES

Ericsson's Affirmative Defenses are listed below. Ericsson reserves the right to amend its Answer to add additional Affirmative Defenses consistent with the facts discovered in the case.

## FIRST DEFENSE
### (Arbitration)

HTC's antitrust claims and claims for past refunds are subject to mandatory arbitration.

## SECOND DEFENSE
### (Failure to State a Claim)

HTC fails to state a claim upon which relief can be granted because HTC has not alleged facts sufficient to prove one or more of the necessary elements of its causes of action.

## THIRD DEFENSE
### (Laches, Estoppel, Waiver, Acquiescence)

HTC's claims for relief are barred in whole or in part by the equitable doctrines of equitable estoppel, laches, waiver, and/or acquiescence.

## FOURTH DEFENSE
### (Failure to Mitigate)

HTC's claims are barred by its failure to mitigate damages.

## FIFTH DEFENSE
### (Failure to Negotiate in Good Faith)

HTC has failed to negotiate with Ericsson in good faith toward a license to the parties' respective portfolios of essential patents.

## SIXTH DEFENSE
### (Statute of Limitations, Repose)

HTC's claims are barred by the statute of limitations and/or statute of repose.

## SEVENTH DEFENSE
### (Failure to Satisfy a Condition Precedent)

HTC's claims are barred by its failure to satisfy a condition precedent.

## EIGHTH DEFENSE
### ███████████

HTC's claims are barred by ████████████████████

## NINTH DEFENSE
### (Standing)

HTC lacks standing to assert its claims.

**TENTH DEFENSE**
**(Lack of Subject-Matter Jurisdiction)**

The Court lacks subject-matter jurisdiction over HTC's claims related to the IEEE-SA

patent policy because there is no current case or controversy.

**ELEVENTH DEFENSE**
**(Noerr-Pennington)**

HTC's antitrust claims are barred by the *Noerr-Pennington* doctrine.

## COUNTERCLAIMS

1.      Ericsson, by and through its undersigned counsel, alleges the following counterclaims against HTC in accordance with the Federal Rules of Civil Procedure. Ericsson incorporates the foregoing responses and defenses as if fully set forth herein.

## THE PARTIES

2.      Counterclaim Plaintiff Telefonaktiebolaget LM Ericsson is a corporation organized under the laws of the Kingdom of Sweden with its principal place of business at Torshamnsgatan 21, Kista, 164 83, Stockholm, Sweden.

3.      Ericsson Inc. is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, Texas 75024.

4.      Upon information and belief, Counterclaim Defendant HTC Corporation is a Taiwanese corporation with its principal place of business at 23 Xinghua Road, Tayouan 330, Taiwan, R.O.C.

5.      Upon information and belief, Counterclaim Defendant HTC America, Inc. ("HTC America") is a Washington corporation with its principal place of business at 308 Occidental Ave. S., Seattle, WA 98104. Upon information and belief, HTC America is a wholly-owned American subsidiary of HTC Corporation that sells HTC's cellular and wireless devices in the United States.

6.      HTC Corporation and HTC America (collectively, "HTC") design, manufacture, use, import into the United States, sell, and/or offer for sale in the United States mobile and internet products under the "HTC" brand.  HTC offers for sale, and/or sells smartphones and other mobile devices throughout the United States, including within this District.

7.     HTC's products sold in the United States comply with the LTE and LTE-A standard, the UMTS standard, the WCDMA standard, the EDGE standard, the GPRS standard, and/or the GSM standard.  These standards are also collectively referred to as the "2G," "3G," and "4G" standards.

8.     HTC has requested in this matter that the Court adjudicate whether Ericsson has complied with its voluntary FRAND assurance. By making this request, HTC has consented to be bound by such adjudication.

9.     HTC has consented to personal jurisdiction by bringing and litigating this lawsuit.

## BACKGROUND

### A.  Ericsson's Investment in Telecommunications

10.     For more than three decades, Ericsson has pioneered the development of the modern cellular network. Every major mobile network operator in the world buys solutions and/ or services from Ericsson, and Ericsson manages networks that serve more than one billion subscribers globally. Forty percent of all mobile calls are made through Ericsson systems, and Ericsson's equipment is found in more than one hundred and eighty countries.

11.     Ericsson is widely viewed as one of the leading innovators in the field of cellular communications. Due to the work of more than 24,000 Ericsson research and development ("R&D") employees, Ericsson's inventions laid the foundation for the fundamental technology that connects phones, smartphones, and other mobile devices, enables seamless use of cellular networks worldwide, and provides increased performance and new features for the benefit of consumers. Ericsson's extensive R&D efforts resulted in countries around the world awarding Ericsson more than 45,000 patents.

12.     Ericsson prioritizes innovation, and has invested between $4-5 billion annually in research and development.  These research and development activities include participating in the development of the 2G, 3G, and 4G cellular standards over the last 30 years.  Ericsson's engineers have attended hundreds of standardization meetings and made thousands of technical contributions to the standardization process.

13.     Ericsson has been at the forefront of every step of cellular standardization. Ericsson has a long history of innovative technical contributions, including the inventions underlying Ericsson's essential patents. In addition, some of Ericsson's other accomplishments include:

- in 1878, Ericsson sold its first telephone;
- in 1977, Ericsson introduced the world's first digital telephone exchange;
- in 1981, Ericsson introduced its first mobile telephone system, NMT;
- in 1991, Ericsson launched 2G phones on the world's first 2G network;
- in 1994, Ericsson invented Bluetooth;
- in 2001, Ericsson made the world's first 3G call for Vodafone in the UK; and
- in 2009, Ericsson started the world's first 4G network and made the first 4G call.

14.     Ericsson's innovation continues today. Ericsson envisions a connected future, in which there will be more than three billion users and more than fifty billion connected devices, all of which will require improved networks and greater capacity. Ericsson's efforts have resulted in technological advances enabling faster data speeds, improved voice quality, and better network performance. Ericsson's technological advances do not come cheaply or easily, as Ericsson invests approximately 15% of its revenue in R&D costs annually.

15.     Ericsson protects its investments in research and development with intellectual property.  Ericsson owns thousands of patents related to wireless telecommunication technology, and Ericsson continues to develop and secure intellectual property as it innovates in this industry. Because Ericsson chooses to voluntarily contribute some of its research and development

innovations to the standard-setting process—through technical contributions in standardization meetings—Ericsson has a large number of patents related to the 2G, 3G, and 4G standards. Members of the standardization meetings choose to adopt Ericsson's technology into the standard knowing that Ericsson (as with any other company) likely has a pending patent application on its technology.

16.     Many of Ericsson's patents are essential to the 2G (GSM, GPRS, and EDGE), 3G (UMTS/WCDMA and HSPA), and 4G (LTE) telecommunication standards, all of which are used by HTC's cellular-standard compliant products.

17.     Ericsson has repeatedly and voluntarily committed to provide access to its portfolio of patents that are essential to practice the 2G, 3G, and/or 4G standards on terms that are fair, reasonable, and non-discriminatory ("FRAND"), subject to reciprocity. Ericsson's FRAND assurance is set forth in its intellectual property right ("IPR") licensing declarations to the European Telecommunications Standards Institute ("ETSI") in accordance with ETSI's IPR Policy. Consistent with its FRAND assurance, Ericsson has widely licensed its portfolio of essential patents on a global basis in over one hundred agreements with members of the telecommunications industry. Negotiations with members of the telecommunications industry for new or renewed licenses to Ericsson's portfolio of essential patents are continually ongoing.

18.     Ericsson reinvests much of the licensing revenue it receives under these global agreements into inventing future generations of standardized telecommunication technologies, spending billions of dollars annually on total R&D.

19.     The development of the 2G, 3G, and 4G telecommunication standards allowed the use of smartphones to proliferate and accelerated consumer adoption. Without 4G technology and the use of Ericsson's inventions, smartphones and other mobile devices would not be able to

provide the constant on-the-go access to video, streaming media, and gaming consumers are accustomed to today. Furthermore, the widespread adoption of large screen smartphones and corresponding applications depend upon the performance provided by 4G technology and Ericsson's inventions.  Additionally, the newest 5G telecommunication development also relies upon Ericsson's technology and portfolio of essential intellectual property rights.

20.     The 2G, 3G, and 4G cellular standards hugely benefit consumers and the competitive economic conditions in the United States. Consumers enjoy increased market choices because the standards are available for anyone to implement, even companies outside of the standard body's membership. Therefore, new industry players may enter the market and launch competitive products without taking on the risky investment in the multi-year process necessary to develop the enabling standards. Similar benefits are expected with the release and adoption of the 5G cellular standard.

21.     These benefits have created remarkable growth in the cellular industry over the last two decades, providing affordable communication to billions of people worldwide. The U.S. government agrees: "Voluntary consensus standards serve the public interest in a variety of ways, from helping protect public health and safety to promoting efficient resource allocation and production by facilitating interoperability among complementary products."[2]

22.     HTC claims that it owns a portfolio of essential patents related to the 2G, 3G and 4G standards, which it has committed to provide access to on FRAND terms.  HTC's FRAND assurance is set forth in its IPR licensing declarations to ETSI in accordance with ETSI's IPR Policy.

---

[2]  U.S. Department of Justice and U.S. Patent & Trademark Office, POLICY STATEMENT ON REMEDIES FOR STANDARD-ESSENTIAL PATENTS SUBJECT TO VOLUNTARY F/RAND COMMITMENTS at 2-3.

### B.   ETSI, Standard Essential Patents, and the FRAND Assurance.

23.     In the telecommunications industry, global standards are fundamental to ubiquitous connectivity and enable any company to enter the market and sell smartphones.

24.     The 2G, 3G, and 4G cellular standards comprise a lengthy set of documents that specify complete "blueprints" for cellular networks and phones. Developing these standards requires much more than merely adopting existing technology to specify how different products will communicate. Instead, the standardization process more closely resembles a competition among industry players to find novel solutions to the technical challenges underlying the new standards, such as increased data rates, reduced latency, reliability, and security.

25.     ETSI is an independent, non-profit standard-development organization ("SDO") that produces globally accepted standards for the telecommunication industry. ETSI currently has more than 830 members from over sixty countries across five continents, including Ericsson. In addition to its own activities, ETSI is also one of six SDOs that are organizational partners of the Third Generation Partnership Project ("3GPP"), the organization that maintains and develops globally applicable technical specifications for the 2G, 3G, 4G, and 5G mobile standards. 3GPP has developed open standards that ensure worldwide state-of-the-art performance and interoperability between network equipment and user equipment for a number of services and applications.

26.     Many SDO members, including Ericsson, own IPRs related to technologies standardized by SDOs. ETSI has developed and promulgated an IPR Policy. The ETSI IPR Policy endeavors to strike a balance between the needs of standardization for public use and ensuring that an IPR owner is "adequately and fairly rewarded for the use of [its] IPRs in the

implementation of [the] standards and technical specifications."[3] The ETSI Guide on IPRs states, "the ETSI IPR Policy seeks a balance between the needs of standardization for public use in the field of telecommunications and the rights of the owners of IPRs."[4]

27.     Clause 15.6 of the ETSI IPR Policy defines the term "ESSENTIAL" to mean that 'It is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR." The ETSI Guide on IPR further states, "an 'essential IPR' is an IPR which has been included within a standard and where it would be impossible to implement the standard without making use of this IPR. The only way to avoid the violation of this IPR in respect of the implementation of the standard is therefore to request a license from the owner."[5]

28.     The ETSI IPR Policy and ETSI's IPR Licensing Declaration forms are governed by French law.[6]

29.     Patent licensing incentivizes technology innovators, like Ericsson, to undertake the risk and expense of directing R&D resources to developing, and subsequently contributing, innovations for incorporation into standards. Receiving a return on this investment is a prerequisite for the underlying business models of standard-setting participants like Ericsson.

---

[3]     ETSI Rules of Procedure, Annex 6: ETSI IPR Policy, 29 November 2017, http://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf (last visited March 13, 2018).

[4] ETSI Guide on IPR, 19 September 2013, Version adopted by Board #94, http://www.etsi.org/images/files/IPR/etsi-guide-on-ipr.pdf (last visited March 13, 2018).

[5] *Id.*

[6]     ETSI Rules of Procedure, Annex 6: ETSI IPR Policy, 29 November 2017, http://www.etsi.org/images/files/IPR/etsi-ipr-policy.pdf (last visited March 13, 2018).

FRAND licensing has been recognized by the United States Patent and Trademark Office and Department of Justice as a necessary incentive for standardization:

> [P]atent holders that focus on licensing their inventions benefit from an expanded source of revenues. These incentives encourage patent holders to contribute their best technology to the standardization process. [. . . and] the United States continues to encourage systems that support voluntary F/RAND licensing—both domestically and abroad—rather than the imposition of one-size-fits-all mandates for royalty-free or below-market licensing, which would undermine the effectiveness of the standardization process and incentives for innovation.[7]

30.     As a pioneer in wireless telecommunications, Ericsson has contributed its essential patented technology to 3GPP and ETSI based on the representations by ETSI that Ericsson would be fairly and adequately rewarded for Ericsson's essential patented technology. Such royalties incentivize Ericsson to continue to commit to provide access to its cutting-edge R&D to open standards on FRAND terms.

31.     Whenever companies use standard-essential patented technology and fail to compensate the patent owner, the innovators who developed and implemented these standards are placed at an unfair competitive disadvantage.

## C.   Ericsson and HTC's Prior Licenses

32.     Ericsson owns patents that are, and remain, essential to practice the 2G, 3G, and 4G standards. Ericsson has declared to ETSI that it is prepared to grant licenses to its essential patents on FRAND terms and conditions, subject to reciprocity, as set forth in its IPR licensing declarations to ETSI.

33.     HTC claims that it owns patents that are, and remain, essential to practice the 2G, 3G, and 4G standards.  HTC has declared to ETSI that it is prepared to grant licenses to its

---

[7] U.S. Department of Justice and U.S. Patent & Trademark Office, POLICY STATEMENT ON REMEDIES FOR STANDARD-ESSENTIAL PATENTS SUBJECT TO VOLUNTARY F/RAND COMMITMENTS at 5-6.

essential patents on FRAND terms and conditions consistent with HTC's FRAND assurance, as set forth in its IPR licensing declarations to ETSI.

34.     HTC designs, manufacturers, and markets a portfolio of mobile devices that comply with the 2G, 3G, and 4G standards and utilize Ericsson's essential patents.

35.     HTC has licensed Ericsson's essential patents three times previously:  in 2003, in 2008, and in 2014.  Each of these prior licenses were concluded without litigation.

36.     Ericsson and HTC's most recent license, signed in 2014 ("2014 license"), had an effective date of December 31, 2014, and covered only two years, expiring on December 31, 2016.  Ericsson agreed to a shorter license term, and a lump sum royalty payment, due to HTC's representations that it was uncertain about the future viability of its mobile handset business.

### D.  The Parties' Negotiations

37.     The negotiations for a new license agreement began in mid-2016.  Between April and November 2016, representatives of Ericsson and HTC exchanged multiple emails and conferred by telephone to discuss a new license.   In early November 2016, at Ericsson's initiative, an Ericsson representative traveled to Taiwan to discuss a new license agreement in person.

38.     In early December 2016, Ericsson provided HTC with a FRAND offer for a global cross-license to the parties' standard essential patents.  Ericsson ensured that its offer to HTC was FRAND by comparing it to the effective royalty rates paid by others who had voluntarily taken a license to Ericsson's technology. This offer also was consistent with Ericsson's prior licenses with HTC.

39.     HTC responded to Ericsson's offer in late December 2016.  On its face, HTC's counter-offer was not made in good faith because it significantly undervalues Ericsson's

intellectual property.  Moreover, during the parties' negotiations, ███████████████

████████████████████████████████████████████████████████████

█████████████████████████████████.

40.     The 2014 license agreement expired on December 31, 2016, yet Ericsson continued to negotiate with HTC in good faith.   In January 2017, Ericsson provided HTC with additional factual information regarding the basis for Ericsson's FRAND offer.   Ericsson provided this information because it was committed to concluding a new license with HTC through good-faith bilateral negotiations, not litigation.  Shortly thereafter, Ericsson again took the initiative and flew to Taiwan to meet with HTC about a global cross-license.

41.     During the remainder of January and throughout February, Ericsson repeatedly contacted HTC via email to continue to negotiate.  In yet another attempt to move the negotiations forward, representatives from Ericsson again traveled to Taiwan on March 31, 2017, for another in-person meeting.  Ericsson viewed this meeting as a positive step in helping the parties work toward an agreement. Although no agreement was reached during Ericsson's trip to Taiwan in March 2017, Ericsson remained committed to continuing its negotiations with HTC and was under the impression that HTC was likewise working to arrive at the terms of a FRAND license through good-faith negotiations.

42.     Exactly one week after hosting Ericsson's representatives in Taiwan and without any warning, HTC unilaterally put an end to the parties' negotiations when it filed a lawsuit against Ericsson in Seattle, Washington premised on the fundamentally baseless allegations that Ericsson breached FRAND and did not negotiate with HTC in good faith.  HTC initiated litigation when Ericsson believed the parties were negotiating in good faith, and wrongly alleged that it suffered a lack of "patent protection" and threat of patent infringement litigation at that

time.  HTC's lawsuit demonstrates that HTC never intended to negotiate with Ericsson in good faith, had no plans to pay a FRAND royalty for Ericsson's essential patents, and would not offer a FRAND license (or any license at all) for its essential patents.  In sum, HTC fails to honor its own FRAND obligation and fails to honor the fact that FRAND licensing is a two-way street, requiring that both parties negotiate in good faith.

43.     By refusing to negotiate in good faith for a license to Ericsson's essential patents on terms that are FRAND, HTC gains an unfair advantage over the rest of the telecommunications market.  HTC's competitors in the mobile telecommunications industry have licensed Ericsson's portfolio of essential patents on FRAND terms.  By refusing to negotiate in good faith, HTC enjoys the benefit of Ericsson's technology without paying a fair and reasonable royalty—a clear advantage over its licensed competitors. HTC's conduct also has deprived Ericsson of reasonable royalties for its valuable intellectual property and caused Ericsson to participate in negotiations headed nowhere, at considerable expense, due to HTC's representations that it intended to conclude this dispute through good-faith bilateral negotiations. HTC has caused harm to Ericsson due to its hold-out tactics.

## FIRST COUNTERCLAIM

### Declaratory Judgment that Ericsson has not Breached its FRAND Assurance to HTC

44.     Ericsson alleges and incorporates by reference, as if fully set forth herein, the allegations set forth in the paragraphs above.

45.     Ericsson owns patents essential to the 2G, 3G, and 4G standards. HTC infringes Ericsson's essential patents and does not have a license to practice such patents.

46.     Ericsson, as the owner of patents essential to ETSI standards, has voluntarily declared that it is prepared to grant licenses to companies, including HTC, on terms that are fair,

reasonable, and non-discriminatory, in compliance with the ETSI IPR Policy, subject to reciprocity. This declaration forms a contract under French law to which HTC claims to be a third-party beneficiary.

47.     Ericsson has fully complied with its FRAND obligations by, among other things, attempting to negotiate in good faith with HTC since the fall of 2016 and offering a license to its essential patents on FRAND terms.

48.     A dispute exists between Ericsson and HTC concerning whether Ericsson has complied with its FRAND assurance, and as to whether Ericsson's offer to HTC for a global, reciprocal license to the parties' essential patents complied with Ericsson's commitment to provide access to its essential patents on terms and conditions consistent with Ericsson's IPR licensing declarations to ETSI and ETSI's IPR Policy. HTC alleges that Ericsson has failed to offer a license under Ericsson's essential patents to HTC on terms that are FRAND and rejected Ericsson's offer. There is a case or controversy of sufficient immediacy, reality, and ripeness to warrant the issuance of a declaratory judgment.

49.     Ericsson requests a declaratory judgment that Ericsson has complied with its FRAND assurance, as set forth in its IPR licensing declarations to ETSI, as well as ETSI's IPR Policy and any applicable laws.

## SECOND COUNTERCLAIM

### Breach of Contract

50.     Ericsson alleges and incorporates by reference, as if fully set forth herein, the allegations set forth in the paragraphs above.

51.     HTC is an owner of patents that it claims are essential to the 2G, 3G, and 4G standards, and has entered into contractual commitments to provide access to those patents on fair, reasonable and non-discriminatory terms and conditions.

52.     Ericsson is an intended third-party beneficiary of HTC's contract with ETSI and can rely on HTC's FRAND assurance because Ericsson implements the 2G, 3G, and 4G standards.

53.     HTC is obligated to be prepared to offer a license to its essential patents to Ericsson consistent with the ETSI IPR Policy, including that such a license be on FRAND terms.

54.     HTC also requires a license to Ericsson's essential patents.  Ericsson has committed to provide access to its patents on FRAND terms and conditions, and that commitment is subject to reciprocity by HTC.

55.     This constituted a breach of HTC's contractual obligations to ETSI.

56.

57.     HTC's breaches have caused harm to Ericsson.  HTC's refusal to offer a license to Ericsson on FRAND terms has deprived Ericsson of its right to obtain a cross-license to HTC's standard essential patents and exposed Ericsson to patent infringement claims by HTC. In addition, HTC's refusal to offer a license has wasted the time of Ericsson employees who

traveled across the world multiple times to negotiate with HTC in good faith, at considerable expense to Ericsson.

58.     Ericsson has suffered and will continue to suffer irreparable injury by reason of the acts, practices, and conduct of HTC alleged above until and unless the Court enjoins such acts, practices, and conduct.

## THIRD COUNTERCLAIM

### Breach of Obligation to Negotiate in Good Faith

59.     Ericsson alleges and incorporates by reference, as if fully set forth herein, the allegations set forth in the paragraphs above.

60.     Since April 2016, representatives from Ericsson and HTC have been engaged in negotiations regarding a license to patents essential to the 2G, 3G, and 4G standards.

61.     HTC has failed to negotiate in good faith with Ericsson.  For example, HTC brought this lawsuit when Ericsson was committed to concluding a license without litigation. Ericsson believed the parties were equally committed to concluding an agreement without litigation, but HTC's representations were all pretext as it prepared to file a lawsuit against Ericsson.  HTC makes broad allegations that Ericsson threatened suit, but Ericsson made no such threats.  HTC has made no effort to close a deal with Ericsson.  HTC has failed to make any reasonable offers for a license to Ericsson's standard essential patents and has ██████████ ████████████████████████████████████████

62.     This is a breach of HTC's obligation to perform in good faith in its negotiations with Ericsson. This obligation arises at least under French law.

63.     Ericsson is entitled to judgment that HTC has not complied with its obligation to act in good faith during its negotiations with Ericsson in regard to FRAND terms for a cross-license to the parties' essential patents.

64.     As a result of HTC's breach of its duty to negotiate in good faith, Ericsson has been injured in its business or property.  HTC's refusal to negotiate in good faith deprived Ericsson of royalties and resulted in substantial commercial benefit to HTC, including the sale of products that use Ericsson's valuable technology without paying a royalty for such use.   In addition, HTC's refusal to take and offer a license has wasted the time of Ericsson employees who traveled across the world to negotiate with HTC in good faith  at considerable expense to Ericsson.

65.     As a remedy for HTC's breach of the obligation to negotiate in good faith, HTC has forfeited its right to claim it is a third-party beneficiary of Ericsson's FRAND assurance.

## FOURTH COUNTERCLAIM

### Declaratory Judgment that HTC has Rejected, Repudiated, and/or Forfeited Any Rights Associated with Ericsson's FRAND Declarations and is an Unwilling Negotiating Partner

66.     Ericsson alleges and incorporates by reference, as if fully set forth herein, the allegations set forth in the paragraphs above.

67.     Ericsson has declared that it is prepared to grant licenses to its essential patents on FRAND terms in compliance with the ETSI IPR Policy, and also requires that a potential licensee reciprocate by offering FRAND terms and conditions for a cross-license.

68.     Ericsson has fully complied with its FRAND obligations by, among other things, negotiating in good faith with HTC since 2016 and offering a license to its essential patents on FRAND terms.

69.     HTC has repudiated, rejected, and/or forfeited any rights associated with Ericsson's declarations to ETSI. HTC has done so by refusing to undertake good-faith negotiations; rejecting Ericsson's FRAND offer; ██████████████████████████████ ████████████████; bringing this lawsuit at the inception of the parties' negotiations without warning or justification; and making a demonstrably non-FRAND counteroffer.

70.     Ericsson seeks a declaration that by virtue of the conduct above, HTC is an unwilling negotiating partner that has repudiated, rejected, and/or forfeited any rights associated with Ericsson's FRAND declarations, including the right to assert it is a third-party beneficiary of Ericsson's FRAND assurance.

## DEMAND FOR JURY TRIAL

71.     Ericsson hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Ericsson asks this Court to enter judgment in Ericsson's favor and against HTC by granting the following relief:

A.     Adjudge and declare that Ericsson complied with its FRAND assurances in its negotiations with HTC;

B.     Adjudge and declare that Ericsson has made a FRAND offer to HTC and that HTC is bound to accept Ericsson's offer.  If Ericsson has not made a FRAND offer to HTC, declare the terms and conditions that would not constitute a violation of FRAND.

C.     An injunction requiring HTC to enter into a license with Ericsson upon the FRAND terms and conditions that Ericsson has offered to HTC, or if the Court

determines the terms and conditions were not in compliance with FRAND, upon terms and conditions that would not constitute a violation of FRAND;

D.     Adjudge and declare that HTC breached its duty to negotiate with Ericsson in good faith, and as a result, declare that HTC has repudiated, rejected, and/or forfeited its right to assert it is a third-party beneficiary of Ericsson's FRAND assurance;

E.     Adjudge and declare that HTC failed to reciprocate ████████████████ ████████████████████, and as a result, declare HTC to have repudiated, rejected, and/or forfeited its right to assert third-party beneficiary status with respect to Ericsson's FRAND assurance;

F.     Adjudge and declare that HTC is an unwilling negotiating partner;

G.     An award of the amount of damages that Ericsson proves at trial and, as appropriate, exemplary damages;

H.     An award of Ericsson's reasonable costs and expenses of litigation; and

I.     Any such other and further relief as the Court finds just and proper.

Dated: September 7, 2018                    Respectfully submitted,

                                            By: /s/ *Theodore Stevenson, III*            ___
                                                Theodore Stevenson III, lead counsel
                                                TX State Bar No. 19196650
                                                tstevenson@mckoolsmith.com
                                                Nicholas Mathews
                                                TX State Bar No. 24085457
                                                nmathews@mckoolsmith.com
                                                Warren Lipschitz
                                                Texas State Bar No. 24078867
                                                wlipschitz@mckoolsmith.com
                                                Chelsea A. Priest
                                                TX State Bar No. 24102375
                                                cpriest@mckoolsmith.com
                                                Jonathan Powers
                                                TX State Bar No. 24098277
                                                jpowers@mckoolsmith.com
                                                **MCKOOL SMITH, PC**
                                                300 Crescent Court, Suite 1500
                                                Dallas, TX 75201
                                                Telephone: (214) 978-4000
                                                Telecopier: (214) 978-4044

                                                Kevin L. Burgess
                                                Texas State Bar No. 24006927
                                                kburgess@mckoolsmith.com
                                                Christine Woodin
                                                TX State Bar No. 24199951
                                                cwoodin@mckoolsmith.com
                                                **MCKOOL SMITH, PC**
                                                300 W. 6th Street, Suite 1700
                                                Austin, TX 78701
                                                Telephone: (512) 692-8700
                                                Telecopier: (512) 692-8744

                                                Blake Bailey
                                                TX State Bar No. 24069329
                                                **MCKOOL SMITH, PC**
                                                600 Travis Street, Suite 7000
                                                Houston, TX 77002
                                                Telephone: (713) 485-7300
                                                Telecopier: (713) 485-7344

                                                **ATTORNEYS FOR DEFENDANTS
                                                AND COUNTERCLAIM PLAINTIFFS
                                                TELEFONAKTIEBOLAGET LM**

**ERICSSON AND ERICSSON INC.**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via email on September 7, 2018.

*/s/ Theodore Stevenson, III*

Theodore Stevenson, III

**<u>CERTIFICATE OF AUTHORIZATION TO SEAL</u>**

I hereby certify that pursuant to the protective order in the above-captioned case, this motion and the exhibits thereto contain confidential information. Accordingly, this document is to be filed under seal.

*/s/ Theodore Stevenson, III*

Theodore Stevenson, III