**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| HTC Corporation and HTC America, Inc., | Case No.: 6:18-cv-00243-JRG |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| Telefonaktiebolaget LM Ericsson and Ericsson Inc. | **PUBLIC VERSION** |
| Defendants. | |
| Telefonaktiebolaget LM Ericsson and Ericsson Inc., | |
| Counterclaim Plaintiffs, | |
| v. | |
| HTC Corporation and HTC America, Inc. | |
| Counterclaim Defendants. | |

**DEFENDANTS TELEFONAKTIEBOLAGET LM ERICSSON & ERICSSON INC.'S
MOTION UNDER FED. R. CIV. P. 44.1 FOR DETERMINATION OF FOREIGN LAW
ON REQUIRING SSPPU IN GLOBAL PATENT LICENSE AGREEMENTS**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................ 1

II.     BACKGROUND ............................................................................................................ 3

     A.      Summary of the dispute ..................................................................................... 3

     B.      HTC's misplaced reliance on the SSPPU concept ............................................ 3

III.    DISCUSSION ............................................................................................................... 4

     A.      The Court should determine whether French law requires using the SSPPU
            as the royalty base as a question of law. .................................................. 4

           1.      French law governs Ericsson's FRAND assurance under the ETSI
                 contract. ................................................................................................. 4

           2.      Under Rule 44.1, the Court should rule as a matter of law whether
                 Ericsson's voluntary FRAND assurance requires it to offer licenses
                 to its global patent portfolio based on the SSPPU. ..................................... 5

     B.      As a matter of French law, the FRAND assurance under the ETSI contract
            does not require an SSPPU royalty base. ................................................. 6

     C.      To the extent that global patent law informs the FRAND assurance under
            French law, all countries' laws outside the U.S. counsel against an SSPPU
            requirement. ..................................................................................... 8

     D.      Even if U.S. law did govern, the SSPPU evidentiary principle does not
            dictate how parties negotiate licenses. ..................................................... 10

IV.     CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Access Telecom, Inc. v. MCI Telecommc'ns Corp.*,
   197 F.3d 694 (5th Cir. 1999) ...............................................................................5, 6

*Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co., Ltd.*,
   138 S. Ct. 1865 (2018)..........................................................................................5, 6

*Apple, Inc. v. Motorola Mobility, Inc.*,
   886 F. Supp. 2d 1061 (W.D. Wis. 2012) ................................................................5

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 11-CV-01846, 2012 WL 1672493 (N.D. Cal. May 14, 2012)..................................4, 5, 10

*Commonwealth Sci. & Indus. Res. Org. v. Cisco Sys., Inc.*,
   809 F.3d 1295 (Fed. Cir. 2015)..............................................................2, 13, 14, 15

*Ericsson v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014)...........................................................................2, 12

*Exmark Manuf. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
   879 F.3d 1332 (Fed. Cir. 2018).....................................................................2, 11, 13

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
   No. 216-CV-00052-JRG-RSP, 2017 WL 3954108 (E.D. Tex. Aug. 29, 2017) ......................5

*In re Avantel, S.A.*,
   343 F.3d 311 (5th Cir. 2003) ................................................................................5

*TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*,
   No. CV 15-2370 JVS(DFMX), 2017 WL 6611635 (C.D. Cal. Dec. 21, 2017) .............4, 5, 10

*Voda v. Cordis Corp.*,
   476 F.3d 887 (Fed. Cir. 2007)...............................................................................9

**Other Authorities**

Fed. R. Civ. P. 44.1 ..............................................................................1, 4, 5, 15

Axel Gautier & Nicolas Petit, *Smallest Salable Patent Practicing Unit and
   Component Licensing: Why 1$ is Not 1$* (Apr. 18, 2017), available at
   https://ssrn.com/abstract=2954592 ..................................................................9, 11

David Kappos & Hon. Paul R. Michel, *The Smallest Salable Patent-Practicing
   Unit: Observations on its Origins, Development, & Future*, 32 Berkeley Tech.
   L.J. 1433 (2018)...............................................................................................11

Thomas F. Cotter, *Patent Damages Heuristics*, 25 Tex. Intell. Prop. L.J. 159
   (2018)............................................................................................................................................9

## I.    INTRODUCTION

Ericsson moves for a ruling on an issue of French contract law. *See* Fed. R. Civ. P. 44.1. The Court should find that French contract law does not require Ericsson to license its standard-essential patents with a royalty based on the cost of a baseband processor and that the U.S. cases cited by HTC also do not require licensing standard-essential patents based on the cost of a baseband processor.

This is a contract case: HTC claims that Ericsson breached a contract governed by French law. Ericsson owns patents essential to cellular standards published by the European Telecommunications Standards Institute (ETSI). HTC claims that by declaring these patents essential to these standards, Ericsson assumed contractual obligations to all prospective licensees, HTC included, to offer licenses on fair, reasonable, and nondiscriminatory (FRAND) terms. The ETSI IPR policy expressly provides that this contractual obligation is governed by French law, and all parties to this case agree that French law governs this "ETSI contract."

HTC claims that Ericsson breached the ETSI contract by failing to offer HTC a FRAND license. One of HTC's main complaints is that Ericsson's ███████████████████████████ ████████████████████████████. HTC claims that the FRAND assurance required Ericsson to instead offer licenses based on estimated profit on the smallest salable patent-practicing unit (SSPPU) in the phones. That, says HTC, is the baseband processor for "all or substantially all of" Ericsson's patents. *See* Dkt. No. 135, 2d Am. Compl. ¶ 58.

Although HTC has proffered expert testimony that incorrectly asserts the law requires a licensor to only use the SSPPU as the royalty base, Ericsson believes it is inappropriate for the Court to submit this legal dispute to the jury. It is the duty of the Court to instruct the jury as to the content of the law. That is what this motion requests.

HTC's assertions fail for two reasons. First, French contract law does not require that

1

licenses use the SSPPU as the royalty base. Nothing in the text of the ETSI contract requires patentees to offer licenses with royalty rates based on the estimated profit of an SSPPU. Instead, the ETSI policy's focus on "equipment"—which it defines to include end-user devices but not components—confirms the ETSI members' intent not to require SSPPU-based licensing. And under French law, the sources of contractual terms other than express contractual language also counsel against implying an SSPPU requirement. Specifically, there is no statute that would imply such a requirement. Nor would a French court imply such a requirement based on "fairness" or the parties' pre-contractual representations. Lastly, no SSPPU requirement could be implied by practice or—in the words of the French *code civil*—"usage." To the contrary, an SSPPU requirement would contradict the longstanding industry practice—and the understanding of ETSI members when ETSI adopted the relevant policies—that patentees license handset makers based on handset prices. Thus, "usage" weighs in favor of reading the FRAND assurance to support licensing based on end-user device prices.

Second, even if the U.S. case law regarding patent damages did apply to licensing negotiations involving a French contract, the cases cited by HTC do not support an SSPPU requirement. Outside the U.S.—where Ericsson would have to enforce the majority of its patents—*no country in the world* assesses damages based on the SSPPU. And even in the U.S., the SSPPU concept is not a substantive constraint on patent damages, much less a constraint on *private licensing negotiations*. Several Federal Circuit cases involving standard-essential patents have refused to require the patent owner to license based on the SSPPU. *See Exmark Manuf. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018); *Commonwealth Sci. & Indus. Res. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015); *Ericsson v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

## II.     BACKGROUND

### A.       Summary of the dispute

For more than three decades, Ericsson has been a leader in developing the second generation (2G), third generation (3G), fourth generation (4G), and now fifth generation (5G) cellular standards. Ericsson's research and development have resulted in its being granted a large portfolio of patents that are essential to these standards. Ericsson has granted more than 150 licenses to its essential patents to most major cellular-industry players. HTC, which sells cellular phones, took licenses in 2003, 2008, and 2014. Under these licenses, ████████████ ████████████████████████████████████████████████████████████████ ████████ through the last license's expiration in December 2016.

In mid-2016, the parties began negotiating a license for 2017 onward. Although the past licenses resulted from bilateral negotiations without litigation, HTC approached negotiating a fourth license differently. Just a few months after the last license expired, HTC sued Ericsson. *See* Dkt. No. 1. HTC's allegations relate to Ericsson's patents declared essential to the 2G, 3G, and 4G standards. HTC asserts that it is a third-party beneficiary of the ETSI contract that Ericsson formed by submitting licensing declarations to ETSI. And it claims that Ericsson breached its voluntary assurance to offer its standard-essential patents on FRAND terms.

### B.       HTC's misplaced reliance on the SSPPU concept

HTC's biggest complaint against Ericsson's licensing offers is that ████████████ ████████████████████████. HTC claims that, instead, FRAND *requires* Ericsson to license its portfolios based on the portion of the cost of the baseband processor, which HTC asserts is where all of Ericsson's technology is used. *See* Dkt. No. 135, 2d Am. Compl. ¶¶ 55-58.[1]

---

[1] In fact, ████████████████████████████████████████████████████████████████████

To support this claim, HTC says refusal to offer licenses based on the SSPPU "is a clear violation … of applicable law." *See id.* In turn, it cites domestic patent-infringement cases (which are addressed in detail below). *See* Dkt. No. 135, 2d Am. Compl. ¶¶ 56. But HTC does not explain why the SSPPU concept—a principle of U.S. evidentiary law—should constrain private licensing negotiations between a Swedish licensor and a Taiwanese licensee for *global patent portfolios*. And, more to the point, HTC does not say what these domestic cases have to do with obligations under the ETSI contract governed by French law. *See, e.g., TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. CV 15-2370 JVS(DFMX), 2017 WL 6611635, at *5 (C.D. Cal. Dec. 21, 2017); *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2012 WL 1672493, at *10 (N.D. Cal. May 14, 2012).

## III.   DISCUSSION

### A.   The Court should determine whether French law requires using the SSPPU as the royalty base as a question of law.

The contract asserted by HTC here is the ETSI contract that Ericsson accepted by declaring its patents essential to the ETSI cellular standards. The ETSI IPR policy, in turn, embodies Ericsson's contractual FRAND assurance. French law governs the ETSI contract and ETSI IPR policy, and the parties do not dispute this point. Rule 44.1 creates a mechanism for the Court to address issues of foreign law—like the content of the ETSI contract and FRAND assurance—before trial. Thus, the Court should rule as a matter of law whether, under French law, the FRAND assurance requires a patentee to offer licenses based on the SSPPU.

### 1.   French law governs Ericsson's FRAND assurance under the ETSI contract.

A determination of French law is necessary because French law—not U.S. law—governs the contractual rights that HTC asserts here. The ETSI IPR policy contains a choice-of-law clause stating that it "shall be governed by the laws of France." Ex. A at 1 (ETSI IPR policy).

And the IPR Licensing Declarations that Ericsson submitted to ETSI, which constitute Ericsson's voluntary FRAND assurance, provide that their "construction, validity and performance … shall be governed by the laws of France." *Id.* at 8 (IPR Licensing Declaration form). These provisions compel U.S. courts to apply French law to breach-of-FRAND claims under the ETSI IPR policy. S*ee, e.g., TCL Commc'n*, 2017 WL 6611635, at *5; *Apple*, 2012 WL 1672493, at *10.[2] HTC does not dispute this point. In fact, ███████████████████ ███████████████████████████████████████████████ Thus, the parties agree that a determination of foreign law will be necessary here.

### 2.     Under Rule 44.1, the Court should rule as a matter of law whether Ericsson's voluntary FRAND assurance requires it to offer licenses to its global patent portfolio based on the SSPPU.

It would be inappropriate for the parties to present expert testimony to the jury at trial, and for the Court to ask the jury to rule on this legal determination. Questions of law, including foreign law, are solely the province of the Court. A party may raise an issue of foreign law "by a pleading or other writing." Fed. R. Civ. P. 44.1. Rule 44.1 "specifies that a court's determination of foreign law 'must be treated as a ruling on a question of law,' rather than as a finding of fact." *Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co., Ltd.*, 138 S. Ct. 1865, 1873 (2018) (quoting Fed. R. Civ. P. 44.1); *accord Access Telecom, Inc. v. MCI Telecommc'ns Corp.*, 197 F.3d 694, 713 (5th Cir. 1999) ("The content of foreign law is a question of law and is subject to de novo review.").

A party raising an issue of foreign law must show "its substance to a reasonable certainty." *In re Avantel, S.A.*, 343 F.3d 311, 322 (5th Cir. 2003). "[E]xpert testimony accompanied by extracts from foreign legal material is the basic method by which foreign law is

---

[2] *See also Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1081 (W.D. Wis. 2012) (noting the parties' agreement that French law governed the ETSI IPR policy); *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 216-CV-00052-JRG-RSP, 2017 WL 3954108, at *2 (E.D. Tex. Aug. 29, 2017) (same).

determined." *Access Telecom*, 197 F.3d at 713. Yet "in ascertaining foreign law, courts … 'may consider any relevant material or source whether or not admissible under the Federal Rules of Evidence.'" *Animal Sci.*, 138 S. Ct. at 1873 (quoting Fed. R. Civ. P. 44.1) (ellipses omitted). So experts need not "meet any special qualifications" and "need not even be admitted to practice in the country whose law is at issue." 9A Charles Alan Wright, *et al.*, Federal Practice & Procedure § 2444 (3d ed.).

### B.    As a matter of French law, the FRAND assurance under the ETSI contract does not require an SSPPU royalty base.

A French court applying French contract law would interpret the ETSI IPR policy and FRAND assurance not to require SSPPU-based licensing. To address the application of French law to the ETSI IPR policy and FRAND assurance, Ericsson offers the testimony of Professor Jean-Sébastien Borghetti. Professor Broghetti is a law professor at the Université Panthéon-Assas (Paris II). Borghetti Dec. ¶ 2. Since 2005, Professor Borghetti has held the highest qualification for teaching law in France (*agrégation de droit privé et de sciences criminelles*). *Id.* ¶ 4. He has published extensively on contract and tort law both in France and abroad. *Id.* ¶ 6. He writes the "contract and liability" column in *Revue des contrats* and recently edited a book on French contract-law reform from a French and German perspective. *Id.*

Professor Borghetti determined whether the FRAND assurance embodies an SSPPU requirement by analyzing the five sources of contract terms under French law: (1) express terms; (2) terms implied by statute; (3) terms implied by the courts; (4) terms implied by the parties; and (5) customary terms. *Id.* ¶ 11.

*Point #1.* To begin, the ETSI contract contains no express terms requiring SSPPU licensing, as the ETSI IPR policy "gives no explicit indication as to what the basis should be for the royalty paid by the licensee." *Id.* ¶ 7. To the contrary, the policy's focus on "equipment"

suggests an end-device royalty base. *Id.* ¶¶ 14-19. Under French contract law, the "contract should be interpreted in accordance with the parties' intention when entering that contract." *Id.* ¶ 16. And, relying on the declaration of Dr. Huber (also submitted with this motion), Professor Borghetti notes that the ETSI members who enacted the policy intended "equipment" to refer to end-user devices and not to components. *Id.* ¶¶ 14-19; *see* Huber Dec. ¶¶ 27-35.

**Points #2-4.** The other sources of contractual terms under French law confirm the lack of an SSPPU requirement in the ETSI contract. As to terms implied by statute, "neither in the *code civil* nor in other statutes are there provisions setting the basis on which license contracts should be granted, or even giving indications as to what this basis could be." Borghetti Dec. ¶ 21. Likewise, an SSPPU requirement would not be implied by a French court as a matter of "fairness"; instead, French courts ordinarily only imply duties of care and duties to inform for this reason, and no French court has implied a term like an SSPPU requirement or has implied any term in ETSI members' voluntary FRAND assurance. *Id.* ¶ 22. Nor is there any basis to find an implied SSPPU requirement based on the parties' pre-contractual representations here. *Id.* ¶¶ 23-24.

**Point #5.** Finally, under *code civil* Article 1194, "'usage' can be a source of a contract's content." *Id.* ¶ 25. Here, usage weighs against, rather than in favor of, an SSPPU requirement. *Id.* In particular, French courts regard as part of a contract any practice firmly established in the parties' field of activity unless they explicitly waive its application. *Id.* Relying again on Dr. Huber, Professor Borghetti determined that licensing of end-user devices based on the price of those devices—rather than on component costs—was the practice in the cellular industry when ETSI adopted the IPR policy. *Id.*; *see* Huber Dec. ¶¶ 36-39, 43. Indeed, as noted above, many commercial considerations drive the longstanding practice of licensing to device makers using

the price of their devices as the royalty base, that practice remains in place today, and "ETSI did not intend to change" it. Huber Dec. ¶¶ 36-39.

Professor Borghetti thus concludes that "[t]he assertion that an ETSI Declaration made pursuant to Clause 6.1 of the ETSI IPR policy requires that an IPR holder be ready to grant licenses on an SSPPU basis appears not to be grounded under French law. Quite to the contrary, French law rules on implied contract terms and on the interpretation of contracts indicate that the licenses, which an IPR holder must be prepared to grant when he makes an ETSI Declaration, are licenses for end-user devices based on the price of those devices, and not for components or SSPPUs." Borghetti Dec. ¶ 26. As a result, the Court should rule as a matter of French law that Ericsson's voluntary FRAND assurance did not require Ericsson to offer licenses to its global patent portfolio based on the SSPPU.

> **C.    To the extent that global patent law informs the FRAND assurance under French law, all countries' laws outside the U.S. counsel against an SSPPU requirement.**

HTC has not expressly stated that a reasonable royalty for a standard-essential patent must be calculated the same way as *damages for infringement of that patent*. Nor does any law or logic compel that conclusion. Instead, it makes sense that different considerations may drive a reasonable-royalty assessment in the two contexts, particularly given that courts must assess infringement damages on a claim-by-claim basis, while FRAND licensing occurs at the portfolio level. Yet HTC seems to assume close ties between patent-damages law and FRAND licensing requirements, as it relies on patent-infringement cases for its purported SSPPU requirement.

But even if the Court were to look to patent-damages law to inform its determination of French contract law, it would cut against an SSPPU requirement in FRAND licensing. Ericsson's portfolios comprise patents from all over the world. In fact, the majority of Ericsson's 2G, 3G, and 4G standard-essential patents were issued outside the U.S. So Ericsson could not file

infringement suits in U.S. courts governed by U.S. patent-damages law for most of these patents. *See Voda v. Cordis Corp.*, 476 F.3d 887, 897 (Fed. Cir. 2007).

But *no country outside the U.S.* ties patent damages to the SSPPU. This is no surprise because—as noted above and explained below—even in the U.S., the SSPPU concept is just an evidentiary principle that is not binding as a substantive rule of law. And "no other country today employs juries in adjudicating patent matters." Kesan Dec. ¶ 28; *see also* Thomas F. Cotter, *Patent Damages Heuristics*, 25 Tex. Intell. Prop. L.J. 159, 200-01 (2018) (observing that "judges often do use the EMV as the royalty base in Japan, Germany, and other countries where juries are never called upon to decide patent cases"); Axel Gautier & Nicolas Petit, *Smallest Salable Patent Practicing Unit and Component Licensing: Why 1$ is Not 1$*, at 3 (Apr. 18, 2017), available at https://ssrn.com/abstract=2954592 ("Courts are, however, more concordant over the fact that the EMV v SSPPU discussion is largely irrelevant outside of the specific scenario of jury trial cases, and therefore more relevant in the US than in the EU where bench trials are the rule.").

To prove that no country outside the U.S. uses the SSPPU concept, Ericsson offers the testimony of Professor Jay P. Kesan. Professor Kesan is a Professor of Law and H. Ross & Helen Workman Research Scholar at the University of Illinois at Urbana-Champaign College of Law. Kesan Dec. ¶¶ 2, 5. He is also an attorney, and both a legal and technical expert. *See id.* ¶¶ 5-6. He has taught, spoken, and published extensively—both in the U.S. and abroad—on issues of patent law and policy, covering both U.S. law and comparative perspectives on patent-law issues. *See id.* ¶¶ 8-10. Professor Kesan conducted a global survey of patent-damages law to determine the royalty base used in jurisdictions around the world. *See id.* ¶¶ 28-55.

Professor Kesan presents his analysis on a regional basis for each of the four major patent

regions outside the U.S.: the British Commonwealth, Continental Europe, Asia, and Latin America. *See id.* ¶¶ 29, 35, 43, 52. He concludes that the SSPPU concept is not applied as a rule of law outside of the U.S., and so global patent law counsels against applying it in the FRAND licensing context, explaining:

> This global survey shows that no country outside the U.S. employs the SSPPU concept in the way the Federal Circuit and other U.S. courts have done to restrict presentation of evidence of the licensee's revenues from sales of the complete accused products. In fact, my work in comparative patent remedies has revealed essentially no reference outside the U.S. to the SSPPU concept. Rather, to the extent that courts outside the U.S. award monetary damages based on reasonable royalties, they take the entire accused product as the royalty base or, perhaps, look to comparable licenses to see on what basis the patentee is typically compensated. Even in Germany, the only country to the best of my knowledge where a court *may* consider the value of a "patented device" within a composite device or group of products sold together, this principle is constrained by actual practice: Courts look to what royalty base would be easy to determine and convenient for parties to the hypothetical negotiation to base their negotiations on. Here, as in the typical case, that would mean looking to the end-user device.

*Id.* ¶¶ 56.

Thus, HTC is wrong to rest its purported SSPPU requirement on patent-damages law. HTC invokes only U.S. law, but U.S. law would not govern infringement suits for the majority of Ericsson's cellular standard-essential patents. And the SSPPU concept contradicts the law outside the U.S., where infringement damages would be assessed for most of Ericsson's patents.

### D.     Even if U.S. law did govern, the SSPPU evidentiary principle does not dictate how parties negotiate licenses.

HTC bases its argument for an SSPPU requirement on U.S. case law. As explained above, however, French law governs Ericsson's FRAND assurance under the ETSI contract. *See, e.g., TCL Commc'n*, 2017 WL 6611635, at *5; *Apple*, 2012 WL 1672493, at *10. Thus, *none* of HTC's cases apply here.

But even setting aside the inapplicability of U.S. cases, nothing in these cases suggests that parties must always base reasonable royalties on the SSPPU, whether in assessing patent

damages, negotiating private licenses, or otherwise. The Federal Circuit has held that in patent-infringement cases, "a reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Exmark*, 879 F.3d at 1348 (internal quotation marks omitted). But the Federal Circuit has declined to require the SSPPU as the royalty base, instead holding that apportionment of value "can be addressed in a variety of ways, including 'by careful selection of the royalty base to reflect the value added by the patented feature or by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination of both.'" *Id.* (quoting *D-Link*, 773 F.3d at 1226) (alterations omitted). The Federal Circuit describes the SSPPU doctrine as a mere "*evidentiary principle*" applicable to damages assessment for individual patents that is unique to jury trials. *Id.* (emphasis added). "The notion of an SSPPU does not restrict how patent holders may value their patents, nor does it dictate how negotiating parties may arrive at mutually agreeable licensing terms." David Kappos & Hon. Paul R. Michel, *The Smallest Salable Patent-Practicing Unit: Observations on its Origins, Development, & Future*, 32 Berkeley Tech. L.J. 1433, 1442 (2018); *see* Kesan Dec. ¶¶ 20-27. It certainly does not restrict worldwide portfolio licensing, which almost universally proceeds with the end-user device as the royalty base.

And, even in the more limited, and different, context of U.S. patent-damages law, the SSPPU concept "was never intended to be, and is not, a rigid rule prescribing how patent damages and royalties must be calculated in all contexts." Kappos & Michel, *The Smallest Salable Patent-Practicing Unit*, *supra*, 32 Berkeley Tech. L.J. at 1435; *see* Kesan Dec. ¶¶ 18-19. Thus, commentators like Kappos and Judge Michel have cautioned against using the SSPPU concept as "a hard-and-fast substantive requirement of patent law." *See* Kappos & Michel, *Observations*, *supra*, 32 Berkeley Tech. L.J. at 1455; *see also* Gautier & Petit, *Smallest Salable*

*Patent Practicing Unit and Component Licensing*, *supra*, at 3 (citing *CSIRO*, 809 F.3d 1295, for the proposition "that SSPPU is 'untenable' as a rule").

In fact, the Federal Circuit rejected the very same argument that HTC makes here—several times. In *Ericsson v. D-Link*, Ericsson asserted patents essential to the wifi standard against a group of defendants who used wifi in their laptops and routers. *See* 773 F.3d at 1225. Ericsson produced evidence of comparable licenses under which the entire device was the royalty base, and the defendant responded that the SSPPU doctrine trumped industry practice as reflected in comparable licenses. *Id*. The *D-Link* defendants argued that the royalty base must be limited to the chipset, which was the SSPPU. *Id*. The Federal Circuit rejected this argument, finding that as long as the overall royalty amounts were reasonable and non-discriminatory, the choice of royalty base (entire device or SSPPU) was of no consequence. *Id*. at 1226. "Logically, an economist could [apportion value] in various ways—by careful selection of the royalty base to reflect the value added by the patented feature, where that differentiation is possible; by adjustment of the royalty rate so as to discount the value of a product's non-patented features; or by a combination thereof." *Id*. The court held that because Ericsson's expert analysis had discounted the past licenses to isolate the asserted technology, the district court did not have to exclude the testimony just because those licenses were "predicated on the value of a multi-component product." *Id*. at 1228. Otherwise, said the court, it would be almost impossible for patentees to rely on "[r]eal world, relevant licenses." *Id*.

One year later, the Federal Circuit reemphasized that the SSPPU evidentiary principle is *not required to prove damages*, especially when comparable licenses offer strong economic evidence of value in *CSIRO v. Cisco*:

> The rule Cisco advances—which would require all damages models to begin with
> the smallest salable patent-practicing unit—is untenable. It conflicts with our

prior approvals of a methodology that values the asserted patent based on comparable licenses…. Moreover, we held in *Ericsson* that otherwise comparable licenses are not inadmissible solely because they express the royalty rate as a percentage of total revenues, rather than in terms of the smallest salable unit. *Ericsson*, 773 F.3d at 1228. *Therefore, adopting Cisco's position would necessitate exclusion of comparable license valuations that — at least in some cases — may be the most effective method of estimating the asserted patent's value.*

809 F.3d at 1303 (emphasis added).

Most recently, the Federal Circuit endorsed an expert's use of an entire lawnmower as the royalty base even though the asserted patents read only on the mower's "flow control baffle." *See Exmark*, 879 F.3d at 1348. To begin, the court noted that although the patent related to the component, the claim recited a "multiblade lawnmower," and so there perhaps were no non-patented features. *Id.* And, in any event, the court pointed as it did in *D-Link* to the "real-world bargaining" supporting the use of lawnmower sales as the royalty base. *Id.* at 1349. It explained that "'[s]ophisticated parties routinely enter into license agreements that base the value of the patented inventions as a percentage of the commercial products' sales price,' and thus 'there is nothing inherently wrong with using the market value of the entire product.'" *Id.* (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009)); *accord CSIRO*, 809 F.3d at 1303 (holding that a rule requiring "all damages models to begin [with the SSPPU]" "is untenable" because "[i]t conflicts with our prior approvals of a methodology that values the asserted patent based on comparable licenses").

Not only is the SSPPU concept not mandated in U.S. patent-damages law, the SSPPU concept is not mandated and, in fact, is ill-suited to private licensing negotiations for large, global, and diverse patent portfolios. No rule of law anywhere in the world requires parties to use the SSPPU concept in their negotiations. *See* Kesan Dec. ¶¶ 20, 25. Instead, parties can negotiate on whatever bases make sense to them. *See id.* Typically, patentees want an easy-to-administer

license, and implementers want freedom to operate. *See id.* ¶ 25. Thus, it makes sense to negotiate based on the price of the implementer's end-product—an easily identifiable royalty base encompassing all potentially infringing features. *See id.*; Huber Dec. ¶¶ 36, 41. It would be inefficient and would create accounting and auditing nightmares for parties to identify the SSPPU in each of the licensee's products for thousands of patent claims, and then assign royalty rates to every combination. *See* Kesan Dec. ¶ 25; Huber Dec. ¶ 37.

This is especially true in the cellular industry, where, for many practical reasons, patentees have historically licensed their cellular standard-essential patent portfolios to handset makers rather than component manufacturers. *See* Kesan Dec. ¶¶ 20-22; Huber Dec. ¶¶ 36-39, 43. Industry participants recognize that end-user device prices best reflect the patented standard-essential technology's economic value and that looking to the value of components, like baseband processors, may undervalue the technology. *See* Kesan Dec. ¶ 23; Huber Dec. ¶¶ 40-44. A baseband processor does not reflect the patented cellular standard-essential technology's full value because, among other things, the patented cellular standard-essential technology enables or improves functionality elsewhere in a handset. *See* Kesan Dec. ¶ 23; Huber Dec. ¶¶ 37, 40. Additionally, the baseband processor cannot function without other components in the handset. *See* Kesan Dec. ¶ 23. Perhaps more important, because baseband-processor manufacturers conventionally do not pay for intellectual-property rights (instead allowing their customers, the handset makers, to pay for those rights), the patented technology's value is not accounted for as part of the cost of a baseband processor. *Id.* ¶ 24; Huber Dec. ¶ 36. Instead, economic factors having nothing to do with the value of patented standard-essential technology (like the price of silicon or manufacturing costs) drive baseband-processor costs. *See* Kesan Dec. ¶ 24. It therefore makes no economic sense to peg royalties for patented technology to baseband-

processor costs, which do not incorporate patent royalties for cellular standard-essential patents. *Id.*

In sum, even if U.S. patent law were relevant to Ericsson's voluntary FRAND assurance, it would not impose an SSPPU requirement. The Federal Circuit has made clear that the SSPPU concept is just an evidentiary principle employed in some cases to implement the substantive apportionment rule. The SSPPU concept is not, itself, a substantive rule of law governing how patent damages must be calculated—much less how parties must set royalties in private global patent licenses.

## IV.    CONCLUSION

Ericsson requests that, under Fed. R. Civ. P. 44.1, the Court rule that as a matter of French law, Ericsson's voluntary FRAND assurance under the ETSI contract does not require it to license its global portfolio of cellular standard-essential patents to HTC based on the SSPPU.

October 29, 2018

Respectfully submitted,

*/s/ Theodore Stevenson, III*
Theodore Stevenson III, lead counsel
TX State Bar No. 19196650
tstevenson@mckoolsmith.com
Nicholas Mathews
TX State Bar No. 24085457
nmathews@mckoolsmith.com
Frank Vecella
TX State Bar No. 20532500
fvecella@mckoolsmith.com
Warren Lipshitz
TX State Bar No. 24078867
wlipschitz@mckoolsmith.com
Chelsea A. Priest
TX State Bar No. 24102375
cpriest@mckoolsmith.com
Jonathan Powers
TX State Bar No. 24098277
jpowers@mckoolsmith.com
Erik B. Fountain
TX State Bar No. 24097701
efountain@mckoolsmith.com
Marcus L. Rabinowitz
TX State Bar No. 24098293
mrabinowitz@mckoolsmith.com
**MCKOOL SMITH, PC**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Kevin Burgess
TX State Bar No. 24006927
kburgess@mckoolsmith.com
Kevin Hess
TX State Bar No. 24087717
khess@mckoolsmith.com
Christine Woodin
TX State Bar No. 24199951
cwoodin@mckoolsmith.com
**MCKOOL SMITH, PC**
300 W. 6th Street, Suite 1700
Austin, TX 78701

Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Blake Bailey
TX State Bar No. 24069329
**MCKOOL SMITH, PC**
600 Travis Street, Suite 7000
Houston, TX 77002
Telephone: (713) 485-7300
Telecopier: (713) 485-7344

**ATTORNEYS FOR DEFENDANTS
AND COUNTERCLAIM PLAINTIFFS
TELEFONAKTIEBOLAGET LM
ERICSSON AND ERICSSON INC.**

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for Ericsson conferred with HTC by telephone regarding this motion and HTC indicated that it is opposed to the relief sought herein.

*/s/ Theodore Stevenson, III*
Theodore Stevenson, III

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a), and therefore served on all counsel who have consented to electronic service. Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record who did not receive the attached will be served by electronic mail, facsimile transmission and/or first class mail, on October 29, 2018.

*/s/ Theodore Stevenson, III*
Theodore Stevenson, III

## <u>CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL</u>

I hereby certify that pursuant to the Protective Order in the above-captioned case, this motion and the exhibits thereto contain confidential information. Accordingly, this document is to be filed under seal.

*/s/ Theodore Stevenson, III*
Theodore Stevenson, III