**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

HTC Corporation and HTC America, Inc.,

Plaintiffs,

v.

Telefonaktiebolaget LM Ericsson and Ericsson Inc.

Defendants.

Telefonaktiebolaget LM Ericsson and Ericsson Inc.,

Counterclaim Plaintiffs,

v.

HTC Corporation and HTC America, Inc.

Counterclaim Defendants.

Case No.: 6:18-cv-00243-JRG

**JURY TRIAL DEMANDED**

**PUBLIC VERSION**

**DEFENDANTS TELEFONAKTIEBOLAGET LM ERICSSON & ERICSSON INC.'S *DAUBERT* #3: MOTION TO EXCLUDE EXPERT OPINIONS OF DRS. PERRYMAN & LYNDE RELATED TO THE TOP-DOWN SSPPU APPROACH**

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. Dr. Lynde's qualifications and opinions ........ 2

B. Dr. Perryman's qualifications and opinions ........ 3

III. DISCUSSION ........ 4

A. Drs. Lynde and Perryman's top-down analysis is unreliable because it does not reliably apply any sound economic principle to the facts of this case. ........ 4

1. Drs. Perryman and Lynde have no economic principle to support their selection of the profit margin on a baseband processor as the royalty base ........ 6

2. Drs. Perryman and Lynde cannot reliably apply a top-down SSPPU method to the facts of this case. ........ 7

B. Drs. Perryman and Lynde offer improper legal opinions [REDACTED] ........ 9

1. [REDACTED] ........ 10

2. [REDACTED] ........ 12

IV. CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Biscotti Inc. v. Microsoft Corp.*,
No. 2:13-CV-01015-JRG-RSP, 2017 WL 2536962 (E.D. Tex. May 18, 2017)........................5

*Carlson v. Bioremedi Therapeutic Sys., Inc.*,
822 F.3d 194 (5th Cir. 2016) ..........................................................................................4

*Commonwealth Sci. & Indus. Res. Org. v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015)......................................................................................12

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*,
No. 6:11-CV-343, 2014 WL 3805817 (E.D. Tex. July 23, 2014), *vacated on other grounds*, 809 F.3d 1295 (Fed. Cir. 2015) .............................................................8, 9, 10

*Cornell Univ. v. Hewlett-Packard Co.*,
609 F. Supp. 2d 279 (N.D.N.Y. 2009) ..........................................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)..........................................................................................................4

*Eastcott v. Hasselblad A/S*,
892 F. Supp. 2d 557 (S.D.N.Y. 2012), *aff'd*, 564 F. App'x 590 (Fed. Cir. 2014) ..........................................................................................................................10

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014)......................................................................................12

*In re Certain Electronics Devices*,
337-TA-794 (July 5, 2013) available at https://essentialpatentblog.lexblogplatform.com/wp-content/uploads/sites/64/2013/07/337-TA-794-Commission-Opinion-Public-Version.pdf..........................................................................................................6

*In re Innovatio Ventures, LLC*,
No. 11 C 9308, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013) .............................................11, 13

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012)..........................................................................................11

*Lassberg v. Barrett Daffin Frappier Turner & Engel, L.L.P.*,
No. 4:13-cv-00577, 2014 WL 12659958 (E.D. Tex. Sept. 18, 2014)............................. passim

*Monsanto Co. v. Ralph*,
382 F.3d 1374 (Fed. Cir. 2004)......................................................................................13

*Powell v. Home Depot U.S.A., Inc.*,
663 F.3d 1221 (Fed. Cir. 2011)....................13

*TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*,
No. CV 15-2370 JVS(DFMX), 2017 WL 6611635, at *5 (C.D. Cal. Dec. 21, 2017)....................12

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)....................4

*United States v. Second Chance Body Armor, Inc.*,
289 F. Supp. 3d 145 (D.D.C. 2018)....................10

*Versata Software Inc. v. SAP America, Inc.*,
No. 2:07-CV-153 CE, 2011 WL 4017939 (E.D. Tex. Sept. 9, 2011)....................4

**Other Authorities**

Anne Layne-Farrar, *The Practicalities And Pitfalls Of The Smallest Saleable Patent Practicing Unit Doctrine: A Review Of Teece And Sherry* (Dec. 2016), available at http://ssrn.com/abstract=2855148....................7

Fed. R. Civ. P. 44.1....................12

Fed. R. Evid. 702....................4, 14

Fed. R. Evid. 702(c), (d)....................4

## I. INTRODUCTION

Ericsson moves to exclude opinions by two financial and economic experts, who together apply a "top-down" approach to calculate FRAND royalties for Ericsson's patents declared essential to the 2G, 3G, and 4G cellular standards. These experts, Drs. Matthew R. Lynde and M. Ray Perryman, claim that the starting point for the top-down analysis is the smallest salable patent-practicing unit (SSPPU). They rely on another expert to determine that the SSPPU here is the baseband processor chip in HTC's handsets, which is a component that HTC buys from upstream suppliers (chipmakers). The next step in Drs. Lynde and Perryman's top-down analysis is to estimate the chipmakers' average profit margin on the sale of baseband processor chips. They say this amount effectively caps the royalties handset makers like HTC should pay for cellular technology. Finally, Drs. Lynde and Perryman apportion the chipmakers' estimated profits to determine (1) the amounts attributable to cellular essential technologies (as opposed to other technologies on the chips) and (2) the subsets of these amounts attributable to Ericsson's standard-essential patents.

The Court should exclude this methodology. First, it is economically unreliable. Drs. Perryman and Lynde point to no sound economic justification for looking to the price or profit margin on baseband processors to assess the value of cellular technology. Worse yet, even if some economic principle supported determining royalties based on the SSPPU in a multi-component device, it could not be reliably applied to the facts of this case. Here, the price of (or profit margin on) a baseband processor is not a reliable benchmark for the value of the cellular technology it helps implement because *chipmakers do not pay for the technology*. Instead, their costs include material and manufacturing costs having nothing to do with the value of the technology. [redacted]

Second, the Court should preclude HTC's experts from giving legal opinions on the proper royalty base rooted in their (mis)interpretation of the law. [redacted]

## II. BACKGROUND

### A. Dr. Lynde's qualifications and opinions

Dr. Lynde is an economist and senior VP of an economic and financial consulting firm. Ex. B, Lynde Rpt. ¶ 1. He holds both a B.A. and a Ph.D. in economics. *Id.* ¶ 2. He claims to have more than 35 years of academic, government, and business experience in applied economics. *Id.* Dr. Lynde is not a lawyer. [redacted]

Dr. Lynde thus supplies key inputs to HTC's ultimate top-down FRAND royalty analysis. [redacted]

[redacted]

**B. Dr. Perryman's qualifications and opinions**

Dr. Perryman is an economic and financial analyst. Ex. D, Perryman Rpt. ¶ 1. He holds degrees in mathematics and economics and claims to have more than 40 years of academic and professional experience in economics and finance. *Id.* ¶ 2. He is not a lawyer. HTC hired Dr. Perryman to opine on FRAND royalty rates. *Id.* ¶ 11.

Dr. Perryman provides both HTC's analytical framework for FRAND royalties and its ultimate FRAND royalty calculations for Ericsson's standard essential patents. [redacted]

To determine purported per-device FRAND royalties Dr. Perryman first relied on [redacted]

[redacted]

## III. DISCUSSION

The Court must perform a gatekeeping function to ensure that expert testimony admitted at trial is both relevant and reliable. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016); *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-91 (1993). A proponent of expert testimony must show by a preponderance of the evidence (1) that the expert is qualified; (2) that the testimony is relevant; and (3) that the testimony is reliable. *Lassberg v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, No. 4:13-cv-00577, 2014 WL 12659958, at *1 (E.D. Tex. Sept. 18, 2014) (citing *Daubert*, 509 U.S. at 590-91).

### A. Drs. Lynde and Perryman's top-down analysis is unreliable because it does not reliably apply any sound economic principle to the facts of this case.

Under Fed. R. Evid. 702, the Court should admit expert testimony only if (1) "the testimony is the product of reliable principles and methods" *and* (2) "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(c), (d). Thus, when it comes to expert testimony on reasonable patent royalties, the testimony's proponent must first show that the expert based the testimony "on sound economic principles." *See Versata Software Inc. v. SAP America, Inc.*, No. 2:07-CV-153 CE, 2011 WL 4017939, at *4 (E.D. Tex. Sept. 9, 2011). The proponent must also show that the expert "connect[ed] [his] theories to the facts of the case at hand." *Id.* at *3. "[A]n expert should be excluded under *Daubert*" if he has not "justified the application of a general theory to the facts of the case." *Uniloc USA, Inc. v.*

*Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011). Courts thus consistently "exclude expert testimony that applies general economic theorems … that are not grounded in the facts of the case." *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-RSP, 2017 WL 2536962, at *4 (E.D. Tex. May 18, 2017).

HTC's expert testimony on FRAND royalties for Ericsson's cellular standard essential patents satisfies neither of these aspects of the *Daubert* inquiry. The top-down SSPPU approach advanced by Drs. Lynde and Perryman calculate alleged FRAND royalties by, [redacted]

[redacted]

This entire approach fails, however, because [redacted] are unreliable. Drs. Perryman and Lydne offer no economic principle that supports determining royalties paid by handset makers based on the price chipmakers charge for baseband processor chips (Step [A]). Nor do they offer any economic principle that supports looking to chipmakers' profit margin on baseband processors (Step [B]). [redacted]

[1] [redacted]

[redacted] Thus, the top-down approach looking to the alleged SSPPU cannot be reliably applied to these facts.

**1. Drs. Perryman and Lynde have no economic principle to support their selection of the profit margin on a baseband processor as the royalty base**

First, there is no sound economic principle linking the value of cellular technology generally—or the value of Ericsson's standard essential patents—to either the price or profit on a baseband processor ([redacted]). Drs. Lynde and Perryman provide no economic evidence suggesting any such link. They cite no economic study demonstrating any such link, nor does any HTC expert present any empirical or economic evidence demonstrating any such link. There is no reason to believe that such a link exists. Generally, the telecommunications industry licenses cellular technology with royalties based on the net selling price of the handset. *See, e.g.*, Ex. F, Eric Stasik, "Royalty Rates and Licensing Strategies for Essential Patents on LTE (4G) Telecommunications Standards," les Nouvelles, (September 2010), p. 115 (reporting the royalty rates that 4G standard essential patent holders anticipated to charge) available at http://docshare02.docshare.tips/files/16356/163568200.pdf; International Trade Commission, Commission Opinion, *In re Certain Electronics Devices*, 337-TA-794 (July 5, 2013) available at https://essentialpatentblog.lexblogplatform.com/wp-content/uploads/sites/64/2013/07/337-TA-794-Commission-Opinion-Public-Version.pdf, at p. 60 n.19 (evaluating 3G cellular standard essential patents) ("[T]he record supports a conclusion that a common industry practice is to use the end-user device as a royalty base."). [redacted]

[redacted]

[redacted]

### 2. Drs. Perryman and Lynde cannot reliably apply a top-down SSPPU method to the facts of this case.

Second, selection of the price chipmakers charge for baseband processors as the starting point for the analysis ([redacted]) is conceptually flawed because it ignores a critical fact of the case: the price of baseband processors does not include the cost of 4G patent royalties. Thus, chipmakers are not compensated for the value of cellular essential technology, and the prices of their chips contain no increment reflecting the value of cellular essential technology. Instead, economic factors having nothing to do with the value of patented standard-essential technology (like the price of silicon or manufacturing costs) drive baseband-processor prices. *See, e.g.*, Ex. G, Anne Layne-Farrar, *The Practicalities And Pitfalls Of The Smallest Saleable Patent Practicing Unit Doctrine: A Review Of Teece And Sherry* (Dec. 2016), available at http://ssrn.com/abstract=2855148 (observing that "[t]he chipset market is highly competitive and commoditized, and few chipset makers pay royalties for the intellectual property incorporated onto their chips," and that "[t]hese market features mean that chipset prices and revenues will not reflect the value of the patented technology used within the chipset").

If chipmakers paid royalties for cellular standard essential patents, then their costs would increase, and they would be forced to recoup the additional cost by increasing the price of baseband processor chips. By focusing on a price that *expressly excludes* costs for royalties, HTC's SSPPU approach vastly and deliberately undervalues the cellular technology. Looking to the price of an unlicensed baseband processor chip to determine the value of cellular essential technology is thus like looking to the price of a bootlegged CD to determine the value of the copyrights to the Beatles' White Album. The bootlegger of course pays no royalties for those

rights; he pays only for a blank CD and some minimal share of fixed costs (for a computer and software) required to burn music onto it—say, $1.50 total. When the bootlegger marks the bootlegged CD up 50 cents and sells it at a train station, no one would say that either the $2 price or 50-cent margin bear any relation to the value of the unlicensed intellectual property.

In fact, this Court has employed a similar analogy, explaining that "[b]asing a royalty solely on chip price is like valuing a copyrighted book based only on the costs of the binding, paper, and ink needed to actually produce the physical product." *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, No. 6:11-CV-343, 2014 WL 3805817, at *11 (E.D. Tex. July 23, 2014), *vacated on other grounds*, 809 F.3d 1295 (Fed. Cir. 2015). "While such a calculation captures the cost of the physical product," said the Court, "it provides no indication of its actual value." *Id.*

[redacted]

> [redacted]

[redacted]

[redacted]



This flaw is fatal. Accordingly, HTC's top-down SSPPU approach is unreliable.

**B. Drs. Perryman and Lynde offer improper legal opinions by justifying their selection of an SSPPU royalty base founded on their own reading of case law.**

"[A]n expert witness may not offer opinions that amount to legal conclusions." *Id.* at *3 (citing *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001)). "Our legal system instead reserves to the trial judge the role of deciding the law for the benefit of the jury." *Id.* (citing *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)). If experts could testify to legal conclusions, then competing experts inevitably would confuse the jury by each stating the law

[2]



most favorably to his or her client. *Id.* The testimony would also "invade[] the Court's authority to interpret the law." *Id.* Thus, in *Lassberg*, this Court struck opinions "applying the law to the facts in this case." *Id*. at *4. It observed that the expert's report read "more like a lawyer's brief than an expert opinion; he cite[d] five cases and three statutes to support his findings." *Id.* As a result, the Court barred the expert from testifying "based on decisions from recent cases and his interpretation of the law." *Id.*[4]

Rather than offer economic justifications for looking to chipmakers' profits,

The Federal Circuit repeatedly has rejected both principles as requirements for calculating reasonable patent royalties.

[4] *See also United States v. Second Chance Body Armor, Inc.*, 289 F. Supp. 3d 145, 171 (D.D.C. 2018) (excluding part of an expert report that "read[] more like a lawyer's argument than an expert opinion based on specialized knowledge of or experience with" the relevant subject matter); *Eastcott v. Hasselblad A/S*, 892 F. Supp. 2d 557, 561 (S.D.N.Y. 2012), *aff'd*, 564 F. App'x 590 (Fed. Cir. 2014) (excluding an inventor's legal arguments about his patents and an allegedly infringing article "since such argument should be included in the memorandum of law that his counsel submitted").

These opinions read "more like a lawyer's brief than an expert opinion." *See Lassberg*, 2014 WL 12659958, at *4. They are thus unhelpful to the jury and would invade the Court's authority to interpret the law. *See id*. The Court should thus exclude these opinions.

**b) Drs. Perryman and Lynde are [redacted]**

[redacted]

**2. Drs. Perryman's and Lynde's arguments that [redacted]**

[redacted]

---

[redacted].

[Content redacted]

---

13

## IV. CONCLUSION

Ericsson requests that, under Fed. R. Evid. 702, the Court exclude the expert opinions of Drs. Perryman and Lynde (and any other expert intending to offer similar opinions) basing FRAND royalties on a top-down SSPPU analysis, and any opinions otherwise asserting that FRAND royalties should be calculated based on the SSPPU or the chipmakers' profits, including the following portions of Drs. Perryman and Lynde:



November 30, 2018

Respectfully submitted,

*/s/ Theodore Stevenson, III*

Theodore Stevenson III, lead counsel
TX State Bar No. 19196650
tstevenson@mckoolsmith.com
Nicholas Mathews
TX State Bar No. 24085457
nmathews@mckoolsmith.com
Frank Vecella
TX State Bar No. 20532500
fvecella@mckoolsmith.com
Warren Lipschitz
TX State Bar No. 24078867
wlipschitz@mckoolsmith.com
Chelsea A. Priest
TX State Bar No. 24102375
cpriest@mckoolsmith.com
Jonathan Powers
TX State Bar No. 24098277
jpowers@mckoolsmith.com
Erik B. Fountain
TX State Bar No. 24097701
efountain@mckoolsmith.com
Marcus L. Rabinowitz
TX State Bar No. 24098293
mrabinowitz@mckoolsmith.com
**McKool Smith, PC**
300 Crescent Court, Suite 1500
Dallas, TX 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Kevin Burgess
TX State Bar No. 24006927
kburgess@mckoolsmith.com
Charles Fowler
TX State Bar No. 24083014
cfowler@mckoolsmith.com
Kevin Hess
TX State Bar No. 24087717
khess@mckoolsmith.com
Christine Woodin
TX State Bar No. 24199951
cwoodin@mckoolsmith.com

**McKool Smith, PC**
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Telecopier: (512) 692-8744

Blake Bailey
TX State Bar No. 24069329
**McKool Smith, PC**
600 Travis Street, Suite 7000
Houston, TX 77002
Telephone: (713) 485-7300
Telecopier: (713) 485-7344

**ATTORNEYS FOR DEFENDANTS
AND COUNTERCLAIM PLAINTIFFS
TELEFONAKTIEBOLAGET LM
ERICSSON AND ERICSSON INC.**

**CERTIFICATE OF CONFERENCE**

Counsel for Ericsson conferred with HTC by telephone regarding this motion and HTC indicated that it is opposed to the relief sought herein.

*/s/ Theodore Stevenson, III*
Theodore Stevenson, III

**CERTIFICATE OF SERVICE**

The undersigned certifies that this document was filed electronically in compliance with Local Rule CV-5(a), and so served on all counsel who have consented to electronic service. Under Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all counsel of record who did not receive this document will be served by electronic mail, facsimile transmission, or first class mail on November 30, 2018.

*/s/ Theodore Stevenson, III*
Theodore Stevenson, III

**CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL**

I certify that under the Protective Order in the above-captioned case, this motion and its exhibits contain confidential information. This document thus is to be filed under seal.

*/s/ Theodore Stevenson, III*
Theodore Stevenson, III