# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| HTC CORPORATION, HTC AMERICA INC, | § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 6:18-CV-00243-JRG |
| v. | § § | |
| TELEFONAKTIEBOLAGET LM ERICSSON, ERICSSON INC, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs HTC Corporation and HTC America, Inc.'s Motion to Dismiss Ericsson's Counterclaims (the "Motion"). (Dkt. No. 105.) Having considered the Motion and briefing, the Court is of the opinion that it should be **DENIED** for the reasons set forth herein.

## I. BACKGROUND

Cellular networks and mobile devices implement standards that allow devices made by different manufacturers to connect with one another in a network environment. OSENGO, KRISTEN, PATENTS AND STANDARDS: PRACTICE, POLICY, AND ENFORCEMENT 1-2 (Michael L. Drapkin et al. eds., *Bloomberg Law* Book Division, 2018). These standards are set by standards setting organizations ("SSO") that include the European Telecommunications Standards Institute ("ETSI"), the 3rd Generation Partnership Project ("3GPP"), and the Institute of Electrical and Electronics Engineers ("IEEE"). *Id.* at 2-41. Patented technology that is "essential" to implement a standard is called a Standard Essential Patent ("SEP"). *See ETSI Rules of Procedure*, Annex 6, Clause 15. A patent is "essential" if it is not technically possible to practice the standard without

1

infringing the patent. *Id.* SSOs have intellectual property rights ("IPR") policies that "define contractual terms for disclosure and licensing of patents that are essential for standard implementation." TAFFET, RICHART & HARRIS, PHIL, PATENTS AND STANDARDS: PRACTICE, POLICY, AND ENFORCEMENT at 4-2 (Michael L. Drapkin et al. eds., *Bloomberg Law* Book Division, 2018). These terms require owners of SEPs to (1) formally declare the patent as essential to the standard and (2) agree to license its patent to companies that practice the standard on specific terms. *Id.* "A commitment to license creates a contract between the SEP owner and the SSO" in which "[s]tandards implementers are third-party beneficiaries under such contracts." *Id.* at 4-10. ETSI and 3GPP require SEP-holders to license patents on terms that are fair, reasonable, and non-discriminatory ("FRAND"). *See ETSI Rules of Procedure*, Annex 6, Clause 6. IEEE similarly requires members to license SEPs using a "reasonable rate," *i.e.*, terms that are reasonable and non-discriminatory ("RAND"). *See IEEE-SA Standards Board Bylaws*, Clause 6 (Dec. 2016).

Plaintiffs HTC Corporation ("HTC Corp.") and HTC America, Inc. ("HTC" America") (collectively "HTC") design, manufacture, and sell smartphones. (Dkt. No. 135 ¶ 12.) HTC Corp. is a Taiwanese company with headquarters in Taiwan. (*Id.* ¶ 10.) HTC America is a wholly-owned subsidiary of HTC Corp. and has its principal place of business in Washington state. (*Id.* ¶¶ 10–11.) HTC America sells HTC Corp.'s smartphones in the United States, which implement the second generation (2G), third generation (3G), and fourth generation (4G) Mobile Cellular and Wireless Standards. (*Id.* ¶¶ 10–11, 51–52.)

Defendants Telefonaktiebolaget LM Ericsson ("TLM Ericsson") and Ericsson, Inc. (collectively "Ericsson") make and sell "base stations and supporting software and services compliant with the 2G, 3G, and 4G standards in the United States." (Dkt. No. 156 ¶ 16 (Answer).)

TLM Ericsson is a Swedish corporation with its principal place of business in Sweden, and its wholly-owned subsidiary, Ericsson, Inc., is a Delaware corporation with headquarters in Texas. (*Id*. ¶¶ 14–15.)  Ericsson owns several patents that are essential to the 2G, 3G, 4G, and WLAN standards, (*id.* ¶ 51), and has made a commitment to offer its SEPs on FRAND terms.  (*Id.* ¶ 110.)

Ericsson licensed its SEPs to HTC in three prior agreements in 2003, 2008, and 2014.  (Dkt. No. 105 at 3.)  Each contract also included a cross-license that required HTC to license its SEPs back to Ericsson.  (*Id.*)  The last agreement expired on December 31, 2016 and the parties began negotiations for a subsequent license in mid-2016.  (Dkt. No. 156 ¶ 36 (Counterclaims).)  HTC alleges that Ericsson failed to offer a license to its SEPs on FRAND terms and "brought this lawsuit in April 2017 seeking a declaration of the appropriate going-forward FRAND royalty rate."  (Dkt. No. 105 at 4.)  In response, Ericsson asserted four counterclaims: (1) a declaratory judgment that Ericsson has not breached its FRAND assurance to HTC; (2) breach of contract; (3) breach of obligation to negotiate in good faith, and (4) a declaratory judgment that HTC has rejected, repudiated, and/or forfeited any rights associated with Ericsson's FRAND declarations and is an unwilling negotiating partner.  (Dkt. No. 156 ¶¶ 44–70) (Counterclaims).)  HTC moves to dismiss Ericsson's counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No. 105.)[1,2]

---

[1]Ericsson previously asserted a fifth counterclaim for breach of implied contract and unjust enrichment but has since dropped it.  (Dkt. No. 116.)  HTC's motion to dismiss that counterclaim is therefore moot.

[2]HTC's motion to dismiss, (Dkt. No. 105), is directed to Ericsson's Second Amended Answer and Counterclaims, (Dkt. No. 88).  However, since the filing of HTC's motion to dismiss, HTC amended its complaint, (Dkt. No. 135), and Ericsson filed an updated answer and counterclaims in response, (Dkt. No. 156.).

> "Ericsson's Counterclaims alleged in Dkt. 156 are effectively identical to the Counterclaims it alleged in its [previously filed] Second Amended Answer and Counterclaims, Dkt. 88, with the exception that Ericsson has not re-alleged Counterclaim

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

HTC moves to dismiss Ericsson's counterclaims seeking a declaratory judgment for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A court has subject matter jurisdiction to issue a declaratory judgment if "there is a justiciable case or controversy." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007); *see also* 28 U.S.C. § 2201. A controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127. A court cannot issue a declaratory judgment to render an advisory opinion on "what the law would be upon a hypothetical set of facts." *Id.* (internal citation omitted).

Subject matter jurisdiction also requires a party to have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Standing exists if: (1) "the plaintiff has suffered an 'injury in fact' . . . [that is] concrete and particularized, [] 'actual or imminent,' [and] not 'conjectural' or 'hypothetical;'" (2) there is "a causal connection between the injury and the conduct complained of;" and (3) the relief sought is "'likely,' as opposed to merely 'speculative,' [such] that the injury will be 'redressed by a favorable decision.'" *Id.* at 560–61.

---

Five (which it dismissed in Dkt. 116). HTC and Ericsson have briefed HTC's motion to dismiss Ericsson's counterclaims (Dkts. 105, 117, 119, and 136), and do not wish to burden the Court by having to refile the briefing in support of and opposition to HTC's motion to dismiss. The parties therefore agree that HTC's motion to dismiss, and the briefing in support thereof and in opposition thereto, shall be treated as if filed with respect to Ericsson's counterclaims as alleged in Dkt. 156." (Dkt. No. 190.)

### B. Federal Rule of Civil Procedure 12(b)(6)

HTC also moves to dismiss Ericsson's counterclaims for failure to state a claim. Fed. R. Civ. P. 12(b)(6). "To survive dismissal, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Thompson v. City of Waco, Texas*, 764 F.3d 500, 503 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Thompson*, 764 F.3d at 503 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court must "accept all well-pleaded facts as true and view [them] . . . in the light most favorable to the plaintiff." *Thompson*, 764 F.3d at 503 (citing *Iqbal*, 556 U.S. at 678).

## III. DISCUSSION

### A. Counterclaim I

In Counterclaim I, Ericsson alleges that "[a] dispute exists between Ericsson and HTC concerning whether Ericsson has complied with its FRAND assurance, and as to whether Ericsson's offer to HTC for a global, reciprocal license to the parties' essential patents complied with . . . Ericsson's IPR licensing declarations to ETSI and ETSI's IPR Policy." (Dkt. No. 156 ¶ 48 (Counterclaims).) Ericsson requests a declaration that it has not breached its FRAND assurance to HTC. (*Id.* ¶ 49.)

HTC argues that Counterclaim I fails to state a claim because it merely restates a defense to HTC's allegations. (Dkt. No. 105 at 9.) HTC explains that "Ericsson alleges [in its Answer] that it negotiated in good faith and made FRAND offers to HTC" and as such, Ericsson's request for a declaration that it complied with its FRAND obligation "does not seek affirmative relief, adds nothing to this case, and has no practical effect." (*Id.* at 9–10.) HTC further argues that Ericsson's

5

counterclaim "seeking a declaration that it *did not* breach its FRAND obligations is a 'mirror image' of HTC's affirmative claim that Ericsson *did* breach its FRAND obligations." (Dkt. No. 119 at 2 (emphasis in original).) HTC submits that "[c]ourts in the Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the claims in the lawsuit." (*Id*. at 1 (citation omitted).) HTC argues that "[t]his counterclaim is thus either an impermissible request for an advisory opinion, or a request that the Court rule against HTC" and that "[e]ither way, it fails to state a claim and should be dismissed." (Dkt. No. 105 at 10.)

Ericsson argues that it is not seeking an advisory opinion because (1) HTC's suit against Ericsson is evidence of an actual case or controversy regarding the parties' FRAND compliance and (2) resolution of its counterclaim "will affect the parties' concrete rights." (Dkt. No. 117 at 7.) Ericsson explains that should the Court find that Ericsson complied with its FRAND obligations, then "HTC will be an unwilling licensee" and the Court can issue an injunction. (*Id.* at 7–8.) On the other hand, if the Court declares that Ericsson's offers were not FRAND, then "Ericsson can reformulate its offer consistent with the Court's ruling." (*Id.* at 8.) Ericsson also argues that its counterclaim is not duplicative of HTC's affirmative claims. (Dkt. No. 126 at 1.) Ericsson explains that it seeks a declaration that it has complied with its FRAND commitment as a whole, including the obligation to negotiate in good faith, and that its offers to HTC for a cross-license were FRAND. (*Id.* at 2.) In its Prayer for Relief, Ericsson asks for an injunction requiring HTC to accept Ericsson's FRAND offer for a cross-license. (*Id.*) HTC's requested relief, by contrast, only concerns the rates Ericsson offered during negotiations and seeks a one-way license to Ericsson. (*Id.*) Finally, Ericsson argues that "[b]y asserting its declaratory judgment counterclaim, [it] can make sure that its conduct is fairly adjudicated and that, HTC . . . cannot

6

deprive Ericsson of its desired adjudication by dismissing its affirmative claim." (Dkt. No. 117 at 10.)

Having considered the parties' arguments, the Court finds that it has subject matter jurisdiction over Counterclaim I. Ericsson alleges that (1) it "owns patents that are, and remain, essential to practice the 2G, 3G, and 4G standards" and "has declared to ETSI that it is prepared to grant licenses to its essential patents on FRAND terms and conditions," (Dkt. No. 156 ¶ 32 (Counterclaims)); (2) "HTC designs, manufactures, and markets a portfolio of mobile devices that comply with the 2G, 3G, and 4G standards and utilize Ericsson's essential patents, (*id.* ¶ 34); (3) "[i]n early December 2016, Ericsson provided HTC with a FRAND offer for a global cross-license to the parties' standard essential patents," (*id.* ¶ 38); (4) after the last license expired, "Ericsson continued to negotiate with HTC in good faith" (*id.* ¶ 41); and (5) "HTC unilaterally put an end to the parties' negotiations when it filed a lawsuit against Ericsson . . . alleg[ing] that Ericsson breached FRAND and did not negotiate with HTC in good faith." (*Id.* ¶ 43.) These allegations sufficiently demonstrate the existence of a real and immediate controversy which supports this declaratory judgment action. *See Huawei Technologies Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-00715, Dkt. No. 35 at 2 (E.D. Tex. Feb. 22, 2017) (finding that "T-Mobile's express statements regarding Huawei's alleged breach of FRAND obligations" "form the basis for Huawei's declaratory judgment action" that it has complied with its FRAND obligations); *PanOptis Patent Management, LLC v. Blackberry Corp.*, No. 2:16-cv-00059, 2017 WL 780885, at *6 (E.D. Tex. Feb. 10, 2017) ("Given PanOptis's alleged offer and Blackberry's alleged refusal to take a FRAND license to the LTE patents, a sufficient controversy exists to confer subject matter jurisdiction.").

The Court also declines to dismiss Ericsson's counterclaim on discretionary grounds. *See MedImmune*, 549 U.S. at 136 (holding that the Declaratory Judgment Act "confer[s] on federal

courts unique and substantial discretion in deciding whether to declare the rights of litigants"). Generally, "[i]f a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted." *Wuenschel v. Steris Corp.*, No. 4:10-cv-7, 2010 WL 1068156, at *2 (E.D. Tex. Mar. 16, 2010). Here, HTC alleges that Ericsson breached its FRAND obligation and acted in bad faith by refusing to offer a license to its SEPs on FRAND terms. (Dkt. No. 135 ¶¶ 109–125.) In response, Ericsson seeks a declaration that it has complied with its FRAND assurance, including its obligation to negotiate in good faith and offer a FRAND license. (Dkt. No. 156 ¶¶ 44–49 (Counterclaims).)[3] Resolution of HTC's claims will therefore resolve many of the issues raised in Ericsson's counterclaim. Notwithstanding this overlap, the Court finds that Ericsson seeks different affirmative relief. Ericsson requests a declaration and injunction requiring HTC to accept an offer for a *cross-license* to each party's SEPs on FRAND terms. (Dkt. No. 156 ¶¶ 44–49 (Counterclaim I); *id.* at 40–41 (Prayer of Relief).) HTC, by contrast, only seeks a *one-way* license to Ericsson's SEPs. (Dkt. No. 135 at 36 (Prayer of Relief).) "Considering that [Ericsson] is [] seeking some affirmative relief that is not part of the relief sought by [HTC], the Court finds that the equities favor allowing [Ericsson's] counterclaim to proceed." *Wuenschel*, 2010 WL 1068156, at *3.[4]

---

[3] While Ericsson argues that it seeks relief different from HTC because, among other thing, it requests a declaration that it negotiated in good faith, Ericsson admits in its counterclaims that HTC filed suit "premised on the fundamentally baseless allegations that Ericsson breached FRAND and *did not negotiate with HTC in good faith*." (Dkt. No. 156 ¶42) (emphasis added.)
[4] Even if Ericsson's counterclaim was the mirror-image of HTC's affirmative claims, HTC will not suffer prejudice if the counterclaim remains pending. *See Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2012 WL 395734, at *4 (W.D. Wash. Feb. 6, 2012); *U.S. Bank Nat. Ass'n v. Alliant Energy Res., Inc.,* No. 09-cv-078, 2009 WL 1850813, at *3 (W.D. Wis. June 26, 2009) ("If, as plaintiff argues, the counterclaims are truly repetitious, then plaintiff will not have to expend much time on any additional discovery or briefing."); *VW Credit, Inc. v. Friedman and Wexler, LLC,* No. 09 C 2832, 2010 WL 2330364, at *2 (N.D. Ill. June 7, 2010) ("In any event, even if the counterclaim turns out to be an exact mirror image of VW Credit's claim, which seems doubtful,

### B. Counterclaim II

In Counterclaim II, Ericsson alleges that HTC breached its FRAND obligation by failing to offer Ericsson a license to its SEPs on FRAND terms. This alleged breach has "exposed Ericsson to patent infringement claims by HTC" and "has wasted the time of Ericsson employees who traveled across the world multiple times to negotiate with HTC in good faith, at considerable expense to Ericsson." (Dkt. No. 156 ¶ 57 (Counterclaims).)

HTC argues that Ericsson lacks standing because it has failed to allege an injury-in-fact or damages. (Dkt. No. 105 at 11.) HTC contends that while Ericsson alleges that HTC's breach has exposed it to patent infringement claims, Ericsson nowhere alleges that its products infringe HTC's SEPs or that HTC has threatened to sue Ericsson for patent infringement. (*Id.*) HTC also argues that Ericsson's "request that the court 'enjoin[] such acts, practices, and conduct' appears to be seeking an advisory opinion that would have no practical effect." (*Id.* at 11–12.)

Ericsson argues that it does have standing to sue because it is an intended third-party beneficiary of HTC's contract with ETSI. Ericsson explains that HTC has declared its patents essential to ETSI and that "Ericsson requested a cross-license—consistent with the parties' past practices—but that HTC refused to offer one." (Dkt. No. 117 at 10–11.) Ericsson submits that "[d]eprivation of that contractual right is an injury" and that "[t]he purpose of the FRAND obligation is to remove uncertainty as to whether a potential licensee will be able to obtain a license on FRAND terms." (*Id.* at 11.) Finally, Ericsson contends that its injuries are redressable through monetary damages and equitable relief. For example, Ericsson seeks a declaration that HTC violated its FRAND commitment, "that HTC is bound to accept Ericsson's offer—which has

---

the fact that the counterclaim remained pending . . . would not prejudice VW Credit in the slightest.").

always been for a cross-license []—and alternatively that HTC has forfeited its ability to enforce the FRAND commitment against Ericsson," among other things. (Dkt. No. 126 at 5.)

Taking all well-pleaded facts as true and construing them in favor of the non-movant, the Court finds that Ericsson has standing to sue HTC for breach of contract. Ericsson alleges that (1) its base stations and supporting software and services implement the 2G, 3G, and 4G standards, (Dkt. No. 156 ¶ 16 (Answer); *id.* ¶¶ 1, 13 (Counterclaims)); (2) HTC claims it owns SEPs related to those standards, which it has committed to license on FRAND terms, (*id.* ¶ 22 (Counterclaims)); (3) Ericsson expressly asked HTC for a cross-license to those SEPs, but HTC refused (*id.* ¶ 54); (4) HTC's refusal constitutes a breach of its FRAND commitment to ETSI, (*id.*); and (5) as a result, Ericsson is exposed to potential patent infringement claims and has expended time and resources in negotiating for a cross-license. (*Id.* ¶ 57.) Ericsson supports each of these contentions with factual allegations regarding the parties' respective products and patents, the parties' commitments to ETSI, and the parties' negotiations for a license. (*Id.* ¶¶ 10–43.) In particular, Ericsson alleges that during the course of negotiations, it incurred "considerable expense" when it flew to Taiwan to meet with HTC on at least three occasions and furnished HTC with factual information regarding the basis of its offers as it "was under the impression that HTC was likewise working to arrive at the terms of a FRAND license." (*Id.* ¶¶ 38, 40–41, 43.)

These facts, taken together, plausibly suggest that Ericsson is a third-party beneficiary of HTC's contract with ETSI and has suffered an injury-in-fact as a result of HTC's alleged breach. *Cf. Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings, Ltd.*, No. 15-634, 2017 WL 750700, at *3–4 (D. Del. Feb. 27, 2017) (dismissing breach of FRAND counterclaim for lack of standing where allegations "discuss[ed] the basis for the purported breach without identifying the specific harm caused by that breach"). Moreover, Ericsson has sufficiently plead the redressability

of its purported harm. For example, in addition to seeking a declaration that HTC has failed to reciprocate and offer a FRAND license to its SEPs, Ericsson also seeks monetary damages to compensate for the time and resources spent negotiating with HTC. (Dkt. No. 156 ¶ 70 (Counterclaims); *id.* at 40–41 (Prayer for Relief).)

### C. Counterclaim III

In Counterclaim III, Ericsson alleges that HTC breached its obligation to negotiate in good faith for a cross-license on FRAND terms. (Dkt. No. 156 ¶¶ 59–65 (Counterclaims).) HTC allegedly "made no effort to close a deal with Ericsson" and its "representations [during the parties' negotiations] were all pretext as it prepared to file a lawsuit against Ericsson." (*Id.* ¶ 61.) This breach has allegedly "injured [Ericsson] in its business or property," "deprived Ericsson of royalties," "resulted in substantial commercial benefit to HTC," and "has wasted the time of Ericsson employees who traveled across the world to negotiate with HTC in good faith at considerable expense to Ericsson." (*Id.* ¶ 64.)

HTC moves to dismiss Counterclaim III for failure to state a claim. HTC submits that, based on filings in a prior lawsuit, Ericsson admits that its counterclaim is a French tort. (Dkt. No. 105 at 13 (attaching excerpts from an Amended Opening Expert Report filed by Ericsson in another litigation which stated that "[u]nder French law, liability for a failure to negotiate in good faith is pre-contractual and therefore based upon tort law").) HTC argues that as a matter of law, Ericsson cannot pursue its French tort law claim in this District. "Texas choice of law principles determine the applicable substantive tort law by looking to the law of the state with the 'most significant relationship to the occurrence and the parties,'" and since Ericsson's counterclaim rests on parties and actions based in Taiwan, Sweden, Washington, and Texas, HTC argues that "Ericsson's court filings make clear that . . . French law does not apply." (*Id.* at 13–14.)

11

Ericsson argues that HTC improperly relies on materials outside the pleadings and that its motion should be denied on that basis alone. (Dkt. No. 117 at 13.) Ericsson further argues that "HTC incorrectly portrays [its] claim as based in tort, not contract" as it is clear that the FRAND commitment is governed by French law and "creates a contractual obligation for patent owners and third-party beneficiary implementers to negotiate in good faith." (*Id.* at 12–13.) Ericsson explains that HTC itself made this point in its claim against Ericsson for breach of implied covenant of good faith and faith dealing, in which it alleges that ETSI requires "license negotiations [to] be conducted 'bilaterally in a friendly manner.'" (*Id.* at 14) (internal citation omitted.)

The Court finds that Counterclaim III does not fail as a matter of law. As an initial matter, HTC's main argument—that Ericson's counterclaim is based on French tort law—is entirely premised on materials outside the pleadings. "It is well known that when 'matters outside the pleading' are presented with a motion to dismiss under 12(b)(6), a district court has complete discretion to either accept or exclude the evidence." *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. Appx. 775, 783 (5th Cir. 2007) (internal citation omitted); *see also* Fed. R. Civ. P. 12(d). The Court declines to consider those materials as it finds that Ericsson has plead sufficient facts to survive scrutiny at the motion to dismiss stage. Ericsson alleges, in part, that (1) HTC owns SEPs related to the 2G, 3G, and 4G standards and has committed to ETSI to provide licenses to those patents on FRAND terms, (Dkt. No. 156 ¶ 22 (Counterclaims)); (2) the ETSI policies are governed by French law, (*id.* ¶ 28); (3) the FRAND commitment requires that good faith negotiations be conducted bilaterally, (*id.* 122–23 (Answer) (affirming HTC's allegations)); (4) HTC's failure to accept Ericsson's offer for a cross-license and initiate the instant suit demonstrate it never intended to honor its FRAND obligations, (*id.* ¶ 42 (Counterclaims)); (5) this

constitutes a breach of HTC's obligation to negotiate in good faith, (*id.* ¶ 62); and (6) this breach has harmed Ericsson in various ways. (*Id.* ¶ 64 (listing purported injuries).) Moreover, to the extent the parties dispute the scope of French law as it relates to Ericsson's counterclaims, that issue is more appropriately resolved on a motion pursuant to Federal Rule of Civil Procedure 44.1.

### D. Counterclaim IV

In Counterclaim IV, Ericsson seeks a declaratory judgment that "HTC has rejected, repudiated, and/or forfeited any rights associated with Ericsson's FRAND declarations and is an unwilling negotiating partner." (Dkt. No. 156 (Counterclaim IV).)

HTC argues this counterclaim should be dismissed because it parrots Ericsson's defenses and HTC's affirmative claims and "has no practical effect with respect to this litigation." (Dkt. No. 105 at 10–11; Dkt. No. 119 at 4.) HTC also argues that Ericsson is seeking an improper advisory opinion because it "does not seek any real relief from the Court," such as for example, a determination of royalties due if HTC is found to have repudiated its rights. (Dkt. No. 119 at 4–5.) Finally, HTC argues that Ericsson has failed to state a claim for relief. HTC explains that by asking the Court to calculate a FRAND royalty rate and agreeing to be bound by that calculation, it has invoked its rights to a FRAND license, not repudiated them. (*Id.* at 5) (relying on *Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993 (W.D. Wash. 2012).)

Ericsson responds that resolution of HTC's claims will not necessarily resolve its counterclaim. (Dkt. No. 117 at 16.) "If the Court finds that Ericsson's offer was FRAND when adjudicating HTC's affirmative claim, for example, it would not necessarily reach the question of repudiation, which turns on HTC's conduct during negotiations." (*Id.*) Ericsson also argues that unlike its defenses, its counterclaim will afford it affirmative relief—*i.e.*, a declaration that HTC has forfeited its rights to a FRAND license to Ericsson's SEPs—and "[w]ith a declaration that

13

HTC has forfeited those rights, Ericsson could seek royalties from HTC that are untethered to Ericsson's FRAND commitment." (*Id.* at 16–17.)

As with Counterclaim I, the Court has subject matter jurisdiction over this claim. Ericsson requests a declaration that HTC has forfeited its right to a FRAND license "by refusing to undertake good-faith negotiations; rejecting Ericsson's FRAND offer; failing to offer Ericsson a reciprocal license to HTC's essential patents; bringing this lawsuit at the inception of the parties' negotiations without warning or justification; and making a demonstrably non-FRAND counteroffer." (Dkt. No. 156 ¶ 69 (Counterclaims).) Those facts, taken as true and viewed in favor of the non-movant, sufficiently demonstrate a real and immediate controversy regarding Ericsson's obligation to offer a FRAND license to HTC. *See Huawei*, No. 2:16-cv-00715, Dkt. No. 35 at 2; *PanOptis*, 2017 WL 780885, at *6.

The Court also finds dismissal is not warranted because Ericsson's counterclaim "will serve a useful purpose in clarifying and settling the legal relations in issue." *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016) (explaining when a court, in its discretion, should deny a declaratory judgment claim) (internal citation omitted). As Ericsson points out, resolving HTC's claims will not necessarily moot Ercisson's counterclaim. HTC's case centers on Ericsson's conduct, (*see*, *e.g.*, Dkt. No. 135 ¶ 115 ("Ericsson has refused to offer a FRAND/RAND royalty"), ¶ 124 ("Ericsson has acted in bad faith"),) whereas Ericsson's counterclaim focuses on HTC's conduct. (*See, e.g.*, Dkt. No. 156 ¶ 69 (HTC has forfeited its rights to a FRAND license "by refusing to undertake good-faith negotiations," among other things) (Counterclaims).) Moreover, while there is overlap between Ericsson's defenses and its counterclaim, a favorable outcome on Ericsson's counterclaim will afford it additional relief that is not available should its defenses defeat HTC's affirmative case. If HTC is found to have

14

forfeited its rights to a FRAND license, then Ericsson is not obligated to offer HTC a FRAND license to its SEPs. *See Microsoft Corp. v. Motorola, Inc.*, No. 10-1823, 2012 WL 395734, at *4 (W.D. Wash. Feb. 6, 2012) (denying motion to dismiss a request for declaration that Motorola repudiated its right to a RAND license because "if Motorola prevails on [its defenses] . . . the successful defense may not turn on whether through its actions Microsoft repudiated any rights" and "the relief sought by Motorola's declaratory judgment action differs from any relief it may obtain by merely defending against Microsoft's affirmative RAND claims").

HTC argues dismissal is appropriate nonetheless because Ericsson fails to state a plausible claim. Since HTC filed suit invoking its FRAND rights, it argues that it could not have repudiated any such rights. Whether or not HTC forfeited any rights, however, is a separate inquiry from whether Ericsson sufficiently plead its counterclaim. *Compare Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993, 1002 (W.D. Wash. 2012) (noting on summary judgment that "[i]t would be illogical . . . to deem it repudiation . . . to file a lawsuit to enforce one's rights. . .") *with Microsoft*, 2012 395734, at *4 (finding party sufficiently plead a declaratory judgment claim that another party repudiated its rights to a RAND license); *cf. Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, No. 2:14-cv-911, 2015 WL 5786501, at *5–6 (E.D. Tex. Sept. 30, 2015) (dismissing declaratory judgment claim because unlike the parties in *Microsoft*, 2012 WL 395734, "Core appears to seek a declaration that LG is a FRAND licensee (albeit an 'unwilling' licensee), which is "predicated on Core's allegation that LG has refused to negotiate such a license"). As the Court held above, Ericsson has sufficiently plead Counterclaim IV to survive scrutiny under Rule 12(b)(6).

## IV. CONCLUSION

Based on the foregoing, the Court is of the opinion that HTC's Motion to Dismiss Ericsson's Counterclaims, (Dkt. No. 105), should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 17th day of December, 2018.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE