# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| HTC CORPORATION, HTC AMERICA INC, | § § § § § § § § § § § § | CIVIL ACTION NO. 6:18-CV-00243-JRG |
| *Plaintiffs*, | | |
| v. | | |
| TELEFONAKTIEBOLAGET LM ERICSSON, ERICSSON INC, | | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs HTC Corporation and HTC America, Inc.'s (collectively "HTC") Motion to Sever, Stay, and Compel Arbitration of Defendants' Counterclaims III and IV (the "Motion"), (Dkt. No. 396), as well as Defendants' Telefonaktiebolaget LM Ericsson and Ericsson, Inc.'s (collectively "Ericsson") response thereto, (Dkt. No. 414). Having considered the Motion and related briefing, the Court is of the opinion that the Motion should be and hereby is **DENIED** for the reasons set forth herein.

## I. THE DISPUTE

On April 6, 2017, HTC sued Ericsson in the Western District of Washington, alleging that Ericsson failed to offer HTC a license to its standard-essential patents ("SEPs") on terms that were fair, reasonable, and non-discriminatory ("FRAND") in accordance with its obligations to the European Telecommunications Standards Institute ("ETSI"). (Dkt. No. 1.) HTC subsequently filed a first amended complaint on October 16, 2017, (Dkt. No. 41), and a second amended complaint on August 17, 2018, (Dkt. No. 135). In response, Ericsson filed a first amended answer

and counterclaims on June 4, 2018, (Dkt. No. 88), and a second amended answer and counterclaims on September 7, 2018, (Dkt. No. 156). HTC now moves the Court to sever, stay, and compel arbitration on Ericsson's Counterclaims III and IV. (Dkt. No. 396.) Counterclaim III alleges that HTC breached its obligation to negotiate in good faith for a license to Ericsson's SEPs and Counterclaim IV seeks a declaratory judgment that HTC has rejected, repudiated, and/or forfeited any rights associated with Ericsson's FRAND declarations and is an unwilling negotiating partner. (Dkt. No. 156 ¶¶ 59–70) (Counterclaims).)[1]

Ericsson licensed its SEPs to HTC in three prior agreements in 2003, 2008, and 2014. (Dkt. Nos. 132-2, 132–3, 132-4.) Each of those agreements contains an arbitration provision and delegates the threshold question of whether a dispute is arbitrable to the arbitrator. (Dkt. No. 220 at 19.)[2] HTC argues that Ericsson's Counterclaims III and IV are subject to arbitration pursuant to the parties' 2014 global patent license agreement (the "2014 GPLA"). (Dkt. No. 396 at 2.) The 2014 GPLA contains the following arbitration provision:

**10  GOVERNING LAW AND DISPUTES**

10.1  The validity, performance, construction and interpretation of this Agreement shall be governed by the laws of the State of New York without regard to its conflict of law provisions.

---

[1] For a more detailed discussion on the procedural history of this case, the parties' dispute, SEPs, and the FRAND commitment, see the Court's previous orders at Dkt. Nos. 220, 316, and 376.
[2] On November 7, 2018, the Court severed, stayed, and sent to arbitration for a determination of their arbitrability HTC's past refund claims in Count I as well as its anti-trust claims in Counts III and IV of its second amended complaint. (Dkt. No. 220.) In that order, the Court noted the Fifth Circuit's then-existing "wholly groundless" exception which permitted a district court to refuse to send gateway questions of arbitrability to the arbitrator if the assertion of arbitrability was "wholly groundless." *Archer and White Sales, Inc. v. Henry Schein, Inc.*, 878 F.3d 488, 492 (5th Cir. 2017). The Supreme Court has now affirmatively rejected that framework and announced that: "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, No. 17-1271, 2019 WL 122164, at *1–6 (U.S. Jan. 8, 2019).

10.2 All disputes, differences or questions arising out of or relating to the interpretation, performance, breach or termination of this Agreement, between the Parties shall be finally settled in New York, New York, under the Rules of Arbitration of the International Chamber of Commerce, by three (3) arbitrators, appointed in accordance with said Rules. The arbitration proceedings shall be conducted in the English language. The award shall be final and binding on the Parties and may be entered and enforced in any court having jurisdiction.

The Parties undertake and agree that all arbitral proceedings conducted under this Article 10 as well as any decision or award that is made or declared during the proceedings shall be kept confidential, and all information, documentation, materials in whatever form disclosed in the course of such arbitral proceeding shall be used solely for the purpose of those proceedings.

10.3 Notwithstanding the aforesaid, nothing in this Article 10 shall prevent the Parties from seeking any interim or final injunctive or equitable relief by a court of competent jurisdiction.

10.4 Notwithstanding anything to the contrary, nothing herein shall be construed as restricting or limiting either Party or its Affiliates' or any of their direct or indirect distributor's or customer's ability to immediately assert a release, license, covenant or other defense in any litigation or other proceeding against such Party or its Affiliates, or its or their products subject to the release, licenses, covenants or other rights under this Agreement, or the direct or indirect distributors or customers of such products, regardless of jurisdiction or venue.

HTC argues that "[o]n December 13, 2018, in response to HTC's motion for summary judgment on Counterclaims II-IV, Ericsson for the first time revealed the legal foundation of Counterclaims III and IV" and that "the basis for [those counter]claim[s] is that HTC filed this case in violation of 'the 2014 license agreement['s] . . . mandatory six-month standstill period to allow the parties to freely negotiate *without* the prospective of litigation.'" (Dkt. No. 396 at 1 (internal citations omitted and emphasis in original).) HTC explains that Ericsson "points to the fact that HTC filed this litigation on April 6, 2017" and that according to Ericsson, "HTC negotiated in bad faith because it violated the 2014 agreement's six-month standstill, which was set to end on June 30, 2017." (*Id.*) HTC argues that since the 2014 GPLA requires arbitration of "[a]ll disputes, differences, or questions arising out of or relating to the interpretation,

performance, breach or termination of this Agreement" and Ericsson's Counterclaims III and IV "arise from, or at the very least are related to, the 2014 agreement's 'mandatory six-month standstill period,'" such counterclaims must be severed, stayed, and sent to arbitration. (*Id.* at 3–4.)

In response, Ericsson first explains that "HTC's motion is built on the false premise that HTC did not know the basis for its arbitrability claim until Ericsson responded to HTC's summary-judgment motion on December 13." (Dkt. No. 414 at 1.) Ericsson explains that it disclosed this allegation to HTC as early as June 2018 in its FRAND contentions and several times since then during the course of discovery. (*Id.* at 1–3.) Relying on the earlier notice given to HTC, Ericsson argues that HTC has waived its right to seek arbitration.[3] Ericsson argues that "HTC invoked the judicial process by completing discovery and all pretrial proceedings on Ericsson's counterclaims, including filing two dispositive motions" and that "Ericsson would be prejudiced if HTC could now compel arbitration after Ericsson prevailed on HTC's motion to dismiss and otherwise incurred the expense of fully litigating its counterclaims." (*Id.* at 7.)

## II. DISCUSSION

Notwithstanding its position that the arbitration clause in the 2014 GPLA has not been invoked, Ericsson argues that HTC has nonetheless waived its right to arbitrate Ericsson's Counterclaims III and IV. Arbitration is a matter of contract, and like all contractual rights, the

---

[3] Ericsson also clarifies that "HTC mischaracterizes Ericsson's counterclaims as rooted in a 'breach' or 'violation' of the 2014 cross-license. The 2014 cross-license barred Ericsson—but not HTC—from suing for patent infringement for six months after its expiration. Ericsson claims that HTC violated its duty of good faith under the ETSI contract—not any duty imposed by the 2014 cross-license—by suing Ericsson for breach of FRAND. This claim arises under French law, not the parties' 2014 cross-license." (Dkt. No. 414 at 10 n.3.) Ericsson's waiver arguments are presented as an alternative defense to its initial position that the arbitration clause HTC relies on has not been properly invoked.

4

right to arbitrate is subject to waiver. *Janvey v. Alguire*, 847 F.3d 231, 243 (5th Cir. 2017) ("A party who has entered into an agreement to arbitrate must insist on this right, lest it be waived."). "[A] party waives its right to arbitrate if it (1) substantially invokes the judicial process and (2) thereby causes detriment or prejudice to the other party." *Id.* (internal citation omitted).

"A party substantially invokes the judicial process when it 'engage[s] in some overt act in court that evinces a desire to resolve the arbitration dispute through litigation.'" *Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800, 804 (5th Cir. 2017) (internal citation omitted); *see also Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999) (a waiving party "implement[s] or enforc[es] the judicial process" as to the arbitrable claims and "must do more than call upon unrelated litigation to delay an arbitration processing"). This may include a number of pre-trial activities, such as moving to dismiss, filing an answer and counterclaims, and participating in discovery. *See, e.g.*, *Janvey*, 847 F.3d at 244 (waiver found where party "moved to dismiss, filed an initial answer and amended answer, sent written discovery, and answered discovery" over the span of three years before moving to compel arbitration); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 345 (5th Cir. 2004) (waiver found where party "answered . . . counterclaims; conducted full-fledged discovery, including four depositions; amended its complaint; . . . filed the required pretrial materials with the district" as well as "two motions to compel discovery, a motion for summary judgment, and a motion *in limine*" all before its motion to compel arbitration); *but see Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) (no waiver where party "did not ask the court to make any judicial decision, for example, by requesting summary judgment" and the "district court actions . . . mainly were routine scheduling order and discovery continuances"); *Tenneco Resins, Inc. v. Davy Intern. AG*, 770 F.2d 416, 421 (5th Cir. 1985) (no waiver where party indicated desire to arbitrate in answer and engaged in minimal discovery). At

the very least, a party that seeks a decision on the merits has substantially invoked the judicial process. *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (internal citation omitted).

Prejudice refers to the "delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate the same issue." *Petroleum Pipe*, 575 F.3d at 480 (internal citations omitted). Relevant factors include, but are not limited to, "(1) whether discovery occurred relating to arbitrable claims; (2) the time and expense incurred in defending a motion for summary judgment; and (3) a party's failure to timely assert its right to arbitrate." *Id.* Whether prejudice has occurred is a matter of degree. For example, delay in seeking arbitration, without more, will generally not constitute prejudice. *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009) (internal citation omitted). However, when delay is coupled with "pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." *Id.* Similarly, engaging in discovery before seeking arbitration will not result in automatic prejudice. It will depend on the extent and nature of the discovery and whether it encompassed the arbitrable claims. *Janvey*, 847 F.3d at 244 ("Parties cannot enjoy the benefits of federal discovery, and then, after doing so, seek to enforce a decision through private resolution."); *Tenneco*, 770 F.2d at 421 ("However, when only a minimal amount of discovery has been conducted, which may also be useful for the purpose of arbitration, the court should not ordinarily infer waiver based upon prejudice. . . .").

As an initial matter, the Court, and not the arbitrator, must determine whether HTC waived its right to arbitration. Whether a party has waived arbitration is generally a question for the court and is sent to the arbitrator only if the parties "clear[ly] and unmistakabl[y] evidence" an intent for

6

such result. *Vine*, 689 Fed. Appx. At 803. This usually requires an "explicit[] mention [of] litigation-conduct waiver" in the agreement. *Id.* at 804 (refusing to interpret silence regarding waiver issue in favor of sending to the arbitrator). In this case, the 2014 GPLA makes no mention of waiver, and as such, the Court will not infer that the parties "clearly and unmistakably" intended to delegate the determination of waiver to the arbitrator. (*See generally* Dkt. No. 220 at 13–16.)

Given that the issue of waiver is properly before the Court, the Court now turns to the merits of the dispute. The Court finds that HTC has waived its right to arbitrate Ericsson's Counterclaims III and IV. There is no reasonable doubt that HTC has invoked the judicial process as to Ericsson's counterclaims. At least as early as its June 2018 FRAND contentions, Ericsson clearly disclosed to HTC its claims that HTC acted in bad faith by suing Ericsson before the expiration of the 2014 GPLA's standstill provision, thereby tying Ericsson's hands until the term of that standstill expired. (Dkt. No. 414–2 ¶ 18.) The Fifth Circuit has made it clear that "[a] party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *Forby v. One Techs., L.P.*, 909 F.3d 780, 784 (5th Cir. 2018); *see also Republic*, 383 F.3d at 345 (5th Cir. 2004) (waiver found where party "answered . . . counterclaims; conducted full-fledged discovery, including four depositions; amended its complaint; . . . filed the required pretrial materials with the district" as well as "two motions to compel discovery, a motion for summary judgment, and a motion *in limine*" all before its motion to compel arbitration). Here, the parties have completed fact and expert discovery on all claims that have not already been sent to arbitration, including discovery on Ericsson's counterclaims. (Dkt. No. 226.) HTC has also affirmatively moved for dismissal of and summary judgment on Ericsson's counterclaims. (Dkt. Nos. 105, 238.) At no point since the filing of its complaint through the course of discovery did HTC demand arbitration.

Instead, HTC waited to move for arbitration until after the completion of all pretrial proceedings and only weeks before trial.

HTC argues that it has timely moved for arbitration because Ericsson first disclosed that the 2014 GPLA formed the basis of its counterclaims when it responded to HTC's motion for summary judgment. The Court does not find HTC's explanation credible in light of the record evidence in this case. Ericsson has identified for the Court at least six instances since June 2018 in which it has affirmatively disclosed to HTC that its counterclaims were premised, in part, on the 2014 GPLA standstill provision:

- On June 4, 2018, Ericsson filed its first amended answer and counterclaims. In Counterclaim III, Ericsson alleges, in part, that: "HTC has failed to negotiate in good faith with Ericsson. For example, HTC brought this lawsuit when Ericsson was committed to concluding a license without litigation." (Dkt. No. 88 ¶ 61 (Counterclaim III).)

- On June 14, 2018, Ericsson served its FRAND contentions, in which it alleged, in part, that: "HTC, on the one hand, did not negotiate in good faith. . . . and engaged in blatant forum shopping and litigation gamesmanship by suing Ericsson in April 2017, even though the parties' previous agreement prevented Ericsson from suing HTC until July 2017." (Dkt. No. 414–2 ¶ 18.)

- On August 16, 2018, Ericsson served its responses and objections to HTC's second set of interrogatories (Nos. 2–17). Interrogatory No. 3 asked Ericsson to identify the bases of its allegation that HTC failed to negotiate in good faith. Ericsson responded, in part, that: "In April 2017, however, only a week after that meeting, HTC sued Ericsson with no warning whatsoever, asserting baseless allegations that Ericsson had breached its FRAND obligations. HTC falsely claimed that it was suffering from a lack of 'patent protection' and threat of patent infringement litigation, when in fact Ericsson had agreed not to sue until July 2017. HTC's decision to surprise Ericsson with a lawsuit when Ericsson was continuing to negotiate in good faith was blatant forum-shopping and litigation gamesmanship, and yet another indicator that HTC was not negotiating in good faith." (Dkt. No. 414–3 at 6–7.)

- On October 3, 2018 and October 4, 2018, HTC deposed Patricio Delgado-Velaco, Ericsson's Vice President of FRAND Compliance, and Robert Earle, Ericsson's Rule 30(b)(6) witness, respectively, in which both witnesses testified that Ericsson's counterclaims were based in part on HTC's decision to file suit prior to the expiration of the standstill provision in the 2014 GPLA. (Dkt. No. 414–4 at 277:11–18; Dkt. No. 414–5 at 265:9–266:8.)

- On October 11, 2018, Ericsson served the opening expert report of Dr. Bertram Huber, who states that: "It appears that HTC's negotiation practices were not consistent with these principles of good faith bilateral negotiations. For example, HTC's decision to sue during a standstill period . . . is indicative of a lack of good faith attitude to negotiate towards a FRAND license agreement." (Dkt. No. 414–6 ¶ 116.)

In light of this record, the Court finds that HTC had knowledge of Ericsson's assertions, but did not timely assert its right to arbitration. Instead, HTC chose to assert arbitration only after it had substantially invoked the judicial process for several months and on the eve of trial. Since HTC failed to timely asserts it demand for arbitration, the Court finds that sending the counterclaims to arbitration now would unfairly prejudice Ericsson.[4] The parties and the Court have expended significant resources and time briefing and ruling on the issues in this case as well as preparing for the jury trial that is set in a few short weeks. As with HTC's previous motion to stay the trial date, (Dkt. No. 355), the intentionally delayed timing of the current Motion appears to be a calculated litigation tactic, of which the Court takes due notice.

### III. CONCLUSION

Accordingly, the Court finds that HTC has waived its right to arbitrate Ericsson's Counterclaims III and IV and hereby **DENIES** HTC's Motion to Sever, Stay, and Compel Arbitration of Defendants' Counterclaims III and IV, (Dkt. No. 396).

**So ORDERED and SIGNED this 22nd day of January, 2019.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[4] HTC waited to raise the issue of arbitration after the Court denied its motion to dismiss and after briefing on its motion for summary judgment was completed as to these counterclaims. To send these counterclaims to arbitration now would unfairly give HTC two bites at the apple, materially prejudicing Ericsson.