## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| HTC CORPORATION, HTC AMERICA INC, | § § § | |
| | § | CIVIL ACTION NO.  6:18-CV-00243-JRG |
| *Plaintiffs*, | § § | |
| | § | |
| v. | § § | |
| | § | |
| TELEFONAKTIEBOLAGET LM ERICSSON, ERICSSON INC, | § § § | |
| *Defendants*. | | |

### ORDER ON PRETRIAL MOTIONS

The Court held a Pretrial Conference in the above-captioned matter on January 18, 2019 regarding pretrial motions filed by Plaintiffs HTC Corporation and HTC America, Inc. (collectively "HTC") and Defendants Telefonaktiebolaget LM Ericsson and Ericsson, Inc. (collectively "Ericsson").  (Dkt. Nos. 424, 426, 427.)  This Order summarizes and memorializes the Court's rulings and reasons thereof on the aforementioned motions as announced into the record, including additional instructions that were given to the parties.   While this Order summarizes the Court's rulings during the pretrial hearing, this Order in no way limits or constrains such rulings from the bench.  Accordingly, it is hereby **ORDERED** as follows:

1. HTC's Motion for Partial Summary Judgment Based on Collateral Estoppel, (Dkt. No. 111)

   This motion is **DENIED**.  (Dkt. No. 426 at 8–10.)

2. Ericsson's Motion to Supplement the Record on HTC's Partial Motion for Summary Judgment Based on Collateral Estoppel, (Dkt. No. 137)

   This motion is **DENIED AS MOOT**.  (Dkt. No. 426 at 11–14.)

1

3. HTC's Motion for Partial Summary Judgment on HTC's Count I and Summary Judgment on Ericsson's Counterclaim I, (Dkt. No. 237)

This motion is **DENIED**.  (Dkt. No. 426 at 40:21–41:3.)

4. HTC's Motion for Summary Judgment on Ericsson's Counterclaims II–IV, (Dkt. No. 238)

This motion is **DENIED AS MOOT** as to Counterclaim II.  (Dkt. No. 357 at 1 (explaining that Ericsson has withdrawn its Counterclaim II).)  This motion is **DENIED** as to Counterclaims III and IV.  (Dkt. No. 426 at 53:23–54:12.)

5. Ericsson's Motion for Summary Judgment, (Dkt. No. 245)

This motion is **DENIED-IN-PART** and **GRANTED-IN-PART**.  The Court **DENIES** Ericsson's motion to dismiss HTC's claim that Ericsson breached the Letters of Assurance ("LOAs") that it submitted to the Institute of Electrical and Electronic Engineers ("IEEE") because there is no case or controversy between the parties.  The Court **DENIES** Ericsson's motion for summary judgment that Ericsson breached the LOAs that it submitted to the IEEE because HTC failed to present any evidence of breach.  The Court **GRANTS** Ericsson's motion for summary judgment that Ericsson's base station sales did not exhaust its standard-essential patents as to HTC's handsets or otherwise grant an implied license to HTC for its standard-essential patents. (Dkt. No. 427 at 24:3–25:5.)

The Court further stated that since the claims in this case concerned both the European Telecommunications Standards Institute ("ETSI") and the Institute of Electrical and Electronic Engineers ("IEEE") and given the "disparity between [the] policies and responsibilities flowing from [both] ETSI and IEEE," "there may need to be an applicable instruction to the jury from the Court early on in the case about those . . . difference[s]."  Accordingly, the Court "invite[d] any offered submissions from either side before the Court gives its preliminary instructions to the jury." (Dkt. No. 427 at 25:6–17.)

6. Ericsson's Motion to Exclude Expert Opinions Seeking to Construe the Terms of a 1994 Contract Based on Present-Day Economic Policy Arguments, (Dkt. No. 263)

This motion is **DENIED**.  (Dkt. No. 426 at 80:8–18.)  At the pretrial conference, HTC confirmed that its expert, Dr. Fiona Scott-Morton, will not discuss anything contained in paragraphs 92 and 162–167 of her opening expert report at trial.  (*Id.* at 72:23–73:6; *see also* Dkt. No. 293 at 6 n.2.)

The Court provided the parties with further instructions regarding the meaning and application of ETSI's intellectual property rights ("IPR") policy that licenses for standard-essential patents ("SEPs") be offered on terms that are fair, reasonable, and non-discriminatory ("FRAND"). (*Id.* at 80:19–82:23.)  The Court held that under "either ETSI's intent or a reasonable person's standard, a standard essential patent-holder makes a commitment to license its patents on FRAND terms at the time of contract formation."  (*Id.* at 81:22–25.)  Moreover, the Court clarified that "any discernible intent of ETSI in 1994 is reflected in its affirmative representation that a basic principle of the ETSI IPR regime . . . remains [to be] FRAND with no specific preference for any licensing model."  (*Id.* at 81:16–21.)  This means that a *past* license entered into between two parties pursuant to a FRAND commitment that was deemed FRAND *at that prior point in time* will be presumed to be a FRAND license even if that same license may not be considered FRAND if the parties were to enter into that license *today*—either because of changed circumstances, economic realities, or other factors.  (*Id.* at 81:1–6.)

In light of the foregoing, the Court stated that it would be improper and impermissible for either party to discredit a prior FRAND license as non-FRAND based on current economic principles and hindsight bias.  (*Id.* at 80:19–24; 81:7–12.)  The Court clarified, however, that this does not prevent either party from providing contemporary opinions and current economic theories

3

to argue what a FRAND license would be today.  (*Id.*)   Similarly, a past FRAND license is not necessarily dispositive as to what a contemporary FRAND license would be.  (*Id.*)

The Court also instructed the parties that it would be improper and impermissible for either party's experts to opine that the FRAND commitment in ETSI's IPR policy requires a particular rate or that a particular methodology must be used.  (*Id.* at 82:9–23.)  Instead, such experts must preface their opinions in such a way that it is clear that they are giving their opinion that a particular rate or methodology does or does result in a FRAND license.  (*Id.*)

7. HTC's Motion to Exclude Certain Testimony of Dr. Bertram Huber on the Value of Cellular Connectivity and Legal Obligations Under the ETSI IPR Policy, (Dkt. No. 255)

This motion was **WITHDRAWN**.  (Dkt. No. 426 at 83:23–84:3.)

8. HTC's Motion to Strike, or in the Alternative Exclude, Testimony Relied Upon by Dr. Bertram Huber, (Dkt. No. 257)

This motion is **GRANTED-AS-MODIFIED**.  It is **ORDERED** that Dr. Bertram Huber shall be precluded from offering any improper legal conclusions at trial, including, but not limited to, those opinions that are inconsistent with the clear legal guidance given by this Court.  (Dkt. No. 426 at 90:3–7.)   It is further **ORDERED** that the following portions of Dr. Bertram Huber's Rebuttal Expert Report are hereby **STRICKEN** as offering improper legal opinions:

- Paragraph 27 in its entirety;

- The following sentences in Paragraph 87:

    o "Licensing at the SSPPU level, as defined by HTC, appears to rely on a U.S. patent law concept for damages. In addition to not being required by the ETSI IPR Policy, it is also not how patent damages are generally calculated in other countries around the world—including civil law countries such as Germany. This is supported by Dr. Kesan's report, which includes a survey confirming this point."

- The Rebuttal Expert Declaration of Jean-Sebastien Borghetti attached as Exhibit B in its entirety;

4

- The following paragraphs in the Rebuttal Expert Declaration of Dr. Jay Kesan attached as Exhibit C: 5–8, 13–14, 24–25, 27–37, 47, and 49–82.

9. Ericsson's Motion to Exclude Expert Opinions of Dr. Kakaes and Dr. Wolfe, (Dkt. No. 262)

   This motion is **DENIED**.  (Dkt. No. 426 at 105:8–14.)

10. Ericsson's Motion to Exclude Expert Opinions of Drs. Perryman & Lynde Related to the Top-Down SSPPU Approach, (Dkt. No. 260)

    This motion is **DENIED-IN-PART** and **GRANTED-IN-PART**. (Dkt. No. 426 at 116:11–117:2.)  The Court **DENIES** Ericsson's motion to exclude the expert opinions of Drs. M. Ray Perryman & Matthew Lynde related to the top-down SSPPU approach insofar as those experts apply such an approach in forming their opinions.  The Court **GRANTS** Ericsson's motion to exclude the expert opinions of Drs. M. Ray Perryman & Matthew Lynde related to the top-down SSPPU approach insofar as those experts provide improper legal opinions.  Accordingly, it is **ORDERED** that the following portions of Dr. Matthew Lynde's Opening Expert Report and Dr. M. Ray Perryman's Opening Expert Report are hereby **STRICKEN** as improper legal opinions:

- The following portions in Dr. Matthew Lynde's Opening Expert Report:

  o Paragraph 43:

    ▪ "Patent damages case law has addressed the problem of finding an objective approach to the apportionment of value to a small component of a complex device by going to the market value of the "Smallest Saleable Patent Practicing Unit" or "SSPPU" or "SSU" as an initial royalty basis and therefore benchmark of value. . . . The SSU approach has also been applied in cases involving SEPs, such as the *Innovatio* case, where a further sub-SSU apportionment was made to account for the value of other patents in the relevant standard, apart from the patents-in-suit or the standard itself."

  o Paragraph 45:

    ▪ ". . . I understand that in such a circumstance, the Courts require further apportionment within the SSU in order to avoid compensating the SEP holder for these non-patented aspects of the SSU. . . ."

5

- o Paragraph 46:

    - ▪ "*Given the Courts' recognition that the SSU is an appropriate royalty base*, it is necessary to determine the maximum aggregate royalty that would be payable to all the SEP holders in the standard. . . ."

- The following portions in Dr. M. Ray Perryman's Opening Expert Report:

    - o Paragraph 114 in its entirety;

    - o Paragraph 116 in its entirety;

    - o Paragraph 117:

        - ▪ "*Given the court rulings in these cases*, it is apparent that the most appropriate method of attaining the incremental value of the patents in most cases is to rely on the smallest saleable patent practicing unit as the royalty base when determining an appropriate FRAND royalty. . . ."

    - o Paragraph 154:

        - ▪ "As mentioned above, in *Ericsson v. D-Link*, the court stated that "[w]hen the accused infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by such features. "The court goes on to say that "a jury must ultimately 'apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features.'" When the "entire value of a machine" is not solely attributable to the patented technology, then "courts must insist on a more realistic starting point for the royalty calculations by juries – often, the smallest saleable unit and, at times, even less."

11. Ericsson's Motion to Strike HTC's "Supplemental" Expert Reports Served in Violation of the Court's Docket Control Order, (Dkt. No. 251)

This motion is **GRANTED**. (Dkt. No. 426 at 126:1–127:11.) It is **ORDERED** that the following supplemental expert reports are hereby **STRICKEN** to the extent described herein:

- November 18, 2018 Dr. Perryman Supplemental Expert Report in its entirety;

- November 18, 2018 Dr. Lynde Supplemental Report in its entirety, except for the portions in which he corrects mathematical errors at paragraphs 11–14 and in Updated Schedules 4, 4A, 4B, 4C, 5I, 5I1, 5J, 5J1;

- November 24, 2018 Dr. Scott-Morton Supplemental Report in its entirety.

12. Ericsson's Motion to Exclude Theoretical Opinions Related to Hold-Up, (Dkt. No. 259)

This motion is **GRANTED**.  (Dkt. No. 426 at 136:3–137:2.)  It is **ORDERED** that the following portions of the following expert reports are hereby **STRICKEN**:

- Dr. Perryman Opening Expert Report: ¶¶ 26–31, 93–100, 195–96, 200;

- Dr. Perryman Supplemental Expert Report: ¶¶ 4–9;

- Dr. Lynde Opening Expert Report: ¶¶ 27, 30–33, 43;

- Dr. Simcoe Opening Expert Report: ¶¶ 22, 35, 38, 47, 55;

- Dr. Simcoe Rebuttal Expert Report: ¶¶ 47–52, 58–68;

- Dr. Scott-Morton Opening Expert Report: ¶¶ 56–60, 87–95, 104–06, 112–13;

- Dr. Scott-Morton Rebuttal Expert Report: ¶¶ 15–19, 26–27; and

- Dr. Scott-Morton Supplemental Expert Report:  ¶¶ 15–20, 26.

13. Ericsson's Motion to Exclude Theoretical Opinions Related to Royalty Stacking, (Dkt. No. 261)

This motion is **GRANTED**.  (Dkt. No. 426 at 147:14–17.)   It is **ORDERED** that the following portions of the following expert reports are hereby **STRICKEN**:

- Dr. Perryman Opening Expert Report: ¶¶ 34–36, 143
- Dr. Lynde Opening Expert Report: ¶¶ 28–33;
- Dr. Simcoe Opening Expert Report: ¶¶ 23–28, 70–73;
- Dr. Simcoe Rebuttal Expert Report: ¶¶ 47–49;
- Dr. Scott-Morton Opening Expert Report: ¶¶ 106, 112–14;
- Dr. Scott-Morton Rebuttal Expert Report: ¶¶ 21–22; and
- Dr. Scott-Morton Supplemental Expert Report: ¶ 48.

14. HTC's Motion to Exclude Expert Testimony of Dr. David Cooper Regarding Essentiality, (Dkt. No. 254)

This motion is **DENIED**.  (Dkt. No. 426 at 157:4–8.)

7

15. HTC's Motion to Strike Expert Testimony of Ericsson Employees Dr. Parkvall and Mr. Cason, (Dkt. No. 258)

This motion is **DENIED**.  (Dkt. No. 426 at 164:9–13.)

16. HTC's Motion to Exclude Robert Mills Expert Testimony Regarding the Value of Cellular Connectivity, (Dkt. No. 256)

This motion is **DENIED**.  (Dkt. No. 426 at 172:22–25.)

17. Ericsson's Motion to Strike HTC Expert Opinions Relating to the Burden of Proof and Claims Severed and Stayed by the Court, (Dkt. No. 252)

This motion is **GRANTED-IN-PART and DENIED-IN-PART**.  (Dkt. No. 426 at 190:15–195:14.)  Ericsson moved to strike the opinions of Drs. Simcoe, Scott-Morton, Lynde, Stoffel-Munck, and Perryman regarding (1) the burden of proof, (2) HTC's antitrust claims that have been severed, stayed, and sent to arbitration, and (3) HTC's claims for past royalties that have been severed, stayed, and sent to arbitration.  (Dkt. No. 252 at 3.)

With respect to opinions regarding the burden of proof, the Court **GRANTS** Ericsson's motion to the extent described herein.  (Dkt. No. 426 at 190:15–20; 191:18–192:10.)  In lieu of striking the paragraphs that Ericsson has requested, the Court instructed the parties as follows: (1) it is improper for an expert for either party to provide legal opinions on the burden of proof; and (2) the parties may attempt to elicit factual testimony regarding any alleged disparity in the experience or savviness in bargaining between the parties during negotiations.  (*Id.*)

With respect to opinions regarding HTC's severed antitrust claims, the Court **GRANTS** Ericsson's motion.  (Dkt. No. 426 at 192:11–25.)  It is therefore **ORDERED** that the following portions of the following expert reports are hereby **STRICKEN**:

- Dr. Simcoe Opening Expert Report: ¶¶ 83–96;

- Dr. Simcoe Rebuttal Expert Report: ¶¶ 10–15, 51; and

8

- Dr. Scott-Morton Opening Expert Report: ¶¶ 7–8, 24–27, 36–72, 86, 148–241, 242–281.

Finally, with respect to opinions regarding HTC's severed claims for past royalties, the Court **DENIES** Ericsson's motion to the extent described herein.  (Dkt. No. 426 at 193:1–195:14.)   The Court instructed that neither party shall be permitted to mention, discuss, or reference before the jury without prior leave of the Court: (1) the fact that HTC's antitrust claims and claims for past royalties have been severed, stayed, and sent to arbitration; (2) the arbitration of those severed claims; or (3) any other litigations involving those severed claims, or any other claims that are not at issue for the jury.  The Court stated that if either party believes it is necessary to discuss the aforementioned topics at trial, then the party should approach the bench first and seek leave of the Court.  Thus, while the Court is not strictly prohibiting the parties from discussing the aforementioned topics before the jury, out of an abundance of caution and in the exercise of the Court's gatekeeping role, if either party, "through its witnesses or otherwise, desires to go into, for purposes of a FRAND argument, aspects of what [has] been severed and sent to arbitration, then [the party] need[s] to approach the bench" and seek leave of the Court.  (*Id.* at 194:22–195:3.)

**So ORDERED and SIGNED this 25th day of January, 2019.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

9