**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **HTC CORPORATION, HTC AMERICA INC,** | § | |
| | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | **CIVIL ACTION NO.  6:18-CV-00243-JRG** |
| **v.** | § | |
| | § | |
| **TELEFONAKTIEBOLAGET LM ERICSSON, ERICSSON INC,** | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

**<u>MEMORANDUM OPINION AND FINAL JUDGMENT</u>**

Before the Court is Defendants Telefonaktiebolaget LM Ericsson and Ericsson Inc.'s (collectively, "Ericsson") Motion for Injunction Binding HTC to the FRAND Determination (Dkt. No. 493) and Motion for Entry of Final and Declaratory Judgment Consistent with Jury Verdict (Dkt. No. 494).  Also before the Court is HTC Corporation and HTC America Inc.'s (collectively, "HTC") Brief on Affirmative Defenses Related to the Jury's Finding of Breach of the Duty of Good Faith (Dkt. No. 497), Motion on Alternative Request for Declaratory and Equitable Relief (Dkt. No. 496), and Motion for Entry of Judgment (Dkt. No. 495).  The Court **GRANTS-IN-PART** and **DENIES-IN-PART** the relief requested in the aforementioned motions and **ENTERS FINAL JUDGMENT** in the above-captioned case, to the extent and as particularly described and set forth herein.[1]

---

[1] All pin citations to a docket entry refer to the number listed at the bottom of the page of the document, and not to the ECF number.

## I.   BACKGROUND[2]

### A.  Procedural History

HTC sued Ericsson in the Western District of Washington on April 6, 2017.  (Dkt. No. 1.)

The case was subsequently transferred to this District on June 1, 2018.  (Dkt. No. 87.)  In its Second

Amended Complaint, HTC asserted four causes of action:

1.  Count I: Breach of contract;

2.  Count II: Implied covenant of good faith and fair dealing;

3.  Count III: Illegal restraint of trade under 15 U.S.C. § 1; and

4.  Count IV: Monopolization under 15 U.S.C. § 2.

(Dkt. No. 135.)  Pursuant to Counts I and II, HTC alleged that Ericsson violated its obligations to

the European Telecommunications Standards Institute ("ETSI") by failing to offer HTC a forward-

looking license to Ericsson's standard-essential patents ("SEPs") on terms and conditions that were

fair, reasonable and non-discriminatory ("FRAND"), and that Ericsson had failed to negotiate for

such a license in good faith.  (*Id.* ¶¶ 109–125.)  Under Count I, HTC further alleged that Ericsson

had previously failed to offer a FRAND license under the parties' prior license agreements in 2003,

2008, and 2014.  (*Id.* ¶ 119.)  Counts III and IV raised antitrust allegations.

In its Prayer for Relief, HTC sought the following remedies:

1.  A declaration "that Ericsson is liable for breach of contract and violations of the Sherman Act;"

2.  A declaration "that Ericsson has not offered royalties to HTC under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination;"

---

[2] This case has its own unique history.  For purposes of this memorandum opinion and final judgment, the Court hereby incorporates by reference in totality its prior orders at Dkt. Nos. 220, 222, 316, 376, 419, 425, 429, and 447.

3. "Enjoin Ericsson from further demanding excessive royalties from HTC that are not consistent with Ericsson's FRAND obligations;"

4. A declaration "that HTC is entitled to license from Ericsson any and all patents that Ericsson deems 'essential' and/or has declared 'essential' to the Mobile Cellular and Wireless Standards under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination;"

5. A determination and declaration of "the FRAND . . . rate[] that HTC is entitled to for each of the Mobile Cellular and Wireless Standards;"

6. "Enter judgment awarding HTC a license from Ericsson to any and all patents that Ericsson deems 'essential' and/or has declared 'essential' to the Mobile Cellular Standards under the Court's determined FRAND rate . . . with reasonable terms and conditions that are demonstrably free of any unfair determination;"

7. A declaration "that Ericsson has been unjustly enriched and determine the amount that should be returned to HTC;"

8. "[J]udgment against Ericsson for the amount of damages that HTC proves at trial, including back royalties HTC has been forced to pay to Ericsson, and, as appropriate, exemplary damages;"

9. Expenses, costs, attorneys' fees as well as pre-judgment and post-judgment interest to the full extent allowed under the law.

(*Id.* at 36–37.)

The Court granted Ericsson's motion to sever, stay, and send to arbitration Counts III and IV as well as HTC's claim for back-royalties under Count I pursuant to the parties' prior license agreements (the "Severed Claims") (Dkt. No. 220), and denied HTC's motion to stay the trial date pending a decision on the arbitrability of the Severed Claims.  (Dkt. No. 419).  HTC also elected to forgo monetary damages, leaving intact its requests for equitable relief.  (Dkt. No. 466 at 5:24–6:24 (2/11/19 Trial Tr. A.M.).)

In response to HTC's Second Amended Complaint, Ericsson asserted four counterclaims:

1. Counterclaim I: Declaratory judgment that Ericsson has not breached its FRAND assurance to HTC;

2. Counterclaim II: Breach of contract;

3

3. Counterclaim III: Breach of obligation to negotiate in good faith; and

4. Counterclaim IV: Declaratory judgment that HTC has rejected, repudiated, and/or forfeited any rights associated with Ericsson's FRAND declarations and is an unwilling negotiating partner.

(Dkt. No. 156 at 33–40.)

In its Prayer for Relief, Ericsson sought the following remedies:

1. A declaration "that Ericsson complied with FRAND assurances in its negotiations with HTC;"

2. A declaration "that Ericsson has made a FRAND offer to HTC and that HTC is bound to accept Ericsson's offer.  If Ericsson has not made a FRAND offer to HTC, declare the terms and conditions that would not constitute a violation of FRAND;"

3. "An injunction requiring HTC to enter into a license with Ericsson upon the FRAND terms and conditions that Ericsson has offered to HTC, or if the Court determines the terms and conditions were not in compliance with FRAND, upon terms and conditions that would not constitute a violation of FRAND;"

4. A declaration "that HTC breached its duty to negotiate with Ericsson in good faith, and as a result, declare that HTC has repudiated, rejected, and/or forfeited its right to assert it is a third-party beneficiary of Ericsson's FRAND assurance;"

5. A declaration "that HTC failed to reciprocate by refusing to offer Ericsson a FRAND license under HTC's patents, and as a result, declare HTC to have repudiated, rejected, and/or forfeited its right to assert third-party beneficiary status with respect to Ericsson's FRAND assurance;"

6. A declaration "that HTC is an unwilling negotiating partner;"

7. "An award of the amount of damages that Ericsson proves at trial and, as appropriate, exemplary damages;" and

8. Reasonable costs and expenses.

(*Id.* at 40–41.)

Ericsson previously asserted a fifth counterclaim for breach of implied contract and unjust enrichment, but later withdrew it.  (Dkt. No. 116.)  The parties also stipulated to the dismissal of Ericsson's Counterclaim II with prejudice prior to the final pretrial hearing.  (Dkt. No. 404 at 11.)

In addition, Ericsson waived its request for monetary damages on the eve of trial (Dkt. No. 466 at 5:24–6:24 (2/11/19 Trial Tr. A.M.)), and withdrew its requested relief as to Counterclaims III and IV as a part of its post-trial briefing (Dkt. No. 507 at 1).  As to the latter, Ericsson explains that it had requested "a declaration that, through its bad faith, HTC repudiated, rejected, and/or forfeited its rights to demand a FRAND license to Ericsson's standard-essential patents," but that it "is not presently requesting such a declaration, because HTC represented to the Court it would be bound by the jury's verdict regarding breach of FRAND."  (*Id.*)

In addition to the foregoing, the Court denied HTC's Motion to Dismiss Ericsson's Counterclaims (Dkt. No. 316), Motion to Sever, Stay, and Compel Arbitration of Defendant's Counterclaims III and IV (Dkt. No. 425), Motion for Reconsideration of denial thereof (Dkt. No. 447), and Motion for Reconsideration of Motion for Summary Judgment on Counterclaims III and IV (*id.*).  HTC has pursued an interlocutory appeal of the Court's denial of its motion to compel arbitration of Ericsson's Counterclaims III and IV.  (Dkt. No. 486.)

### B.  The Jury Trial and Post-Trial Briefing

The case was tried to a jury from February 11, 2019 to February 15, 2019.  (Dkt. Nos. 450–51, 453–54, 460.)  After deliberating, the jury returned a verdict on February 15, 2019, finding that (1) HTC had not shown by a preponderance of the evidence that Ericsson breached its contractual obligation to offer HTC a license, on FRAND terms, to Ericsson's cellular SEPs; (2) that HTC had proven by a preponderance of the evidence that Ericsson had breached its duty of good faith in carrying out its contractual obligation to negotiate with HTC for a license to Ericsson's cellular SEPs; and (3) that Ericsson had proven by a preponderance of the evidence that HTC had breached its duty to negotiate with Ericsson in good faith for a license to Ericsson's cellular SEPs.  (Dkt. No. 457.)

The Court entered a Post-Verdict Docket Control Order setting the conduct of post-trial proceedings.  (Dkt. Nos. 489, 504, 517.)  In light of the jury's verdict, Ericsson now moves for (1) a declaratory judgment that it has complied with its FRAND assurance to HTC; (2) an injunction requiring HTC to enter into a license agreement at either of the rates Ericsson had previously offered HTC for a forward-looking license to Ericsson's SEPs; and (3) entry of final judgment in favor of Ericsson.  (Dkt. Nos. 493, 494.)  HTC now moves for (1) a stay of proceedings pending the arbitrability of the Severed Claims and pending a decision on its interlocutory appeal of the Court's denial of its motion to compel arbitration of Ericsson's Counterclaims III and IV; (2) dismissal of all claims for failure to state a claim for relief and lack of subject matter jurisdiction; and (3) dismissal of Ericsson's Counterclaims III and IV by reason of its affirmative defenses of waiver, condition precedent, issue preclusion, and unclean hands.  (Dkt. Nos. 496, 497.)  In the alternative to the forgoing, HTC also moves for (1) a declaratory judgment that Ericsson breached its duty to negotiate in good faith; (2) a declaratory judgment that HTC has and had no duty to respond to Ericsson's offers until Ericsson cured its breach of its duty to perform its contractual obligations; (3) equitable relief that Ericsson must perform its contractual obligations; and (4) final judgment in favor of HTC.  (Dkt. Nos. 495, 496.)

## II.   DISCUSSION

### A.  HTC's Claims

#### i.   Count I

In Count I, HTC alleged that Ericsson breached its contract with ETSI by failing to offer HTC a FRAND license to Ericsson's SEPs.  (Dkt. No. 135 ¶¶ 109–120; *see also* Dkt. No. 480 at 19:21–24 (2/21/2019 Trial Tr. (all day session)) ("HTC contends that Ericsson breached its commitment to ETSI by failing to offer to HTC a license to Ericsson's 2G, 3G, and 4G/LTE

standard essential patents on FRAND terms.").)  The jury found that HTC had failed to meet its burden on its breach of contract claim.  (Dkt. No. 457 at 2.)  Therefore, the Court finds that Ericsson is the prevailing party, and HTC is entitled to no relief on Count I.

### ii.  Count II

In Count II, HTC alleged that Ericsson breached its duty to negotiate for a license in good faith.  (Dkt. No. 135 ¶¶ 121–125; *see also* Dkt. No. 480 at 20:8–10 (2/21/2019 Trial Tr. (all day session)) ("HTC contends that Ericsson breached its duty of good faith in carrying out its contractual obligations to ETSI.").)  Since the jury found that HTC had met its burden on this claim (Dkt. No. 457 at 3), and Ericsson withdrew its affirmative defenses (Dkt. No. 535 at 31:6–33:24), HTC is the prevailing party on Count II.

In light of the jury's finding, Ericsson's withdrawal of its affirmative defenses, and HTC's waiver of monetary damages,[3] HTC requests "the Court enter judgment for HTC on Count II and include: [1] [a] declaration that Ericsson breached its duty of good faith by failing to provide factual details in support of its demands, failing to respond to the merits of HTC's proposed methodology, and using the threat of litigation; [2] [a] declaration that HTC has and had no duty to respond until Ericsson has cured its breach of the duty to perform its contractual obligations in good faith; and [3] [e]quitable relief that Ericsson must perform its contractual obligations."  (Dkt. No. 496 at 2.)

"In order to obtain a permanent injunction or declaratory relief, a party must make his request for such relief in his pleadings."  *Dillard v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 961 F.2d 1148, 1155 (5th Cir. 1992).  As this Court has previously explained, "the requirements

---

[3] Like Ericsson, HTC withdrew its requests for monetary relief on the eve of trial.  (Dkt. No. 466 at 5:24–6:24 (2/11/19 Trial Tr. A.M.).)

of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions." *Stephenson v. Caterpillar Inc.*, No. 2:16-cv-00071-JRG-RSP, 2019 WL 498337, at *2 (E.D. Tex. Feb. 8, 2019), *report and recommendation adopted*, No. 2:16-cv-00071-JRG-RSP, Dkt. No. 428 (Feb. 28, 2009).  The Federal Rules of Civil Procedure provide that "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alterative or different types of relief."  Fed. R. Civ. P. 8(a).  HTC did not bring any actions for a declaratory judgment, and the only equitable relief which it sought relates to the breach of FRAND claim under Count I.  (Dkt. No. 135 at 36–37.)  Nowhere did HTC specifically plead for a declaratory judgment or injunction in connection with its claim that Ericsson breached the implied covenant of good faith and fair dealing.  (*See generally* Dkt. No. 135.)  Accordingly, HTC is not entitled to any relief for Count II.  *See, e.g.*, *Stephenson*, 2019 WL 498337, at *2 (denying motion for declaratory judgment because "Caterpillar did not plead a claim for declaratory judgment relief against Sears in its latest crossclaim," thereby rending "motion for declaratory judgment under the TDJA and the FDJA . . . procedurally defective"); *Matrix Partners VIII, LLP v. Natural Resource Recovery, Inc.*, No. 1:08-cv-00547-TH, 2009 WL 10677790, at *2 (E.D. Tex. May 22, 2009) (denying petition for declaratory judgment as "procedurally defective" because plaintiff filed a motion for declaratory relief, rather than pleading it as an action in the complaint).

### B.  Ericsson's Counterclaims

#### i.  Counterclaim I

##### 1.  Declaratory Judgment

In Counterclaim I, Ericsson seeks a declaratory judgment that it has not breached its FRAND assurance to HTC.  (Dkt. No. 156 ¶¶ 44–49.)  "Specifically, Ericsson requests that the Court issue a declaration that the terms Ericsson offered to HTC for a license to its cellular

standard-essential patents complied with FRAND." (Dkt. No. 494 at 1.) Ericsson submits that the Court should enter such a declaration for three reasons. First, Ericsson argues that the Court has subject matter jurisdiction to issue a declaratory judgment. HTC filed this lawsuit because it alleged that Ericsson's offers were not FRAND and has maintained that position post-trial. (*Id.* at 1–2.) Ericsson explains that both parties pled and continue to seek a license on terms and conditions adjudicated to be FRAND. (*Id.* at 2.) Ericsson contends that the parties' dispute over whether its offers were FRAND is a real and immediate controversy that is ripe for a declaratory judgment. (*Id.* at 3.) Second, Ericsson argues that "[t]he jury found that Ericsson's offers did not violate its FRAND commitment under the ETSI IPR Policy," that substantial evidence supports the jury's verdict, and that the Court must enter a declaration accordingly. (*Id.* at 3–13.) Finally, Ericsson contends that the jury's finding that Ericsson breached its duty to negotiate in good faith is irrelevant because "[t]here are two ways to comply with FRAND: (1) make a FRAND offer, or (2) even if the offer made exceeds FRAND, negotiate in good faith towards a FRAND outcome." (*Id.* at 13.) Ericsson argues that since its offers were FRAND, it has necessarily complied with its FRAND assurance to HTC.

In response, HTC urges the Court to dismiss Counterclaim I. First, HTC argues that the claim is not justiciable because any declaration would be advisory. (Dkt. No. 495 at 6–7.) Even if the Court declared a FRAND rate as requested by Ericsson, HTC argues that "the parties would still need to hammer out a number of material terms before a contract between them could be concluded, including the term of the agreement, dispute resolution provisions, and other important commercial terms." (*Id.* at 7 n.12.) Second, HTC alleges that Ericsson has abandoned its counterclaim because it did not present it to the jury. (Dkt. No. 510 at 4–7.) Third, according to HTC, "Ericsson has repeatedly contended, both here and in *TCL*, that the ETSI obligation[]

require[s] it [to] negotiate in good faith" and that "under Ericsson's view, the jury's verdict that Ericsson breached its good faith duties . . . shows [that] Ericsson breached its ETSI contracts, precluding the requested relief."  (*Id.* at 7.)  Finally, HTC argues that even if the Court considers Counterclaim I, the jury's verdict only confirms that HTC failed to carry its burden to prove its breach of contract claim.  All of the evidence, "including evidence excluded from trial under Rule 403," demonstrates that Ericsson has failed to meet its burden that it has complied with its FRAND obligations.  (*Id.* at 8–14.)

As an initial matter, the Court finds that it has subject matter jurisdiction to declare a FRAND rate.  Both HTC and Ericsson have sought declarations of whether Ericsson's offers were FRAND and, if not, a declaration of a FRAND rate.  (Dkt. No. 135 at 36; Dkt. No. 156 at 40.) HTC has repeatedly stated that it agrees to be bound by the Court's FRAND determination.  (Dkt. Nos. 1, 41, 119 at 3, 135.)  In fact, the principal dispute between the parties throughout the entire lawsuit, including at trial and in post-trial briefing, has been whether Ericsson's offers were FRAND.  As a result, there is a real and immediate controversy to support a declaration and its issuance would resolve a major issue in the parties' licensing dispute.  28 U.S.C. § 2201; *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27, 136 (2007) (holding that the Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants"); *Harris v. United States Fid. & Guar. Co.*, 569 F.2d 850, 852 (5th Cir. 1978) ("It is well settled that a district court may render a declaratory judgment though that judgment will not settle all the issues of the entire controversy. The controversy settled by the declaratory judgment need only be an autonomous dispute."). Accordingly, the Court declines to dismiss Counterclaim I for lack of justiciability.

HTC's other concerns similarly lack merit.  Ericsson properly pleaded Counterclaim I in its Answer and did not abandon it at trial.  HTC argues that Counterclaim I needed to be presented to the jury, but a declaratory judgment is a question for the Court, not the jury.  *See* 28 US.C. § 2201 ("In case of actual controversy within its jurisdiction . . . any *court* of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.") (emphasis added).  HTC claims that Ericsson abandoned its counterclaim because it omitted such reference from the parties' proposed pretrial order.  However, as Ericsson points out, Ericsson did raise its request for a declaration and injunction for a FRAND rate in the final pretrial order.  (*See* Dkt. No. 404 at 10 ("Ericsson is entitled to an injunction requiring HTC to enter into a license . . . with Ericsson upon the FRAND terms and conditions that Ericsson has offered to HTC. . . .").) HTC further contends that Ericsson is not entitled to a declaration because Ericsson had the burden to show compliance with FRAND and failed to do so.  (Dkt. No. 529 at 2–4.)  However, it is well-settled that "the operation of the Declaratory Judgment Act [is] to be only procedural, leaving substantive rights unchanged" and that "the burden of proof is a substantive aspect of a claim." *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014) (internal quotations and citations omitted).  The burden of proof in a breach of contract claim rests on the party alleging breach, which in this case is HTC.  *See TCL Commc'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. CV 15-2370 JVS(DFMX), 2018 WL 4488286, at *56 (C.D. Cal. Sept. 14, 2018) ("Just as it would on the breach of contract claim, TCL bears the burden of proof on its declaratory relief claim, as well as on Ericsson's claim for declaratory relief.").

Finally, the Court holds that, as a matter of French law, a member of ETSI who has submitted a licensing declaration pursuant to Clause 6.1 of ETSI's Intellectual Property Rights

("IPR") Policy satisfies its FRAND obligation by either (1) offering a license on FRAND terms and conditions, or (2) negotiating in good faith towards a FRAND license.  The FRAND commitment is embodied in Clause 6.1 of ETSI's IPR Policy and is governed by French contract law.  *ETSI Rules of Procedure*, Annex 6, Clauses 6.1, 12. (*See also* Dkt. No. 235–3 (Declaration of Philippe Stoffel-Munch on behalf of HTC); Dkt. No. 210–2 (Declaration of Jean-Sebastein Borghetti on behalf of Ericsson); Dkt. No. 210–3 (Declaration of Dr. Bertram Huber on behalf of Ericsson).)[4]  French contract law requires courts to enforce "the common intention of the contracting parties."  CODE CIVIL [C. CIV.] art. 1156 (Fr.) (2013).  To determine the parties' common intention, the court must first look to the express language of the contract and enforce any "clear and precise" terms.  (Dkt. No. 235–3 ¶ 14; Dkt. No. 210–2 ¶ 11.)  If the terms are ambiguous and the common intent of the parties cannot be discerned, the court must interpret the contract according to how a reasonable person would have understood the agreement in the same circumstances.  (Dkt. No. 235–3 ¶ 14; Dkt. No. 210–2 ¶ 16.)

With these principles in mind, the Court turns to the language of Clause 6.1 to determine what it means to satisfy the FRAND obligation.  In relevant part, Clause 6.1 provides that "the Director-General of ETSI shall immediately request the owner [of a SEP] to give . . . an irrevocable undertaking in writing that it is *prepared to grant* irrevocable licenses on fair, reasonable and non-

---

[4] The French Civil Code was revised effective October 1, 2016.  *See* Ordinance No. 2016-131 of February 10, 2016 on the reform of contract, the general regime, and the proof of obligations.  The 2016 amendments "codified principles previously developed in the French case law" and restructured the order of the articles to "correspond[] to the life cycle of a contract."  Rowan, Solene, *The New French Law of Contract*, INT'L & COMP. L. Q. 6 (2017), http://eprints.lse.ac.uk/75815/1/Rowan_New%20French%20law_2017.pdf.  The "old" French Civil Code applies to contracts executed before October 1, 2016 and thus applies to Ericsson's FRAND commitment.  *See* Article 9, Ordinance No. 2016-131 of 10 February 2016 on the reform of contracts, the general regime and the proof of obligations; *see also* Mustapha Mekki, France - The French Reform of Contract Law: The Art of Redoing Without Undoing, 10 J. CIV. L. STUD. 224, 225 (2017), available at https://digitalcommons.law.lsu.edu/jcls/vol10/iss1/10.

discriminatory ('FRAND') terms and conditions. . . ." *ETSI Rules of Procedure*, Annex 6, Clause 6.1 (emphasis added).  Further, while not itself binding, the ETSI Guide on the IPR Policy states that "ETSI members should attempt to resolve any dispute related to the application of the IPR Policy bilaterally in a friendly manner."  *ETSI Guide on Intellectual Property Rights (IPRs), Version Adopted by Board # 94*, at Clause 4.3 (Sept. 19, 2013).  Taken together, this means that a SEP-owner who submits a licensing declaration to ETSI states that it is "prepared" to grant a FRAND license and that any disputes about whether such a license is or is not FRAND should be conducted in a "friendly manner."  The Court finds that under the express terms of the ETSI IPR Policy and in light of ETSI's expressed intent in the accompanying IPR Guide, the parties to the ETSI IPR Policy intended the FRAND obligation to mean that a SEP-owner either (1) grant intended third-party beneficiaries' licenses on FRAND terms and conditions, or (2) negotiate in good faith towards a FRAND license.  (*See* Dkt. No. 474 at 166:11–15 (2/13/2019 Trial Tr. (afternoon session).)  As a result, the jury's finding that Ericsson breached its duty to negotiate in good faith does not necessarily preclude a finding that Ericsson complied with its FRAND assurance to HTC.

Accordingly, based on the foregoing and considering a careful review of the trial record, the relevant caselaw and authorities, and the Parties' briefing, the Court finds that Ericsson is entitled to a declaratory judgment that it has complied with its FRAND assurance to HTC.  This declaratory judgment is further described in the Court's concurrently filed Findings of Fact and Conclusions of Law.

## 2.  Injunction

In addition to a declaratory judgment and consistent with its Prayer for Relief, Ericsson also moves for an injunction.  According to Ericsson, "HTC refuses to enter into a license based

on the terms adjudicated to be FRAND by the jury" and has also refused Ericsson's offer "to condition [HTC's] payments on the outcome of any appeal."  (Dkt. No. 493 at 1.)  Ericsson therefore requests an injunction requiring HTC to enter a license agreement for Ericsson's SEPs "at the rate the jury determined to be FRAND."  (*Id.* at 7.)  Ericsson attached a proposed injunction to its motion, which would include, among other things: (1) that HTC choose between Ericsson's two live cross-licensing offers: (i) the December 2016 offer ($2.50 per 4G device) or (ii) the June 2018 offer (1% per 4G device with a $1 floor and a $4 cap), and pay royalties pursuant to the chosen offer; (2) a release payment, however denominated, to cover royalties that would have been due under HTC's chosen option from January 1, 2017 through the date of judgment; and (3) a term of 5 years.  (*Id.* at 15; Dkt. No. 493–1 (proposed injunction).)

Ericsson argues that it is entitled to an injunction for three reasons.  First, Ericsson argues that HTC has repeatedly stated that it agrees to be bound by the FRAND rate set by the Court and the Court has the power to bind HTC to those statements through the Court's inherent power and the judicial admission doctrine.  (*Id.* at 8–10.)  Ericsson further submits that HTC's prior agreements to be bound by the Court's FRAND determination means it "has waived [its] objection to, or is judicially estopped from contesting, entry of an injunction requiring payment of royalties adjudicated to be FRAND."  (*Id.* at 10–11.)  Second, Ericsson argues that even if HTC's statements do not constitute waiver or estoppel, it has satisfied the four-element test for an injunction: (1) it has succeeded on the merits; (2) it will suffer irreparable harm in the absence of an injunction; (3) the balance of hardships tilts in its favor; and (4) the proposed injunction would not disserve the public interest.  (*Id.* at 11–14.)  Finally, Ericsson argues that "the Court can issue an injunction as part of its authority under the Federal Declaratory Relief Act."  (*Id.* at 14–15.)

In response, HTC argues that Ericsson is not entitled to an injunction because French contract law precludes equitable relief.  (Dkt. No. 495 at 5–7; Dkt. No. 511 at 9–13.)  HTC argues that French law governs the claims and remedies in this case, and submits that "Article 1142 of the French Civil Code applicable to Ericsson's contract with ETSI provides that the sole remedy for breach is damages: 'Any obligation to do or not to do resolves itself in damages in case of non-performance on the part of the obligor-debtor."  (Dkt. No. 495 at 5–6; Dkt. No. 511 at 9.)  *See generally* CODE CIVIL [C. CIV.] (Fr.) (2013).  HTC also argues that "the Court cannot compel HTC to enter into a contract that has not been fully negotiated and agreed upon."  (Dkt. No. 511 at 8.)  HTC explains that there are several nonmonetary terms, such as the term of the contract, choice of law provisions, and other terms, that were not presented to the jury and that the parties would still need to discuss before any license could be concluded.  (*Id.* at 14–15.)  HTC states that this is especially true where the jury found that Ericsson failed to negotiate in good faith and thus granting an injunction "would demean the jury's verdict."  (*Id.* at 11.)  Finally, HTC argues that even if injunctive relief is available under French law, Ericsson has failed to show that it satisfies the four-factor test for an injunction.  (*Id.* at 11–13.)

Having examined the relevant authorities and in light of the Parties' briefing, the Court finds that equitable relief is available under French law.[5]  The pre-2016 French Civil Code applicable to the contracts in this case provides that "the obligee-creditor has the right to demand that what has been done in violation of the agreement be destroyed," C. CIV. art. 1143, and that in the context of a "resolutory condition," "[t]he party complaining of the nonperformance of the obligation may either compel the other party to carry out the agreement when it is possible or

---

[5] The parties dispute whether U.S. or French law governs the remedies for breach of contract in federal court.  Since equitable relief is available under both legal regimes, the Court need not pursue this issue further.

demand its rescission with damages." C. Civ. art 1184, par. 2.[6]  The Court concludes that French law, as applied in this context, does not foreclose equitable relief.

Notwithstanding this, the Court finds that Ericsson has failed to meet its burden for an injunction.  Ericsson argues that courts have authority to bind parties to their statements by virtue of the court's inherent powers and the judicial admission doctrine.  While a court may have authority to prevent a party from making arguments based on statements that contradict prior positions, that does not mean the court has the power to require a party to *act* on those statements. None of the cases that Ericsson cites in its motion go so far as to permit a court to impose a contract on a party, especially in a case such as this where not all of the material terms have been negotiated or agreed upon by the parties.  Ericsson also makes the argument that since HTC allegedly waived its objections and/or is estopped from objecting to an injunction, no proof of an injunction is required.  That is simply not true.  A permanent injunction is an extraordinary remedy and should not be imposed lightly.

To obtain an injunction, Ericsson must show: (1) success on the merits; (2) irreparable harm in the absence of an injunction; (3) that the balance of hardships tilts in its favor; and (4) that an injunction would not disserve the public interest.  *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006).  Ericsson has failed to satisfy element (2), which requires a showing of irreparable harm "for which no adequate remedy at law exists."  *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 848 (5th Cir. 2004).  An injunction is not appropriate when damages are an available remedy.  *See Dresser-Rand*, 361 F.3d at 848 ("For purposes of injunctive

---

[6] The Court held a hearing on Ericsson's motion for injunctive relief in this matter on April 30, 2019.  (Dkt. No. 535.)  At the hearing, the Court asked counsel for HTC how Article 1184 of the French Code "does not open the door to more than a pure monetary payment as a remedy."  (*Id.* at 47:10–16.)  HTC's counsel conceded that "[i]t may."  (*Id.* at 47:17.)

relief, an adequate remedy at law exists when the situation sought to be enjoined is capable of being remedied by legally measurable damages.").  Ericsson admits that it is seeking the "equivalent of an on-going royalty" typically imposed in patent infringement cases and that "[t]he only way for Ericsson to obtain full relief is for the Court to order HTC to make royalty payments on the terms adjudicated as FRAND by the jury."  (Dkt. No. 493 at 13, 14 n.2.)  In fact, Ericsson initially sought damages when it filed its counterclaims, but later withdrew such request on the eve of trial.  (Dkt. No. 466 at 5:24–6:24 (2/11/19 Trial Tr. A.M.).)  A party cannot manufacture the need for an injunction by purposefully choosing not to pursue a legally available remedy.  *See Comm'r v. Shapiro*, 424 U.S. 614, 634 n.15 (1976) ("If . . . absence of a remedy of law . . . [w]as due to respondent's failure to pursue that remedy, then equity will not intervene and the complaint should be dismissed.  The inadequacy of his legal remedy would then be due to his own choice not to pursue it.").[7]  More importantly, however, awarding Ericsson an injunction would subvert the purpose of equitable relief.  The jury found that Ericsson breached its duty to negotiate in good faith.  The law is clear: "he who comes into equity must come with clean hands."  *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).  Here, such is not the case.  Though Ericsson may wish otherwise, this portion of the jury's verdict has meaning.  Ericsson's request for an injunction is denied.

---

[7] Ericsson acknowledges that it could have filed a patent infringement suit, but did not.  (Dkt. No. 493 at 13.)  Ericsson argues that it owns approximately 195 SEP-families, "representing approximately 3000 patents awarded in countries around the world" and that injunctive relief is appropriate in cases "when a plaintiff can secure legal relief only through a multiplicity of lawsuits." (*Id.* at 13–14.)  The Court is sympathetic to the practical realities of Ericsson's concerns.  However, Ericsson could have pursued damages for its breach of contract claims, but chose not to do so.  The Court simply cannot reconcile Ericsson's concerns with this unmistakable fact.  In view of the totality of the circumstances, the Court finds that an injunction is not appropriate.

### ii. Counterclaim II

In Counterclaim II, Ericsson alleged that HTC breached its obligations to ETSI by failing to offer Ericsson a license to HTC's SEPs on FRAND terms and conditions. Before trial, HTC offered, and Ericsson accepted, a royalty-free license to HTC's SEPs.  The Parties subsequently stipulated to dismiss with prejudice Counterclaim II.  (Dkt. No. 404 at 11.)

### iii. Counterclaims III and IV

In Counterclaim III, Ericsson alleged that "HTC has not complied with its obligation to act in good faith during its negotiations with Ericsson in regard to FRAND terms for a cross-license to the parties' essential patents" by, among other things, initiating the instant lawsuit, "fail[ing] to make any reasonable offers for a license to Ericsson's standard essential patents," and "fail[ing] to offer Ericsson a license to HTC's standard essential patents."  (Dkt. No. 156 ¶¶ 61–62.)  As a result of HTC's alleged bad faith, Ericsson also sought a declaratory judgment under Counterclaim IV that HTC has rejected, repudiated, and/or forfeited any rights associated with Ericsson's FRAND declarations and is an unwilling negotiating partner.  (*Id.* ¶¶ 66–70.)  Ericsson initially sought damages in connection with Counterclaim III, but later withdrew its request at trial.  (Dkt. No. 466 at 5:24–6:24 (2/11/19 Trial Tr. A.M.).)  The jury found that Ericsson met its burden on Counterclaim III and that HTC had breached its obligation to negotiate in good faith.  (Dkt. No. 457 at 4.)

HTC argues that judgment should be entered in its favor on Counterclaims III and IV because they fail as a matter of law.  (Dkt. No. 495 at 8–14.)  HTC is the third-party beneficiary to Ericsson's contract with ETSI.  HTC explains that under both domestic and French law, "a third-party beneficiary cannot breach a contract to which it is not a party."  (*Id.* at 8.)  HTC argues that Ericsson, the party alleging breach, has the burden to prove a contractual obligation and that

18

"Ericsson nowhere points to any portions of [its] contract with ETSI that would purport to impose [the] obligation [to negotiate in good faith] on HTC."  (*Id.* at 10.)  "Instead, Ericsson references the general French law statutory, pre-contractual duty that contracts must be negotiated in good faith," which HTC submits is a tort.  (*Id.* at 10–11.)  HTC argues that Ericsson cannot pursue this tort theory in this District because the conduct complained of occurred either in Taiwan or via email between individuals in Texas and Taiwan.  (*Id.* at 11 n.21.)

In the alternative, HTC argues that even if Counterclaims III and IV are viable, its affirmative defenses preclude Ericsson's requested relief.  (Dkt. No. 497.)  First, HTC argues that Ericsson waived damages and "[a] party with an adequate legal remedy who fails to pursue it is not entitled to equitable relief."  (*Id.* at 6.)  Second, HTC explains that Ericsson's duty to negotiate in good faith is a condition precedent to any obligation HTC may have to do the same.  Since the jury found that Ericsson did not act in good faith, no corresponding duty arose on HTC's part.  (*Id.* at 7.)  Third, HTC argues that "[u]nder the doctrine of issue preclusion, Ericsson should be bound by the position it took in *TCL v. Ericsson* and by what the Court in that case ruled."  (*Id.* at 8.)[8] Finally, HTC asserts that "Ericsson's request for equitable relief is barred by the doctrine of unclean hands" because the jury found that Ericsson itself engaged in bad faith during the parties' negotiations.  (*Id.* at 8–9.)

Ericsson explains that it no longer seeks relief pursuant to Counterclaims III and IV given HTC's representations that it agrees to be bound by the Court's FRAND determination.  (Dkt. No. 509 at 14–15; Dkt. No. 507 at 2.)  Ericsson also argues that its counterclaims do not fail as a matter

---

[8] The Court denied HTC's Motion for Partial Summary Judgment Based on Collateral Estoppel (Dkt. No. 111), in which HTC argued that Ericsson was precluded from litigating certain issues that it alleged were also raised in *TCL Communication Technology Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 8:14-cv-00341-JVS-DFM, (C.D. Cal. 2014).  (Dkt. No. 429 (pre-trial rulings).)

of law because "[o]nce a third-party beneficiary starts negotiations, it accepts bilateral obligation to perform in good faith."  (Dkt. No. 509 at 14 n.6.)

In view of the jury's verdict and having considered the Parties' briefing, the Court finds that the doctrine of unclean hands bars Ericsson's requested relief on Counterclaims III and IV. Equitable relief, such as an injunction, is not available to those who commit inequity.  *See Precision Instrument Mfg. Co.*, 324 U.S. at 814 ("[H]e who comes into equity must come with clean hands, and thus the doors of equity are closed to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the other party."); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 794 (5th Cir. 1999) ("It is old hat that a court called upon to do equity should always consider whether the petitioning party has acted . . . with unclean hands.").  As HTC explains, "Ericsson cannot seek equitable relief based on HTC's failure to exercise good faith in negotiations when the jury found that Ericsson itself engaged in bad faith during those same negotiations."  (Dkt. No. 497 at 9.)  The jury has determined that Ericsson's hands are unclean.  Accordingly, Ericsson is not entitled to the relief it seeks and judgment is entered in favor of HTC on Counterclaims III and IV.

### C.  Stay of Proceedings

HTC makes two requests for a stay.  HTC first moves for a stay pending a decision on the arbitrability of the Severed Claims.  (Dkt. No. 495 at 3–4.)  HTC argues that a stay is warranted because equitable relief is unavailable and the only claims for damages are the Severed Claims that have been sent to arbitration.  HTC submits that if the arbitration panel sends the Severed Claims back to this Court for resolution, "that could cure many of the remedial defects now present and lead to a judgment that would not end with mere advisory relief."  (*Id.* at 4.)  HTC also moves for a stay pending its interlocutory appeal of the Court's denial of its motion to compel arbitration

of Ericsson's Counterclaims III and IV.  (Dkt. No. 497 at 2–3.)  HTC argues that any successful

appeal will moot the Court's final judgment with respect to those claims.  (*Id.* at 2.)

The Court "has broad discretion to stay proceedings as an incident to its power to control

its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  Whether a stay is warranted "calls

for the exercise of judgment, which must weigh competing interests and maintain an even

balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).  HTC argues that no relief can be

granted now.  However, as discussed above, equitable relief is available to the parties and any

declaratory judgment would not simply be an advisory opinion.  More importantly, the claims that

were not sent to arbitration have been fully litigated and tried to a jury.  Any judicial resources that

could have been preserved by a stay have already been expended.  Accordingly, in exercising its

discretion to control its own docket and in light of the posture of the case, the Court finds that a

stay is not appropriate.

### D.  Prevailing Party and Costs

Pursuant to 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d), costs are awarded

to the prevailing party.  "The case must be viewed as a whole to determine who was the 'prevailing

party', [and] a party need not prevail on every issue in order to be entitled to costs." *Rose v. First

Colony Cmty. Servs. Ass'n, Inc.*, 244 F.3d 133 (5th Cir. 2000) (internal citation omitted).   In light

of the jury's verdict and the Court's finding that Ericsson complied with its FRAND assurance to

HTC, the Court holds that Ericsson is the prevailing party and is entitled to costs.[9]

---

[9] HTC argues that Ericsson's request for costs is premature and is not proper until after the Court
enters judgment. (Dkt. No. 510 at 14–15.)  However, it is the practice of this Court, and consistent
with the rules, to declare who the prevailing party is in the final judgment and that such party is
entitled to an award of costs.  The award of costs is subject to any Bill of Costs submitted to the
Court after final judgment is entered.  *See* Local Rule CV-54.

### III.   CONCLUSION

Based on the foregoing and pursuant to Rule 58 of the Federal Rules of Civil Procedure, in accordance with the jury's unanimous verdict and the entirety of the record, the Court hereby **ORDERS** and **ENTERS FINAL JUDGMENT** as follows:

1. Judgment is entered in favor of Ericsson on HTC's Count I and Ericsson's Counterclaim I.

2. Judgment is entered in favor of HTC on HTC's Count II and Ericsson's Counterclaims III and IV.

3. Ericsson's Counterclaim II is **DISMISSED WITH PREJUDICE.**

4. As set forth herein and as further described in this Court's concurrently filed Memorandum of Findings of Fact and Conclusions of Law, the Court **ENTERS A DECLARATORY JUDGMENT** that Ericsson complied with its FRAND assurance to HTC pursuant to Ericsson's Counterclaim I.

5. As set forth and particularly described herein, the Court **DECLINES TO GRANT INJUNCTIVE RELIEF** on Ericsson's Counterclaim I.

6. As set forth and particularly described herein, the Court **DECLINES TO GRANT DECLARATORY AND INJUNCTIVE RELIEF** on HTC's Count II.

7. As set forth and particularly described herein, the Court **DECLINES TO GRANT DECLARATORY AND INJUNCTIVE RELIEF** on Ericsson's Counterclaims III and IV.

8. Ericsson is the prevailing party, and entitled to receive its costs from HTC.

9.  Pursuant to 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d), Ericsson, as the prevailing party, is hereby **AWARDED COSTS**, in which Ericsson shall submit to the Court a Bill of Costs within thirty (30) days from the entry of this Final Judgment.

10. All other relief requested by either party and not specifically awarded herein or in other of the Court's orders is **DENIED**.

11. The Clerk of Court is **DIRECTED TO CLOSE** the above-captioned case.

**So ORDERED and SIGNED this 22nd day of May, 2019.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE